# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JOSEPH DUNN, HELEN IEHL, ALBERT PIETERSON, JOHN HASTINGS, WINDIE BISHOP, LISA BARNES, ANGELA GARR, and MYESHA PRATHER, individually and on behalf of a class of similarly situated individuals, | No. 17-cv-00481 |
| *Plaintiffs*, | |
| v. | Hon. Manish S. Shah |
| WELLS FARGO BANK, N.A., | |
| *Defendant*. | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Joseph Dunn, Helen Iehl, Albert Pieterson, John Hastings, Windie Bishop, Lisa Barnes, Angela Garr, and Myesha Prather (together "Plaintiffs") bring this second amended class action complaint against Wells Fargo Bank, N.A. ("Wells Fargo") to stop Defendant's practice of placing unauthorized automated text messages and telephone calls to consumers, and to obtain redress for all persons injured by its conduct. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1. In an effort to advance its nationwide consumer credit and banking business, Wells Fargo violated federal law by making unauthorized automated text message and telephone calls (together "robocalls") to the cellular telephones of individuals throughout the nation.

2. By effectuating these unauthorized robocalls, Defendant has violated the called parties' statutory rights and has caused the call recipients actual harm, not only because the called parties were subjected to the aggravation and invasion of privacy that necessarily

1

accompanies unsolicited automated calls, but also because the called parties frequently have to pay their cell phone service providers for the receipt of such robocalls.

3. In order to redress these injuries, Plaintiffs, on behalf of themselves and a nationwide class, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), which protects the privacy right of consumers to be free from receiving unauthorized voice and text message calls to cellular phones.

4. On behalf of the proposed class, Plaintiffs seek injunctive relief and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## PARTIES

5. Plaintiff Joseph Dunn is a natural person and a citizen of Florida.

6. Plaintiff Helen Iehl is a natural person and a citizen of Florida.

7. Plaintiff Albert Pieterson is a natural person and a citizen of Florida.

8. Plaintiff John Hastings is a natural person and a citizen of Texas.

9. Plaintiff Windie Bishop is a natural person and a citizen of Tennessee.

10. Plaintiff Lisa Barnes is a natural person and a citizen of Michigan.

11. Plaintiff Angela Garr is a natural person and a citizen of Texas.

12. Plaintiff Myesha Prather is a natural person and a citizen of Nevada.

13. Defendant Wells Fargo is a national banking association that provides banking and financial services and products to consumers and businesses throughout the country, including online and mobile personal banking. Defendant's principal place of business is located in South Dakota.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227.

15. Venue is proper in this District pursuant to 28 U.S.C. 1391(b) because Defendant conducts business in this District; because Defendant is registered to do business in this District; and because a substantial part of the events concerning the conduct at issue occurred in this District, as manty of the unauthorized robocalls at issue in this case were received in this District.

## COMMON ALLEGATIONS OF FACT

16. Defendant is the third largest bank in the United States and a provider of a variety of financial services to consumers and businesses located throughout the country, including consumer checking accounts, credit cards, student loans, automotive loans, and mortgage financing.

17. As an ordinary business practice, Defendant collects the telephone numbers of its customers upon the opening of any such financial services account, and which are then used going forward as part of its automated calling operation for the purpose of sending phone calls and text messages regarding account activity and for servicing of the accounts. Defendant's calling operation uses an automated telephone dialing system to send text messages and phone calls for such purposes.

18. However, due to systemic issues with Defendant's procedures for recording and updating its customers' contact information, Defendant fails to confirm that the telephone numbers to which Defendant places automated text messages and phone calls actually belong to the customers who have supposedly provided them to Defendant.

19. As a consequence, many of the telephone numbers Defendant receives in connection with its calling operation are inaccurate, or have become inaccurate, and result in Defendant routinely placing automated text message and telephone calls to the cellular telephones of individuals who have never provided consent to be called by Defendant.

20. In addition to being an aggravating invasion of privacy, unsolicited automated telephone calls can actually cost recipients money because called parties such as Plaintiffs must frequently pay their cellular telephone service providers for the calls and text messages they receive, incur a usage allocation deduction to their cell phone plan, or pay a fixed or variable usage fee, regardless of whether the call is authorized.

**Facts Specific to Plaintiff Dunn**

21. Beginning at least as early as December 2016, Plaintiff Dunn began to receive automated phone and text message calls on his cellular telephone regarding activity on a Wells Fargo bank account, including a fraud alert "courtesy opt in" text on or about August 4, 2017, relating to unusual, suspicious, or potentially fraudulent activity detected on a Wells Fargo customer's account.

22. However, Plaintiff Dunn was not a Wells Fargo account holder and had never provided consent to receive any automated calls from Wells Fargo.

23. Nonetheless, Plaintiff Dunn received numerous such calls, continuing until September 2018.

24. The unauthorized automated calls that Plaintiff Dunn received invaded his privacy, forced him to spend significant time investigating their source, repeatedly interfered with the use of his cellular telephone, and took up memory storage on their cellular telephones.

**Facts Specific to Plaintiff Iehl**

25. Plaintiff Iehl was not a Wells Fargo account holder and did not provide consent to receive any automated calls from Wells Fargo.

26. Nonetheless, as recently as September 2018, Plaintiff Iehl received automated phone and text message calls on her cellular telephone.

27. The unauthorized automated calls that Plaintiff Iehl received caused her actual damages, constituted an invasion of privacy, and otherwise interfered with her use of the cellular telephone service.

**Facts Specific to Plaintiff Pieterson**

28. Plaintiff Pieterson has been a Verizon Wireless subscriber and holder of his cellular telephone number, (321) XXX-7599, since 2012.

29. Between August 2016 and March 2017, Defendant placed fifteen (15) or more calls to Plaintiff Pieterson's cellular telephone regarding a credit card debt owed by a person unknown to him. Most recently, Defendant placed calls to Plaintiff Pieterson's cellular telephone number on March 25, 2017. The automated debt collection calls, which originated from telephone number (800) 988-8019, identified "Edgar," a person unknown to Plaintiff Pieterson, as the intended recipient and used an artificial or prerecorded voice.

30. All of the calls placed by Defendant to Plaintiff Pieterson's cellular telephone number were made using an ATDS, which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice and to dial such numbers, as specified by 47 U.S.C § 227(a)(1).

31. Plaintiff Pieterson has never been a customer of Wells Fargo.

32. Plaintiff Pieterson did not provide his cellular telephone number to Defendant, nor did he ever provide express consent for Defendant to place calls to his cellular telephone regarding debts owed by a person named "Edgar" or any other subject matter.

33. Plaintiff Pieterson answered certain calls placed by Defendant to his cellular telephone, informed Defendant that he was not the intended recipient of the calls, and requested that Defendant stop calling him.

34. Defendant's robocalls, as received by Plaintiff Pieterson, did not provide him the opportunity to opt out of or request the cessation of Defendant's calls, as evidenced by the fact that Defendant continued placing calls to his cellular telephone number after he informed Defendant that he was not the intended recipient and requested that the calls cease.

35. As a result of the calls described above, Plaintiff Pieterson suffered an invasion of privacy, as well as particularized and concrete injuries, including the inducement of stress, anxiety, nervousness, embarrassment, distress, and/or aggravation. Plaintiff Pieterson also suffered out-of-pocket losses, including the monies paid to his wireless carriers for the receipt of such calls. Additionally, due to both the answered and unanswered calls placed by Defendant, Plaintiff Pieterson suffered the expenditure of time, exhaustion of his cellular telephone batteries, unavailability of his cellular telephones while Defendant's calls were incoming, and trespass upon his chattel. All of the above-mentioned injuries were caused by, and/or directly related to, Defendant's placement of calls to Plaintiff Pieterson by using an ATDS to call his cellular telephone number.

**Facts Specific to Plaintiff Hastings**

36. From around September of 2016 through February of 2017, Defendant contacted Plaintiff Hastings on his cellular telephone, number ending in 1525, in an attempt to collect an alleged outstanding debt owed by "Maria Rodriguez."

37. Defendant placed multiple calls to Plaintiff Hastings' cellular telephone from telephone numbers confirmed to belong to Defendant, including (800) 642-4720 and (877) 453-2904.

38. Defendant left numerous voice messages in which Defendant claimed to be attempting to collect a debt from "Maria Rodriguez."

39. When calling Plaintiff Hastings, Defendant used an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

40. When calling Plaintiff Hastings, Defendant utilized an "artificial or prerecorded voice," as defined by 47 U.S.C. § 227(b)(1)(A).

41. Defendant's calls to Plaintiff Hastings were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

42. Defendant's calls were placed to telephone number assigned to a cellular telephone service, as defined by 47 U.S.C. § 227(b)(1).

43. On several occasions, Plaintiff Hastings answered Defendant's telephone calls and informed an agent for Defendant that: 1) "Maria Rodriguez" could not be reached on his telephone; 2) that Defendant had an incorrect telephone number; and 3) that Defendant must cease placing such calls to him.

44. Plaintiff Hastings also made several telephone calls to Defendant directly and informed Defendant that: 1) "Maria Rodriguez" could not be reached on his telephone; 2) that

Defendant had an incorrect telephone number; and 3) that Defendant must cease placing such calls to him.

45. Despite receiving this information on numerous occasions, Defendant continued to place frequent calls to Plaintiff Hastings on his cellular telephone using an "automated telephone dialing system" and/or an "artificial or prerecorded voice."

46. Plaintiff Hastings is not a customer of Defendant. Furthermore, Plaintiff Hastings does not know nor has ever known "Maria Rodriguez." Accordingly, Defendant never received Plaintiff Hastings' "prior express consent," as defined by 47 U.S.C. § 227(b)(1)(A), to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone.

**Facts Specific to Plaintiff Bishop**

47. In an attempt to reach a third party unknown to Plaintiff Bishop, Wells Fargo began placing calls to phone number 404-XXX-2268—a number for which Plaintiff was the primary user.

48. By way of example, Wells Fargo called Plaintiff Bishop's cellular telephone on, among other dates, April 23, 2016.

49. During at least one call Wells Fargo made to her cellular telephone, Plaintiff Bishop informed the Wells Fargo representative that she did not know the person Wells Fargo was looking for and to stop calling.

50. On information and belief, Wells Fargo called Plaintiff Bishop's cell phone number using an automatic telephone dialing system with the capacity to store or produce telephone numbers and dial those numbers at random, in sequential order, or from a database or list of numbers.

8

51. Plaintiff Bishop is not, nor ever was, a Wells Fargo customer, and she has never had a business relationship with Defendant.

52. Plaintiff Bishop never provided her cellular telephone number to Wells Fargo, and Defendant did not have her consent or permission to call her cell phone, let alone using an automatic telephone dialing system.

53. Plaintiff Bishop was harmed by these calls because they were unwelcome intrusions on her privacy that wasted her time, depleted her cell phone battery, and occupied her telephone line from legitimate communications.

**Facts Specific to Plaintiff Barnes**

54. In 2016, Defendant began placing calls to Plaintiff Barnes' cellular telephone number.

55. For example, Defendant placed at least one call to Plaintiff Barnes' cellular telephone number on October 22, 2016, October 26, 2016, and July 3, 2017.

56. Defendant placed its calls to Plaintiff Barnes' cellular telephone number from telephone numbers including (800) 289-8019, (248) 728-2304, and (888) 804-5037.

57. When dialed, telephone number (800) 289-8019 plays a recorded messages that begins: "Welcome to Wells Fargo dealer services . . . ."

58. When dialed, telephone number (888) 804-5037 plays a recorded messages that begins: "Welcome to Wells Fargo . . . ."

59. Upon information and good faith belief, Defendant placed additional calls to Plaintiff's cellular telephone number not listed above.

9

60. Defendant's calls to Plaintiff's cellular telephone number were intended for a recipient other than Plaintiff Barnes—a man Plaintiff Barnes does not know named Richard Loutman (spelling unknown).

61. On occasion, Plaintiff Barnes answered calls that Defendant placed to her cellular telephone number, and informed Defendant that she was not the individual Defendant intended to reach, and requested that Defendant stop placing calls to her cellular telephone number.

62. After Defendant failed to heed her requests that it stop placing calls to her cellular telephone, Plaintiff Barnes went to one of Defendant's local branches in Holland, Michigan in connection with her efforts to get the calls to stop in or around mid-2016.

63. Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, including the use of an artificial or prerecorded voice, Defendant placed its calls to Plaintiff Barnes' cellular telephone number using an automatic telephone dialing system.

64. Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, including the use of an artificial or prerecorded voice, Defendant placed its calls to Plaintiff Barnes' cellular telephone number using equipment which has the capacity—(i) to store numbers to be called or (ii) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person).

65. Upon information and good faith belief, Defendant placed its calls to Plaintiff Barnes' cellular telephone number for non-emergency purposes.

66. Upon information and good faith belief, Defendant placed its calls to Plaintiff Barnes' cellular telephone number voluntarily.

67. Upon information and good faith belief, Defendant placed its calls to Plaintiff Barnes' cellular telephone number under its own free will.

68. Upon information and good faith belief, Defendant had knowledge that it was using an automatic telephone dialing system or an artificial or prerecorded voice to place its calls to Plaintiff Barnes' cellular telephone number.

69. Upon information and good faith belief, Defendant intended to use an automatic telephone dialing system or an artificial or prerecorded voice to place its calls to Plaintiff Barnes' cellular telephone number.

70. Plaintiff Barnes is not, and was not ever, one of Defendant's customers.

71. Plaintiff Barnes does not, and never did, have a business relationship with Defendant.

72. Plaintiff Barnes did not give Defendant prior express consent to place calls to her cellular telephone number by using an automatic telephone dialing system or an artificial or prerecorded voice.

73. Upon information and good faith belief, Defendant maintains business records that show all calls it placed to Plaintiff Barnes' cellular telephone number.

74. Plaintiff Barnes suffered actual harm as a result of Defendant's calls in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

75. Moreover, Defendant's calls unnecessarily tied up Plaintiff Barnes' cellular telephone line.

76. Upon information and good faith belief, Defendant, as a matter of pattern and practice, uses an automatic telephone dialing system and/or an artificial or prerecorded voice to

place calls to telephone numbers assigned to a cellular telephone service, absent prior express consent.

**Facts Specific to Plaintiff Garr**

77. Plaintiff Garr's telephone number, is, and at all relevant times has been, assigned to a cellular telephone service.

78. Wells Fargo called Plaintiff Garr's cellular phone repeatedly over the course of the past two years.

79. Wells Fargo's calls pertain to a mortgage loan.

80. Wells Fargo's calls were not made for an emergency purpose.

81. Wells Fargo's calls to Plaintiff Garr's cellular phone were intended for a man whom Plaintiff Garr does not know and has never met. Plaintiff Garr believes the calls were directed to someone named "Chris Pendle," "Chris Pendola," or some similar name.

82. Plaintiff Garr also received emails from Wells Fargo, which pertained to the same mortgage loan account that does not belong to Plaintiff Garr.

83. Plaintiff Garr has never been a customer of Wells Fargo and has never borrowed money from Wells Fargo.

84. Plaintiff Garr does not have a mortgage loan with Wells Fargo.

85. Plaintiff Garr did not provide her cellular telephone number to Wells Fargo and never provided express consent for Wells Fargo to call her about someone else's mortgage or any other subject matter.

86. Plaintiff Garr's cellular phone number has been registered on the national do-not-call registry since February 6, 2008.

12

87. Plaintiff Garr answered certain calls placed by Wells Fargo when they first began in 2016, informed Wells Fargo that she was not the intended recipient of the calls, and requested that Wells Fargo stop calling her.

88. Plaintiff Garr continued to receive calls from Wells Fargo after asking Wells Fargo to stop calling her and place her cellular phone number on Wells Fargo's do-not-call list.

89. Plaintiff Garr also responded to e-mail communications she received from Wells Fargo by informing Wells Fargo that she was not the appropriate recipient of these emails and that her contact information should be not be used by Wells Fargo to reach the holder of the mortgage loan account.

90. Each time that it called her cellular phone, Wells Fargo called Plaintiff Garr using an ATDS. Plaintiff Garr noted a pause before the start of each message she received when she did not answer, and before being connected with a Wells Fargo agent when she did answer, which is characteristic of a call placed by an ATDS.

91. Wells Fargo also called Plaintiff Garr using a prerecorded or artificial voice, as evidenced by the tone and cadence of the voice on these calls.

92. During the relevant period, Plaintiff Garr has carried her cellular phone with her at most times so that she can be available to family, friends, and her employer.

93. Wells Fargo's repeated calls invaded Plaintiff Garr's privacy and intruded upon her right to seclusion. The calls frustrated and upset Plaintiff Garr by constantly interrupting her daily life and wasted her time.

94. Wells Fargo's calls intruded upon and occupied the capacity of Plaintiff Garr's cellular phone and depleted the battery of her cellular phone. The calls temporarily seized and trespassed upon Plaintiff Garr's use of her cellular phone and caused her to divert attention away

from other activities to address the calls. The clutter of Wells Fargo's calls also impaired the usefulness of the call log feature of Plaintiff Garr's cellular phone.

**Facts Specific to Plaintiff Prather**

95. Beginning in or about July 2016, in an apparent effort to contact a previous Wells Fargo customer for the purpose of providing a notification about their account activity, Defendant sent Plaintiff Prather's cellular telephone an unauthorized text message regarding "unusual activity" on a "card."

96. In the text message transmission that Plaintiff Prather received, the "from" field was identified as "93557," which is an abbreviated telephone number known as an SMS short code operated by Defendant's agents. The use of an SMS short code by Defendant's agents enabled Defendant's mass transmission of unauthorized text messages to lists of cellular telephone numbers.

97. Shortly after receiving the above unauthorized text message call, Plaintiff Prather received three additional text message notifications on her cellular telephone. Each of these text messages was sent automatically and instantaneously by Defendant though the use of an automatic telephone dialing system from the short code 93557.

98. In addition, shortly after receiving the above text message call, Plaintiff Prather repeatedly had her privacy invaded by Defendant, and received at least an additional six automated calls on her cellular telephone from Defendant that attempted to notify her of activity on an account that she had never opened.

99. Plaintiff Prather was not a Wells Fargo customer at the time of the calls and at no time did Plaintiff Prather provide Defendant with consent to receive any of these automated text messages or telephone calls.

14

## CLASS ACTION ALLEGATIONS

100. Plaintiffs bring this action on behalf of themselves and a nationwide Class defined as follows:

>   All persons
>   a. who were users or subscribers to a wireless or cellular telephone service within the United States to which Wells Fargo made or initiated any Call in connection with the collection or servicing of a mortgage or home equity loan, credit card account, retail installment sale contract for an automobile, automobile loan, overdraft on a deposit account, student loan, or in connection with a fraud alert on a credit card or deposit account, using any automated dialing technology or artificial or prerecorded voice technology;
>   b. who were not customers of Wells Fargo at the time of the Call; and,
>   c. who were Called between January 20, 2013 and the entry of the Preliminary Approval Order for Calls placed in connection with automobile loans or fraud alerts on credit cards or deposit accounts; between September 18, 2014 and the entry of the Preliminary Approval Order for Calls placed in connection with credit card accounts; between December 20, 2015 and the entry of the Preliminary Approval Order for Calls placed in connection with student loans or overdrafts on deposit accounts; between March 1, 2016 and the entry of the Preliminary Approval Order for Calls placed in connection with mortgages or home equity loans; or between April 1, 2016 and the entry of the Preliminary Approval Order for Calls placed in connection with retail installment sale contracts for automobiles.
>   d. Excluded from the Class are Defendant, any affiliate or subsidiary of Defendant, any entities in which such companies have a controlling interest, the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

101. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel has any interest adverse to those of the other members of the Class.

102. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

103. Defendant has acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

104. The factual and legal bases of Defendant's liability to Plaintiffs and to the other members of the Class are the same, resulting in injury to the Plaintiffs and to all of the other members of the Class. Plaintiffs and the other members of the Class have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

105. Upon information and belief, there are hundreds, if not thousands, of members of the Class such that joinder of all members is impracticable.

106. There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

    (a) Did Defendant systematically place automated calls and text messages regarding its financial services to persons who were not Wells Fargo customers?

    (b) Were the automated calls and text messages placed by Defendant to non-customers made without prior express consent?

16

(c) Did the automated calls and text messages made by Defendant to non-customers violate the called parties' respective rights to privacy?

(d) Was Defendant's conduct in violation of the TCPA willful such that the members of the Class are entitled to treble damages?

(e) Should Defendant be enjoined from continuing to engage in such conduct?

## COUNT I
**Violation of Telephone Consumer Protection Act (47 U.S.C. 227) on behalf of the Class**

107. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

108. Defendant made unsolicited and unauthorized automated telephone calls to the cellular telephone numbers of Plaintiffs and the other members of the Class without obtaining their prior express consent.

109. Defendant made unsolicited and unauthorized automated text message calls to the telephone numbers of Plaintiffs Dunn and Iehl and the other members of the Class. These text message calls were made *en masse* using a short code and equipment that had the capacity at the time the calls were placed to store or produce telephone numbers to be called using a random or sequential number generator and to automatically dial such numbers without human intervention. These text message calls were made without the prior express consent of Plaintiffs Dunn and Iehl and the members of the Class.

110. Defendant has, therefore, violated the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

111. As a result of Defendant's illegal conduct, the members of the Class have had their privacy rights invaded and have suffered actual and statutory damages and, under 47 U.S.C. §227(b)(3)(B), are each entitled, inter alia, to a minimum of $500.00 in damages for each such violation of the TCPA.

112. To the extent the Court should determine that Defendant's conduct was willful and knowing, the Court may, pursuant to §227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Class.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for the following relief:

A.  An order certifying the Class as defined above;

B.  An award of the greater of actual or statutory damages;

C.  An injunction requiring Defendant to cease all unauthorized automated telephone activities;

D.  Pre-judgment interest from the date of filing this lawsuit;

E.  An award of reasonable attorneys' fees and costs; and

F.  Such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.

Dated: July 2, 2019            Respectfully submitted,

JOSEPH DUNN, HELEN IEHL, ALBERT PIETERSON, JOHN HASTINGS, WINDIE BISHOP, LISA BARNES, ANGELA GARR, and MYESHA PRATHER individually and on behalf of a class of similarly situated individuals

By: /s/ Evan M. Meyers
    One of Plaintiffs' Attorneys

Myles McGuire
Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

Jonathan D. Selbin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: (212) 355-9000
Fax: (212) 355-9592
jselbin@lchb.com

Daniel C. Girard
GIRARD SHARP LLP
601 California Street, 14th Floor
San Francisco, California 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dcg@girardgibbs.com