**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH DUNN, HELEN IEHL, ALBERT PIETERSON, JOHN HASTINGS, WINDIE BISHOP, LISA BARNES, ANGELA GARR, and MYESHA PRATHER individually and on behalf of a class of similarly situated individuals, | ) ) ) ) ) ) | No. 17-cv-00481 |
| *Plaintiffs*, | ) ) ) | Hon. Manish S. Shah |
| v. | ) ) | |
| WELLS FARGO BANK, N.A., | ) ) | |
| *Defendant*. | ) ) | |

**PLAINTIFFS' *UNOPPOSED* MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Myles McGuire
Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

Jonathan D. Selbin
Daniel M. Hutchinson
LIEFF CABRASER
HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: (212) 355-9000
Fax: (212) 355-9592
jselbin@lchb.com
dhutchinson@lchb.com

Daniel C. Girard
Angelica M. Ornelas
GIRARD SHARP LLP
601 California St., Ste. 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dgirard@girardsharp.com
aornelas@girardsharp.com

*Counsel for Plaintiffs and*
*Proposed Class Counsel*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES .............................................................................................. iv

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ......................................................................................................... 2

    A.      Procedural History And Factual Background. ................................................ 2

        i.      *Wells Fargo's allegedly unlawful calling practices.* ............................. 2

        ii.     *The Prather Action: Fraud Alert Calls* ................................................. 3

        iii.    *The Pieterson and Hastings Actions: Credit Card Account Calls* ........ 3

        iv.     *The Bishop Action: All Account Calls.* ................................................. 4

        v.      *The Barnes Action: Auto Loan Calls* ................................................... 4

        vi.     *The Garr Action: Home Loan Calls* ..................................................... 4

        vii.    *The Classwide Discovery* ..................................................................... 5

        viii.   *The Motion Practice and Class Certification* ...................................... 6

    B.      Settlement Negotiotions ................................................................................ 7

III.    SETTLEMENT TERMS ........................................................................................... 8

    A.      The Proposed Settlement Class ................................................................... 8

    B.      Monetary Relief ........................................................................................... 9

    C.      Notice and Settlement Administration ........................................................ 10

    D.      Opt-Out and Objection Procedure ............................................................. 12

    E.      Attorneys' Fees and Costs, And Incentive Awards ..................................... 12

    F.      Release of Liability ..................................................................................... 12

IV.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL . 13

    A.      The Court will Likely Find That the Proposed Settlement Class Is Fair,
            Reasonable, and Adequate .......................................................................... 14

        i.      *The Settlement was reached after extensive discovery, litigation, and arm's-
                length negotiation* ............................................................................... 15

        ii.     *The relief provided by the Settlement is more than adequate and provides equal
                relief to all Class Members* ................................................................ 16

    B.      The Court Will Likely Find That The Proposed Settlement Class Meets All
            Requirements For Certification For Purposes Of Settlement Under Federal
            Rule 23 ....................................................................................................... 21

      i.    *The Proposed Settlement Classes meet all prerequisites to certification under Federal Rule 23(a)* ........................................................................................... 21

          1.    The Proposed Settlement Class is ascertainable based on objective criteria ........................................................................................... 21

          2.    Numerosity ........................................................................................... 22

          3.    Commonality ........................................................................................... 22

          4.    Typicality ........................................................................................... 23

          5.    Adequacy ........................................................................................... 23

      ii.    *The proposed Settlement Class is certifiable under Federal Rule 23(b)(3)* ...... 24

          1.    Common Questions of law and fact predominate ..................................... 24

          2.    A class action is the most efficient way of adjudicating the putative Settlement Class Members' claims and is superior to a multitude of individual lawsuits ........................................................................................... 25

          3.    The Proposed Notice Plan satisfies Due Process and the Requirements of Federal Rule 23 ........................................................................................... 26

          4.    Plaintiffs' Counsel should be appointed Class Counsel .......................... 28

**V.    CONCLUSION** ........................................................................................... 29

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## Cases

*Abdeljalil v. General Elec. Capital Corp.*,
  306 F.R.D. 303 (S.D. Cal. 2015)..................................................................................22, 24

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  No. 07-cv-2898, 2012 WL 651727 (N.D. Ill. 2012) ................................................. 26

*Amchem Prod., Inc. v. Windsor*,
  521 U.S 591 (1997). ...................................................................................................... 26

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ....................................................................................... 14

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  302 F.R.D. 240 (N.D. Ill. 2014) .................................................................................. 21

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
  280 F.R.D. 408 (N.D. Ill. 2012) .................................................................................. 21

*Brown v. DirecTV, LLC*,
  2019 WL 1434669 (C.D. Cal. 2019)............................................................................ 17

*CE Design v. Beaty Const., Inc.*, 07 C,
  No. 07-cv-3340, 2009 WL 192481 (N.D. Ill. 2009) ................................................. 23

*Davis v. AT&T Corp.*,
  No. 15-cv-2342, 2017 WL 1155350 (S.D. Cal. 2017)............................................... 17

*Golon v. Ohio Savs. Bank*,
  98-cv-7430, 1999 WL 965593 (N.D. Ill. 1999) ........................................................ 25

*Hinman v. M & M Rental Ctr., Inc.*,
  545 F. Supp. 2d 802 (N.D. Ill. 2008) ......................................................................... 23

*In re AT&T Mobility Wireless Data Servs. Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) .....................................................................13, 14, 26

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002)...................................................................................... 25

*In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*,

No. 06-cv-7023, 2016 WL 772785 (N.D. Ill. 2016) ...................................... 26

*Ira Holtzman, C.P.A. v. Turza*,
    728 F.3d 682 (7th Cir. 2013) ........................................................ 22

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ........................................................ 14

*Johnson v. Navient Sols., Inc.*,
    315 F.R.D. 501 (S.D. Ind. 2016) ............................................ 23, 24

*Johnson v. Yahoo!, Inc.*,
    346 F. Supp. 3d 1159 (N.D. Ill. 2018) ........................................ 17

*Kessler v. Am. Resorts Int'l*, 05 C,
    05-cv-5944, 2007 WL 4105204 (N.D. Ill. 2007) ........................ 14

*Kreger v. Medicredit, Inc.*,
    No. 16-cv-1481, 2016 U.S. Dist. LEXIS 93889 (M.D. Fla. 2016) ........... 11

*Lavigne v. First Cmty. Bancshares, Inc.*,
    2018 WL 2694457 (D.N.M. 2018) ...................................... 23, 24, 25

*Lavigne v. First Cmty. Bancshares, Inc.*,
    No. 15-cv-00934, 2019 U.S. Dist. LEXIS 37724 (D. N.M. 2019) ........... 11

*Lemon v. Int'l Union of Operating Eng's.*,
    216 F.3d 577 (7th Cir. 2000) ........................................................ 24

*Longo v. Law Offices of Gerald E. Moore & Assocs., P.C.*,
    No. 04-cv-5759, 2006 WL 897800 (N.D. Ill. 2006) ................... 23, 24

*McCue v. MB Fin., Inc.*,
    15-cv-0098, 2015 WL 1020348 (N.D. Ill. 2015) ........................ 13

*Mirfasihi v. Fleet Mortg. Corp.*,
    356 F.3d 781 (7th Cir. 2004) ........................................................ 27

*Murray v. New Cingular Wireless Servs.*,
    232 F.R.D. 295 (N.D. Ill. 2005) .................................................. 25

*Prater v. Medicredit, Inc.*,
    No. 14-cv-00159, 2015 U.S. Dist. LEXIS 167215 (E.D. Mo. 2015) ........ 11

*Reid v. I.C. Sys.*,
    No. 12-cv-02661, 2018 U.S. Dist. LEXIS 125663 (D. Ariz. July 26, 2018) ........ 11

*Roark v. Credit One Bank, N.A.*,
   No. 16-cv-173, 2018 WL 5921652 (D. Minn. 2018) ................................................................ 17

*Sadowski v. Med1 Online, LLC*,
   No. 07-cv-2973, 2008 U.S. Dist. LEXIS 41766 (N.D. Ill. 2008) ............................................ 25

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................................... 18

*Soppet v. Enhanced Recovery Co.*,
   679 F.3d 637 (7th Cir. 2012) ................................................................................................... 22

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ................................................................................................... 16

*Tomeo v. CitiGroup, Inc.*,
   163-cv-4046, 2018 WL 4627386 (N.D. Ill. 2018) ................................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................................................. 22

*West v. California Servs. Bureau, Inc.*,
   323 F.R.D. 295 (N.D. Cal. 2017) ............................................................................ 21, 23, 24, 25

## Statutes

28 U.S.C. § 1715 ................................................................................................................................ 27

28 U.S.C § 1715(b) ........................................................................................................................... 27

47 U.S.C. § 227 ................................................................................................................................... 1

## Rules

Federal Rule of Civil Procedure 23 ........................................................................................ *passim*

## Other Authorities

4 *Newberg on Class Actions*, § 13:14 (5th Ed., June 2019 update) ............................................... 13

Fed. R. Civ. P. 23 Advisory Committee's Note to the 2018 Amendment ............................... 15, 16

*Manual for Complex Litigation,* § 21.632 (4th ed. 2004) ............................................................. 13

## I.     <u>INTRODUCTION</u>

After more than two years of litigation across six class action lawsuits, extensive discovery efforts, and months of contentious negotiations, including two full-day mediations before two experienced mediators, the Parties[1] are pleased to report that they have reached a global settlement of six putative class actions brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). The proposed Settlement will establish a $17.85 million common fund to be distributed to the Settlement Class. By this Motion, Plaintiffs Joseph Dunn, Helen Iehl, Albert Pieterson, John Hastings, Windie Bishop, Lisa Barnes, Angela Garr, and Myesha Prather (together, "Plaintiffs"), seek preliminary approval of the Settlement Agreement, claims procedure, and the proposed form and method of class notice pursuant to Federal Rule of Civil Procedure 23(e).[2]

Federal Rule of Civil Procedure 23 provides that at this stage of the settlement-approval process, notice should issue if the Court determines it "will likely be able to" (1) approve the proposed Settlement, based on whether the proposed Settlement Class representatives and proposed Class Counsel "have adequately represented the class," and whether the Settlement "was negotiated at arm's length," provides "adequate" relief for the Settlement Class, and treats Settlement Class Members "equitably relative to each other"; and (2) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1) & (2).

The record adduced during discovery, as well as the procedural and substantive aspects of the Settlement, satisfy those requirements. Success in this matter was far from assured. Given the

---

[1] Unless otherwise stated, capitalized terms have the same meaning as those terms are used in the Settlement Agreement, attached hereto as <u>Exhibit A</u>.

[2] The Parties have filed a Second Amended Complaint for the purposes of effectuating the Settlement Agreement and which adds additional class representatives and class counsel. (*See* Dkt. 77.)

risks at class certification and trial, this Settlement is an excellent result and, if approved, would bring meaningful relief to thousands of individuals, as well as certainty and closure to what has been, and likely would continue to be, highly contentious and costly litigation. As explained in detail below, the Court "will likely be able to" find that the Settlement is fair, reasonable, and adequate, and provides greater relief than other TCPA settlements that have been approved in this District and in other courts throughout the country. Preliminary approval of the Settlement and distribution of notice to the Settlement Class is in the best interest of the putative Class Members and the Court will likely also find that the proposed Settlement Class meets all of the requirements for certification of a settlement class under Federal Rule 23. Accordingly, Plaintiffs respectfully request that the Court enter an Order (i) granting preliminary approval of the Settlement; (ii) appointing Plaintiffs as Class Representatives; (iii) approving the proposed notice plan; (iv) appointing Myles McGuire, Evan M. Meyers, Eugene Y. Turin of McGuire Law, P.C.; Jonathan D. Selbin and Daniel M. Hutchinson of Lieff Cabraser Heimann & Bernstein, LLP; and Daniel C. Girard and Angelica M. Ornelas of Girard Sharp LLP as Class Counsel; and (v) scheduling a final approval hearing to determine whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and whether the Settlement Class should be certified.

## II.     BACKGROUND

### A.     Procedural History And Factual Background.

#### *i.     Wells Fargo's allegedly unlawful calling practices.*

Plaintiffs separately brought six class action lawsuits alleging Wells Fargo called or texted non-customer Plaintiffs and Class Members on their cellular telephones through the use of automatic telephone dialing systems or by using an artificial or prerecorded voice without Plaintiffs' or Class Members' prior express consent, in violation of the TCPA. Collectively, these

actions challenged calls made by Wells Fargo's deposit accounts, credit card, automobile loan, mortgage financing, and student loan lines of business.

### ii.     The Prather Action:  Fraud Alert Calls.

Plaintiff Myesha Prather originally filed suit against Wells Fargo in the Northern District of Illinois on January 20, 2017 (the "*Prather* Action"). (Dkt. 1.) Ms. Prather alleged that she received numerous prerecorded messages and text messages from Wells Fargo regarding activity on a Wells Fargo deposit account. (First Amended Complaint ("FAC"), Dkt. 19, ¶¶ 14–17.) However, at the time she received the messages at issue, Ms. Prather was not a Wells Fargo customer, nor did she have an active Wells Fargo account of any kind. (FAC at ¶ 18.) As such, the phone calls and text messages she received were unauthorized. (*Id.* at ¶¶ 28, 29.) The *Prather* Action focused on automated fraud alert calls and texts to non-customers by Wells Fargo's deposit account line of business. Plaintiffs Joseph Dunn and Helen Iehl received similar calls from Wells Fargo regarding activity on a Wells Fargo deposit account.

### iii.     The Pieterson and Hastings Actions:  Credit Card Account Calls.

On April 25, 2017, Plaintiff Albert Pieterson filed a putative class action lawsuit against Wells Fargo under the TCPA in the Northern District of California, captioned *Pieterson v. Wells Fargo Bank, N.A.*, No. 17-cv-02306 (the "*Pieterson* Action"). On June 24, 2017, Plaintiff John Hastings filed a separate putative class action lawsuit against Wells Fargo under the TCPA, also in the Northern District of California, captioned *Hastings v. Wells Fargo Bank, N.A.*, No. 17-cv-03633 (the "*Hastings* Action"). On November 7, 2017, the *Hastings* Action was formally consolidated with the *Pieterson* Action as Case No. 17-cv-02306. (Dkt. 64) (the "*Pieterson-Hastings* Action"). Thereafter, the *Pieterson-Hastings* Plaintiffs jointly proceeded with discovery and litigation of their case alleging unauthorized debt collection calls placed by Wells Fargo's credit card line of business.

### iv.    The Bishop Action:  All Account Calls.

On April 27, 2017, Plaintiff Alexander Bacon filed a putative class action lawsuit against Wells Fargo under the TCPA in the Northern District of Georgia. On June 29, 2017, Plaintiff Windie Bishop joined the action through an amended complaint. *Bishop v. Wells Fargo Bank, N.A.*, Case No. 17-cv-01505-TWT (N.D. Ga.) (the "*Bishop* Action")*,* Dkt. No. 23. The *Bishop* Action focused on automated calls to non-customers for all Wells Fargo lines of business.

### v.    The Barnes Action:  Auto Loan Calls.

On October 25, 2018, Plaintiff Lisa Barnes filed a putative class action lawsuit against Wells Fargo under the TCPA in the Northern District of California, captioned *Barnes v. Wells Fargo Bank, N.A.*, Case No. 18-cv-06520 (N.D. Cal.) (the "*Barnes* Action"). The *Barnes* Action alleged that Wells Fargo violated the TCPA by using an automatic telephone dialing system or an artificial prerecorded voice to call cell phones without the prior express consent of Plaintiff Barnes or the putative class members. (*Id.*, Dkt. No. 1.) The *Barnes* Action focused on automated calls to non-customers from Wells Fargo's automobile loan lines of business.

### vi.    The Garr Action:  Home Loan Calls.

On November 19, 2018, Plaintiff Angela Garr filed a class action complaint against Wells Fargo in the Northern District of California, captioned *Garr v. Wells Fargo Bank, N.A.*, Case No. 18-cv-06997 (N.D. Cal.) (the "*Garr* Action"). The *Garr* Action alleged that Wells Fargo violated the TCPA by using an automatic telephone dialing system or an artificial prerecorded voice to call cell phones without the prior express consent of Plaintiff Garr and the putative class members. (*Id.,* Dkt. No. 2.) The *Garr* Action focused on automated calls to non-customers from Wells Fargo's mortgage and home equity loan lines of business.

- 4 -

vii.     *The Classwide Discovery.*

In the *Prather* Action, *Pieterson-Hastings* Action, and *Bishop* Action, Plaintiffs propounded numerous interrogatories and document requests on Wells Fargo that collectively addressed calls made by all Wells Fargo's lines of business. The discovery addressed Plaintiffs' cases on the merits – including what type of calling equipment was used by Wells Fargo to place the calls and text messages at issue and what efforts Wells Fargo took to avoid making unauthorized calls to non-customers – as well as class discovery to identify other individuals who received unauthorized calls and Wells Fargo's efforts to determine when it has placed an unauthorized call or text message. At all times, discovery was hard fought and hotly contested.

In the *Pieterson-Hastings* Action, Plaintiffs diligently pursued discovery over the course of 14 months. Plaintiffs served a comprehensive set of discovery requests, including two sets of document requests and 20 interrogatories, and filed three motions to compel. (*See* Declaration of Daniel Girard ("Girard Decl."), attached hereto as Exhibit B, at ¶¶ 9–12.) The *Pieterson-Hastings* Plaintiffs obtained key discovery regarding the types and volume of calls Wells Fargo made to members of the putative class. (*Id.*, at ¶¶ 9–11, 14.) The *Pieterson-Hastings* Plaintiffs reviewed over 4,000 pages of documents Wells Fargo produced in response to Plaintiffs' discovery requests. (*Id.*, at ¶ 13.) Plaintiffs deposed four Wells Fargo employees on several topics, including the specifications and functionality of Wells Fargo's dialing equipment, the policies and procedures governing the use of that equipment, the number of calls placed to members of the proposed *Pieterson-Hastings* class, the factual bases for Wells Fargo's affirmative defenses, and the call data Wells Fargo produced in the case. (*Id.*, at ¶ 14.) The *Pieterson-Hastings* Plaintiffs also responded to requests for admission, document requests, and interrogatories, and each plaintiff sat for deposition in August 2018. (*Id.*, at ¶ 15.) The *Pieterson-Hastings* Plaintiffs conducted extensive expert discovery, including serving expert reports,

defending the depositions of Plaintiffs' experts, deposing Wells Fargo's experts, and reviewing nearly 10,000 pages of documents produced during expert discovery. (*Id.,* at ¶ 16.)

In the *Prather* Action, on June 1, 2018, following extensive discovery efforts, including issuing multiple interrogatories and document requests, and receiving thousands of pages of documents, Plaintiff Prather filed her Motion to Compel (*Prather*, Dkt. 39), seeking production of additional documents relating to identifying putative class members who received unauthorized automated calls and text messages from Wells Fargo. Plaintiff Prather prevailed, with Plaintiff's Motion to Compel being granted. (*Prather*, Dkt. 53.) Subsequently, Plaintiff Prather proceeded with discovery, including obtaining detailed calling data that allowed Plaintiff Prather to have an expert analyze and determine the efficacy and accuracy of Wells Fargo's account record system and assess the number of putative class members. Plaintiff Prather also proceeded with oral discovery and deposed Wells Fargo's corporate representatives.

In the *Bishop* Action, Ms. Bishop moved on June 8, 2018 to compel production of, among other things, Wells Fargo's calling policy, practice, and procedure documents across all lines of business. (*Bishop*, Dkt. 60.) Following extensive briefing and oral argument, (*Bishop*, Dkts. 60, 62, 68, 80), the court granted in part Plaintiff Bishop's motion. (*Id.*, Dkt. 84.) Wells Fargo produced approximately 15,445 pages of documents in the *Bishop* Action. On July 12, 2018, Plaintiff Bishop's counsel deposed Wells Fargo's representative, who provided extensive testimony regarding the dialers used for Wells Fargo's various lines of business.

### viii.    The Motion Practice and Class Certification.

Plaintiffs engaged in significant motion practice. Wells Fargo sought to stay the *Prather*, *Pieterson-Hastings*, and *Bishop* Actions in their entirety. (*Bishop*, Dkt. 61, 70, 71, 74, 82, 85, 86; *Prather*, Dkt. 41.) In both the *Prather* Action and *Pieterson-Hastings* Action, Plaintiffs

- 6 -

prevailed, with Wells Fargo's motions to stay being denied. (*Prather*, Dkt. 53; *Pieterson*, Dkt. 109.)[3]

After defeating an early motion by Wells Fargo to stay the case, the *Pieterson-Prather* Plaintiffs moved for class certification and opposed Wells Fargo's *Daubert* motion to exclude the testimony of Plaintiffs' data analysis expert. The motion for class certification and Wells Fargo's *Daubert* motion are fully briefed. The *Pieterson-Hastings* Plaintiffs also moved to coordinate the *Pieterson-Hastings* and *Prather* cases, which the court granted in part. (*Pieterson*, Dkt. 214.) The *Pieterson-Hastings* court chose not to decide class certification while the settlement in this case is under consideration. (*Id.*, Dkt. 218.)

### B. Settlement Negotiations.

The Parties' settlement negotiations were likewise hard fought and sharply contested. On September 13, 2018, the parties in the *Pieterson-Hastings* matter participated in a mediation with mediator Hunter Hughes. (Girard Decl., at ¶ 20.) The matter did not settle, but the parties agreed to resume mediation after the *Pieterson-Hastings* Plaintiffs filed their motion for class certification. (*Id.*)

In *Prather,* in light of Plaintiff's discovery efforts, as well as the upcoming filing of Plaintiff's motion for class certification, the parties agreed to participate in a mediation on December 20, 2018 before the Honorable James F. Holderman (Ret.) of JAMS, the former Chief Judge of the United States District Court for the Northern District of Illinois. After a full day of negotiations, the Parties made extensive progress.

The *Pieterson-Hastings*, *Barnes*, and *Garr* Actions were then stayed pending the settlement discussions occurring in the *Prather* Action. At that time, Plaintiffs in the *Pieterson-*

---

[3] The *Bishop* Action was voluntarily dismissed before the court ruled on Wells Fargo's stay motion. (*Bishop*, Dkt. 87.)

*Hastings*, *Bishop*, *Barnes*, and *Garr* Actions joined with Plaintiffs Prather, Dunn, and Iehl to engage in joint settlement negotiations in an effort to reach final resolution of the pending cases against Wells Fargo.

In the more than six months following the formal mediation session in *Prather*, counsel for the Parties engaged in extensive and often contentious further negotiations to come to terms on the key elements of a global class settlement addressing calls by multiple Wells Fargo lines of business, including the appropriate relief to be provided to the Class Members, the scope of the release, and the plan for notice and settlement administration.

**III.     SETTLEMENT TERMS**

**A.     The Proposed Settlement Class.**

The proposed Settlement would create a nationwide settlement class defined as follows:

> All persons
> a.     who were users or subscribers to a wireless or cellular telephone service within the United States to which Wells Fargo made or initiated any Call in connection with the collection or servicing of a mortgage or home equity loan, credit card account, retail installment sale contract for an automobile, automobile loan, overdraft on a deposit account, student loan, or in connection with a fraud alert on a credit card or deposit account, using any automated dialing technology or artificial or prerecorded voice technology;
> b.     who were not customers of Wells Fargo at the time of the Call; and,
> c.     who were Called between January 20, 2013 and the entry of the Preliminary Approval Order for Calls placed in connection with automobile loans or fraud alerts on credit cards or deposit accounts; between September 18, 2014 and the entry of the Preliminary Approval Order for Calls placed in connection with credit card accounts; between December 20, 2015 and the entry of the Preliminary Approval Order for Calls placed in connection with student loans or overdrafts on deposit accounts; between March 1, 2016 and the entry of the Preliminary Approval Order for Calls placed in connection with mortgages or home equity loans; or between April 1, 2016 and the entry of the Preliminary Approval Order for Calls placed in connection with retail installment sale contracts for automobiles.

      d.      Excluded from the Class are Defendant, any affiliate or subsidiary of Defendant, any entities in which such companies have a controlling interest, the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

(Settlement Agreement, ¶ 47.)

**B.**     **Monetary Relief.**

As part of the Settlement, Wells Fargo has agreed to establish a $17.85 million cash Settlement Fund. (*Id.*, ¶ 43.) The entire amount of the Settlement Fund will be distributed *pro rata* to Settlement Class Members who submit approved claims, after deductions for the costs of notice and administration, attorneys' fees and costs, and incentive award payments to Plaintiffs. (*Id.*, ¶ 51.) Each Settlement Class Member may submit only one claim, but Settlement Class Members may receive compensation for each type of account for which he/she received a call. For example, if a Settlement Class Member was called in connection with both a credit card account and a mortgage, the Settlement Administrator will treat the Settlement Class Member as having submitted two valid claims, and the Settlement Class Member can receive double the cash benefits under the Settlement. (*Id.*, ¶ 53.)

Because the Settlement Fund is to be distributed to Settlement Class Members *pro rata*, the total payment to each Settlement Class Member will ultimately depend on the number of approved claims. (*Id.* at ¶ 51.) As discussed below, based on an estimate of the number of claims expected in response to the notice program developed with the assistance of the proposed Settlement Administrator, Epiq Systems, Inc. ("Epiq"), Plaintiffs anticipate that each Settlement Class Member will receive over $200, a significant amount that compares favorably with recoveries in other court-approved TCPA settlements.

C.      Notice And Settlement Administration.

The Parties have agreed to retain Epiq as the Settlement Administrator. Epiq will be responsible for giving notice to each Settlement Class Member, receiving Claim Forms submitted by Settlement Class Members, and determining whether all submitted information is complete and accurate. (Settlement Agreement, ¶¶ 41, 62–63.) Consistent with the December 2018 amendments to Rule 23, notice will be provided through a combination of direct mail and email notice, supplemented with Internet and print publication. *See* Fed. R. Civ. P. 23 ("The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means"); Settlement Agreement, ¶ 63.

Wells Fargo currently maintains a list of unique telephone numbers associated with wrong number codes that received the automated calls and text messages at issue, which will be provided to the Settlement Administrator to serve as the Notice Database. (Settlement Agreement, ¶ 62.) The Settlement Administrator will use the Notice Database to conduct a reverse lookup to identify the non-Wells Fargo customers who make up the Class. (*Id.*, ¶ 62.) Such individuals will then receive notice by U.S. Mail if the Settlement Administrator has determined a valid mailing address. (*Id.*, ¶ 63.) The Parties estimate there are no more than 440,000 Class Members who received the allegedly unauthorized calls at issue from Wells Fargo and will receive direct notice.[4] (*Id.*, ¶ 27.)

In addition to the robust direct notice being provided, the Settlement Administrator will also arrange for notice to be published in *USA Today*, a widely-read nationwide publication. (*Id.*) Furthermore, the Settlement Administrator will provide publication notice via various online publication networks, such as the Google Ad Network and Facebook, to reach as many

---

[4] Wells Fargo contends that this number is substantially smaller than 440,000.

potential Settlement Class Members as possible. All forms of Notice are attached to the Agreement as Exhibits 3–5.[5]

The direct notice will point Settlement Class Members to the Settlement Website, which will contain electronic versions of the Claim Form[6] that can be submitted in multiple ways (including online, via email, via regular mail, or telephonically), as well as the full Settlement Agreement, a detailed Long Form Notice, important court documents, and answers to frequently asked questions. (Settlement Agreement, ¶ 63.) The format and language of each form of notice have been carefully drafted in straightforward, easy-to-read language to clearly inform Settlement Class Members of all the material aspects of the Settlement, such as the relief they are entitled to under the settlement, the amount of attorneys' fees and incentive awards that may be sought, and instructions and deadlines for opting out from, or objecting to, the Settlement. (*Id.*, ¶ 63, Exs. 3–5.) The broad notice provided by the Settlement is consistent with what courts in this District and elsewhere have regularly approved in other "wrong number" TCPA settlements.[7]

---

[5] Unless otherwise indicated, all references to numbered exhibits (e.g., "Ex. 1") are references to the exhibits attached to the Settlement Agreement.

[6] The proposed Claim Form is Exhibit 2 to the Settlement Agreement.

[7] *See, e.g., Vergara et al. v. Uber Technologies, Inc.*, No. 15-cv-6942, Order Preliminarily Approving Class Action Settlement, Dkt. 88 at ¶¶ 9–11 (N.D. Ill. Aug. 17, 2017) (Durkin, J.) (approving notice plan consisting of direct notice based in part on reverse lookup, as well as publication notice consisting of internet banner ads, a national print publication, and a settlement website); *Lavigne v. First Cmty. Bancshares, Inc.*, No. 15-cv-00934, 2019 U.S. Dist. LEXIS 37724, at *7–*8 (D. N.M. Mar. 7, 2019) (approving reverse look up class notice plan in a certified wrong number class action); *Kreger v. Medicredit, Inc.*, No. 16-cv-1481, 2016 U.S. Dist. LEXIS 93889, at *6–*7 (M.D. Fla. July 19, 2016) (holding reverse lookup and publication notice in print and on the internet was "the best notice practicable under the circumstances") (quoting *Prater v. Medicredit, Inc.*, No. 14-cv-00159, 2015 U.S. Dist. LEXIS 167215 (E.D. Mo. Dec. 7, 2015)); *Reid v. I.C. Sys.*, No. 12-cv-02661, 2018 U.S. Dist. LEXIS 125663, at *9 n.2 (D. Ariz. July 26, 2018) (upholding notice plan that called for "publication of banner ads on targeted websites, the issuance of a press release, the establishment of a website and toll-free number, and the sending of targeted emails to potential class members' email addresses identified through a 'reverse lookup' of telephone numbers belonging to suspected class members").

### D. Opt-Out And Objection Procedure.

Settlement Class Members will have an opportunity to exclude themselves from the Settlement or object to its approval. (Settlement Agreement, ¶¶ 65–70.) The procedures and deadlines for filing opt-out requests and objections will be referenced in all forms of the notice and on the Settlement Website. (*Id.*; *see also* Exs. 3–5.) With respect to objections, the notices inform Settlement Class Members of their opportunity to appear and have their objections heard at the Final Approval Hearing. (*Id.*, ¶ 63, Exs. 3–5.) The notices also inform Settlement Class Members that they will be bound by the release unless they timely exercise their right to exclusion. (*Id.*)

### E. Attorneys' Fees and Costs And Incentive Awards.

Subject to Court approval, attorneys' fees and out-of-pocket litigation costs are to be paid out of the Settlement Fund. (*Id.*, ¶¶ 81–82.) Under the Settlement Agreement, Class Counsel have agreed to limit their request for attorneys' fees to no more than 33.3% of the Settlement Fund, or a maximum of $5,890,500.00. (*Id.*, ¶ 81.) Class counsel will also seek reimbursement for their reasonable out-of-pocket costs in pursuing the Actions, including costs paid for expert witness analysis of Wells Fargo's wrong-number call records and dialing equipment. The Parties have agreed that the named Plaintiffs may be awarded from the Settlement Fund, subject to Court approval, incentive awards of up to $15,000 each. (*Id.*, ¶ 85.)

### F. Release of Liability.

In exchange for the monetary and prospective relief described above, each Settlement Class Member who does not exclude himself or herself will be deemed to have released and forever discharged Wells Fargo and the other "Releasees" (e.g. Wells Fargo's affiliates) from any claims related to or arising out of placing an automated phone call or text message relating to servicing or collection of Wells Fargo accounts without their consent. (*Id.*, ¶¶ 53–58.)

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The proposed Settlement provides substantial relief to the Settlement Class Members and represents a fair and reasonable resolution of this dispute. It thus merits this Court's preliminary approval and permission for notice to be sent to the Settlement Class Members. Rule 23 directs the Court at the preliminary approval stage to only determine whether it "will be likely" to grant final approval of the proposed Settlement as "fair, reasonable, and adequate," pursuant to Fed. R. Civ. P. 23(e)(2), and certifiable "for purposes of judgment on the proposal," pursuant to Fed. R. Civ. P. 23(e)(1)(B)(ii). The recent amendments to Rule 23 build upon the well-established two-step process in this Circuit of performing a "preliminary" evaluation of the fairness of the settlement to determine whether notice is to be sent out, prior to the final fairness inquiry. Conte & Newberg, 4 *Newberg on Class Actions*, § 13:14 (5th Ed., June 2019 update); *McCue v. MB Fin., Inc.*, No. 15-cv-00988, 2015 WL 1020348, at *1 (N.D. Ill. Mar. 6, 2015); *In re AT&T Mobility Wireless Data Servs. Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010). Accordingly, the preliminary approval evaluation is not a final fairness hearing. Rather, it is an evaluation to determine whether there is reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Newberg*, § 13:14; *McCue*, 2015 WL 1020348, at *1. The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement based on the written submissions and informal presentation from the settling parties. *Manual for Complex Litigation,* § 21.632 (4th ed. 2004). Thus, the Court must find at the preliminary approval stage simply that it is "likely" to determine at the final approval hearing that the Settlement is "fair, reasonable, and adequate" and certifiable. Fed. R. Civ. P. 23(e)(1)(B).

Because every settlement is a compromise, courts should not reject a settlement solely because it does not provide a complete victory. Parties to a settlement "benefit by immediately

resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T*, 270 F.R.D. at 347 (internal quotations and citations omitted). There is a strong judicial and public policy favoring the settlement of class action litigation, and such a settlement should be approved by the Court after inquiry into whether the settlement is "fair, reasonable, and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l*, 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).

### A. The Court Will Likely Find That The Proposed Settlement Is Fair, Reasonable, And Adequate.

As the amendments to Rule 23 direct, in determining whether to preliminarily approve a settlement, the Court must first evaluate whether it is "likely" to finally determine that the settlement is fair, reasonable, and adequate. Under Rule 23, as amended, the factors in determining whether a settlement is fair, reasonable, and adequate include: (1) whether the class representatives and class counsel have adequately represented the class; (2) whether the settlement was negotiated at arm's length; (3) the relief provided to the class versus the cost and risk of proceeding to trial, the method by which relief will be distributed to the class, and the proposed attorneys' fees award; and (4) whether the settlement treats all class members equally to one another. Fed. R. Civ. P. 23(e)(2). Application of these factors to this case demonstrates that the proposed Settlement is fair, reasonable, and adequate.

> i. *The Settlement was reached after extensive discovery, litigation, and arm's-length negotiation.*

The first two factors under the amended Rule 23(e)(2) are intended to "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note. In determining whether these factors are satisfied the Court may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note.

The negotiations that led to the Settlement followed an extended period of contentious discovery that has taken place in the *Prather* Action, *Pieterson-Hastings* Action, and *Bishop* Action. The two mediations – one in the *Prather* Action and one in the *Pieterson-Hastings* Action – did not occur until after significant discovery had already been completed. The instant Settlement was not finalized until proposed Class Counsel conducted extensive additional confirmatory discovery and negotiated the Settlement over many months. Plaintiffs' counsel collectively reviewed tens of thousands of pages of documents produced by Wells Fargo and conducted many depositions of Wells Fargo's corporate designees. In addition, Plaintiffs' counsel worked with their experts to conduct detailed analyses of Wells Fargo's call records to verify the accuracy of its record keeping system and determine the size of the putative Class. Much of this discovery was obtained only after extended meet-and-confer discussions and, in several cases, contested discovery-related proceedings, including motion to compel proceedings. The collective discovery efforts in six actions provided Plaintiffs' counsel with a comprehensive understanding of the calling practices in *every* Wells Fargo line of business. Accordingly, given that Plaintiffs and their counsel had sufficient information about the facts of the allegedly

unauthorized calls at issue to fairly weigh their prospects of success at trial versus the negotiated outcome provided by the Settlement, the Court should, and is likely to, find that they adequately represented the Class.

Further, the Parties' settlement negotiations were at all times conducted at arm's length and were facilitated by experienced mediators. *See* Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").

### ii.   *The relief provided by the Settlement is more than adequate and provides equal relief to all Class Members.*

The Court is also likely to find that the proposed Settlement satisfies Rule 23's requirements of providing adequate relief when weighed against the likely outcome of any trial on the merits. The Seventh Circuit has found this to be the most important consideration in determining whether a Settlement should be approved. *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006). The Settlement in this case is an extraordinary result for the Settlement Class Members and provides significant monetary benefits to the Settlement Class, as every Settlement Class Member with an approved claim will receive an equal payment from a Settlement Fund totaling $17.85 million, less approved fees, costs, and expenses. As such, although the specific per-person monetary benefit will depend on the total number of approved claims, it is clear that Settlement Class Members will receive significant monetary relief. Because each Settlement Class Member will receive an equal share of the Settlement Fund, the proposed Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

- 16 -

While Plaintiffs believe their TCPA claims against Wells Fargo are strong, they are also aware that Wells Fargo has denied Plaintiffs' allegations and has raised several legal defenses, any of which, if successful, would result in the Plaintiffs and the proposed Settlement Class Members receiving no payment whatsoever. For example, Wells Fargo has made it clear, as evidenced by its opposition to the motion for class certification in the *Pieterson-Hastings* case, that it would challenge any efforts to move for class certification. (*Pieterson*, Dkt. 167.) Given that this case involves what is often termed "misdirected" automated calls, class certification is far from certain, with courts often denying class certification in similar such cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13-cv-4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) (denying class certification) *and Davis v. AT&T Corp.*, No. 15-cv-2342, 2017 WL 1155350, (S.D. Cal. Mar. 28, 2017) (same) *with Brown v. DirecTV, LLC*, No. 13-cv-1170, 2019 WL 1434669 (C.D. Cal. Mar. 29, 2019) (granting class certification). Furthermore, with respect to the merits of Plaintiffs' claims, some courts have found that misdirected calls may not even be actionable under the TCPA and that Wells Fargo's reasonable reliance on the consent of the customer it was intending to reach may provide a sufficient defense. *See, e.g., Roark v. Credit One Bank, N.A.*, No. 16-cv-173, 2018 WL 5921652 (D. Minn. Nov. 13, 2018).

Moreover, Wells Fargo has already raised, and absent settlement would no doubt pursue, arguments that its dialer equipment dials from a set list of numbers and does not constitute an "automatic telephone dialing system" within the meaning of the TCPA. Based on a similar argument, this Court recently granted Yahoo! summary judgment in a putative TCPA class action. *See Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1162 (N.D. Ill. 2018) (holding the system at issue there was not an ATDS as it "did not have the capacity to generate random or sequential numbers to be dialed—it dialed numbers from a stored list"). A similar holding here –

that Wells Fargo's equipment is not an ATDS – would substantially reduce the value of Plaintiffs' and Settlement Class Members' claims.

Taking these realities into account, and recognizing the risks involved in any litigation, the settlement relief represents an excellent result for the Settlement Class. The total amount of the Settlement Fund, and the payments to participating Settlement Class Members, are significant in light of the risks of ongoing litigation. If Wells Fargo were to succeed on its defenses to liability against Plaintiffs' individual claims, or otherwise prevail in opposing class certification, the Settlement Class Members would recover nothing.

Furthermore, any trial in this matter – or potentially multiple trials, since this Settlement resolves multiple, separate lawsuits – is likely to be complex and expensive. "Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted). In addition, the trial is unlikely to take place for some time, given that prior to mediation, the Parties in the Actions were actively litigating several issues, with a motion for class certification fully briefed in the *Pieterson-Hastings* Action, and major motions in the other Actions still due to be filed. "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Schulte*, 805 F. Supp. 2d at 586. With this Settlement, Plaintiffs and the Settlement Class Members will receive meaningful payments now, instead of years from now—or perhaps never. *See Id.* at 582. In short, in the absence of settlement, it is certain that the expense, duration, and complexity of the protracted litigation would be substantial.

Even in the event that the litigation reached trial, evidence and witnesses from across the country would have to be assembled in multiple forums. Given the complexity of the issues and

the amount in controversy, the losing Party would likely appeal both the decision(s) on the merits (at summary judgment and/or trial), as well as the decision(s) on class certification. As such, the immediate relief provided to the Settlement Class under the Settlement Agreement weighs heavily in favor of its approval compared to the inherent risk and delay of continued litigation, trial, and appeal in multiple forums.

Furthermore, the other factors to be considered under Rule 23(e)(2)(C) are also all satisfied here. As detailed above, the Parties have prepared an extensive notice plan that will make sure that Class Members receive effective notice informing them about the Settlement and that will allow them to easily submit a claim for compensation from the Settlement Fund. *See supra* Section III.C–D; Fed. R. Civ. P. 23(e)(2)(C)(ii). In addition, proposed Class Counsel's anticipated attorneys' fees request – no more than one-third of the $17.85 settlement amount being provided to the Class – falls well within the range of attorneys' fees award in other similar settlements, and will likely be found reasonable in light of the significant recovery achieved for the Class Members and the efforts undertaken by proposed Class Counsel in pursuing these claims on behalf of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(iii), *see, e.g., Vergara et al. v. Uber Technologies, Inc.*, No. 15-cv-06942, Dkt. 112 (Mar. 1, 2018 N.D. Ill.) (awarding attorney's fees of $6.5 million in a TCPA class action settlement establishing a $20 million fund); *Martin v. JTH Tax, Inc.*, No. 13-6923, Dkt.85 (N.D. Ill. Sept. 16, 2015) (awarding attorneys' fees of one-third of $3 million settlement fund in TCPA case). Class Members will have the opportunity to express their views on proposed Class Counsel's fee application at the Final Approval Hearing. Plaintiffs have also identified all agreements made in connection with the Settlement, which are solely limited to the terms contained in the Settlement Agreement filed herewith as Exhibit A. Fed. R. Civ. P. 23(e)(2)(C)(iv).

In sum, the duration of the litigation; the extensive and sometimes contentious investigation and discovery process; the excellent result for the Settlement Class in spite of the significant procedural and substantive hurdles faced by Plaintiffs; and the participation of experienced mediators throughout the negotiation process are all testament to the fairness of the proposed Settlement. Similar class action settlements involving alleged violations of the TCPA have received final approval in this District and elsewhere.

Here, the Parties estimate there are no more than 440,000 Class Members who received the allegedly unauthorized calls at issue from Wells Fargo. (Settlement Agreement, ¶ 27.) Accordingly, each claimant will at a *minimum* receive a settlement payment of $40 – before deduction for administration, fees and expenses – which compares favorably with other "wrong number" settlements. *See, e.g., Vergara et al v. Uber*, No. 15-cv-6942 (N.D. Ill. 2016) (approving settlement creating $20 million fund for unauthorized robocalls to an estimated one million class members, approximately $20 per class member); *Luster et al. v. Wells Fargo Bank, N.A.*, 15-cv-01508 (N.D. Ga. 2017) (approving settlement creating a $14.8 million fund for unauthorized robocalls to 3 million class members, approximately $5 per class member); *James v. JPMorgan Chase Bank, N.A.*, No. 15-cv-02424 (M.D. Fla.), Dkt. No. 51 (prelim. approval mot.) and Dkt. No. 58, June 5, 2017 (approving settlement that provided $3,750,000 for approximately 675,000 class members, or $5.56 per class member); *Lofton v. Verizon Wireless*, No. 13-cv-05665 (N.D. Cal.), Dkt. 217, May 27, 2017 (approving settlement that provided $4,000,000 for approximately 242,666 potential class members, or $16.48 per member). Accordingly, the proposed Settlement, which provides significant relief through a $17.85 million non-reversionary Settlement Fund and which proposed Class Counsel estimate will likely result

in Settlement Class Members receiving over $200 per valid claim, is likely to be found fair, reasonable, and adequate, and warrants the Court's preliminary approval.

**B. The Court Will Likely Find That The Proposed Settlement Class Meets All Requirements For Certification For Purposes Of Settlement Under Federal Rule 23.**

The proposed Settlement is not only likely to be found fair, reasonable, and adequate, but the proposed Settlement Class is also likely to be finally certified by the Court at the final approval hearing. As explained below, the Settlement Class meets all of the criteria for certification under Rule 23(a) and 23(b)(3).

*i. The Proposed Settlement Class meets all prerequisites to certification under Federal Rule 23(a).*

1. The Proposed Settlement Class is ascertainable based on objective criteria.

To meet the ascertainability requirement the Court "need not ascertain 'absent class members' actual identities' . . . [r]ather, 'it is enough that the class be ascertain*able*,' with class members to be identified during a claims administration process[.]" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (N.D. Ill. 2014) (citing *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012)) (emphasis in original).

Here, the proposed Settlement Class Members are readily ascertainable using Wells Fargo's database. Wells Fargo maintains a database that records instances when a phone number may have been called or sent a text message in error. (Settlement Agreement, ¶ 62(a)). Using this database, the Settlement Administrator will conduct a reverse-lookup to identify the individual associated with the phone number at the time of Wells Fargo's calls and verify whether the call was actually unauthorized. (*Id.*, ¶ 62(b); *see West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 302 (N.D. Cal. 2017), *leave to appeal denied sub nom. Membreno v. California Serv. Bureau, Inc.*, No. 17-cv-80258, 2018 WL 1604629 (9th Cir. Mar. 27, 2018) (granting class

certification in a misdirected call case and describing use of a reverse-lookup to identify class members); *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 642 (7th Cir. 2012) (describing use of a "reverse-lookup"). Phone numbers that are confirmed to have been assigned to someone other than the Wells Fargo customer at the time of the call or text message will be determined to be a Settlement Class Member and will receive direct notice.

2.    Numerosity.

The numerosity requirement of Rule 23(a)(1) is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Based on Wells Fargo's Notice Database and estimates provided by the Settlement Administrator, it is likely that direct notice will be mailed to tens of thousands, and potentially up to 440,000, individuals. (Settlement Agreement, ¶ 63(c)). The Settlement Class is therefore undoubtedly numerous.

3.    Commonality.

The commonality requirement is met where the putative class members share a "common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Seventh Circuit has found that class certification in TCPA cases is "normal," because the main issues in such cases are "common to all class members." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

Many courts in other TCPA cases with the same set of facts involving misdirected calls placed on behalf of financial service companies have concluded that the issues discussed above are sufficient to satisfy the commonality standard. *See e.g. Abdeljalil v. General Elec. Capital Corp.*, 306 F.R.D. 303, 308 (S.D. Cal. 2015) (finding commonality was satisfied in TCPA class action involving debt collection to telephone numbers that were marked in the defendant's

- 22 -

system with "wrong number" codes); *West*, 323 F.R.D. at 301 (same); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501, 502 (S.D. Ind. 2016); *Lavigne v. First Cmty. Bancshares, Inc.*, No. 15-cv-00934, 2018 WL 2694457, at *4 (D.N.M. June 5, 2018). In this case, the elements of each of the Settlement Class member's claim are identical and arise out of the same uniform set of facts. The commonality element is satisfied.

4.    <u>Typicality</u>.

Courts have found that typicality is met where the defendant's action of sending unsolicited advertisements resulted in TCPA claims of the named plaintiff and members of the class. *See, e.g.*, *CE Design v. Beaty Const., Inc.*, 07-cv-3340, 2009 WL 192481, *5 (N.D. Ill. Jan. 26, 2009) (finding typicality where defendant's practice of sending unsolicited advertisements to the named plaintiff and the proposed class resulted in the claims of the potential plaintiffs being "based upon the same legal theory, *i.e.* violation of the TCPA").

Here, Plaintiffs and the Settlement Class Members all allege that Wells Fargo placed automated phone calls and text messages to them regarding Well Fargo's financial services without their prior express consent in violation of the TCPA. Because the Settlement Class Members assert identical claims that are based on the same legal theory, the same facts, and the same course of conduct by Wells Fargo, and seek redress for the same injury, Plaintiffs are typical of the Settlement Class they seek to represent.

5.    <u>Adequacy</u>.

To satisfy the adequacy requirement, class representatives must show that: (1) their claims are not antagonistic or in conflict with those of the proposed class, (2) they have sufficient interest in the outcome of the case, and (3) they are represented by experienced and competent counsel. *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). The fact that attorneys have been found adequate in other cases is "is persuasive evidence that they will

be adequate again." *Longo v. Law Offices of Gerald E. Moore & Assocs., P.C.*, No. 04-cv-5759, 2006 WL 897800, at *5 (N.D. Ill. Mar. 30, 2006) (quoting *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Here, Plaintiffs' interests are representative of and consistent with the interests of the proposed Settlement Class Members—all have received allegedly unlawful automated calls and text messages regarding Wells Fargo's financial services despite not being Wells Fargo customers, and all seek relief under the TCPA.

Proposed Class Counsel have regularly engaged in complex class litigation and have extensive experience in consumer class action lawsuits involving cellular telephony and, in particular, the TCPA. Plaintiffs' counsel and their firms have been appointed as class counsel in numerous complex consumer class actions, including numerous TCPA cases such as the one before the Court here. (*See* Declaration of Evan M. Meyers, attached hereto as <u>Exhibit C</u>, at ¶¶ 9–10; Declaration of Daniel M. Hutchinson, attached hereto as <u>Exhibit D</u>, at ¶¶ 8–14; Girard Decl., Ex. B, at ¶¶ 21–22.) As such, proposed Class Counsel are well qualified to assess the fairness and reasonableness of the Settlement Agreement reached in this case.

> ### ii. *The proposed Settlement Class is certifiable under Federal Rule 23(b)(3).*

> #### 1. <u>Common questions of law and fact predominate.</u>

To satisfy the predominance requirement of Rule 23(b)(3), "each class member must share common questions of law or fact with the rest of the class, therefore making class-wide adjudication of the common questions efficient compared to the repetitive individual litigation of the same question." *Lemon v. Int'l Union of Operating Eng's.*, 216 F.3d 577, 581 (7th Cir. 2000). In TCPA cases, the predominance requirement is generally met where, as here, the class members' claims focus on a specific calling operation by a particular defendant. *See, e.g.,*

*Abdeljalil*, 306 F.R.D. 303 at 311; *West*, 323 F.R.D. at 302; *Johnson*, 315 F.R.D. at 503; *Lavigne*, 2018 WL 2694457, at *8.

In this case, as in *Lavigne* and *West*, common questions predominate because all of the Class Members received the same type of automated calls and text messages relating to Wells Fargo's financial services, and the Class Members are not customers of Wells Fargo and did not consent to receive such calls and messages. In other words, all of the Settlement Class Members were sent the same type of automated phone calls and text messages, under similar circumstances, by the same entity, and without their prior express consent. As such, the elements of any given Settlement Class Member's claim will be based on the same classwide proof applicable to other Settlement Class Members within the same class. *Golon v. Ohio Savs. Bank*, 98-cv-7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999) (Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, classwide basis … [since s]uch proof obviates the need to examine each class member's individual position").

Accordingly, common questions will predominate over any individualized issues.

        2.    <u>A class action is the most efficient way of adjudicating the putative Settlement Class Members' claims and is superior to the alternative of either a multitude of individual lawsuits or else no Class Members filing any individual lawsuits.</u>

The superiority requirement is generally satisfied where class members have uniform claims governed by the same law. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). Resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Sadowski v. Med1 Online, LLC*, No. 07-cv-2973, 2008 U.S. Dist. LEXIS 41766, at *14 (N.D. Ill. May 27, 2008) (quoting *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 303 (N.D. Ill. 2005)) ("In consumer actions

involving small individual claims, such as this one, class treatment is often appropriate because each member's damages 'may be too insignificant to provide class members with incentive to pursue a claim individually'").

Manageability relating to trial is of no concern when "confronted with a request for settlement only class certification. . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-cv-2898, 2012 WL 651727, at *4 (N.D. Ill. Feb. 28, 2012) (*quoting Amchem*, 521 U.S. at 622 ("settlement is a factor in the calculus" in determining whether certification is proper)). Accordingly, a class action is the superior method of adjudicating this action.

### 3. The proposed notice plan satisfies Due Process and the requirements of Federal Rule 23.

When a class is certified through settlement, Due Process and Rule 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06-cv-7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016). Where, as here, a class is certified pursuant to Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must contain information in plain, easily understood language, including the nature of the action, the class definition(s), the claims, and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see In re AT&T*, 270 F.R.D. at 352.

As discussed above, the Parties have agreed to a comprehensive notice plan that more than satisfies the requirements of Due Process and Rule 23. The Settlement Agreement contemplates a multi-part notice plan designed to reach as many potential Settlement Class

Members as possible. The Settlement Administrator estimates that the notice plan will reach over 80% of potential Settlement Class Members. (*See* Declaration of Cameron R. Azari, Director of Legal Notice for Epiq, attached hereto as <u>Exhibit E</u>, at ¶ 11.) Under the notice plan, the Settlement Administrator will send direct notice of the Settlement via email or U.S. Mail to Settlement Class Members who will be identified by conducting a reverse-lookup of the phone numbers from Wells Fargo's Notice Database coded as wrong number calls. Because accurate contact information for some Settlement Class Members may not be readily available through the reverse-lookup process, the direct notice will be supplemented with extensive publication notice, including both widespread internet notice as well as via print publication, which will be published as soon as practicable after preliminary approval. "When individual notice is infeasible, notice by publication in a newspaper of national circulation . . . is an acceptable substitute." *Mirfasihi v. Fleet Mortg. Corp*., 356 F.3d 781, 786 (7th Cir. 2004) ("[Individual] notice is preferable to newspaper or other collective notice but it was impossible here because [Defendant] has no record of those customers whose financial information it gave the telemarketers but who did not buy anything from the latter"). Additionally, the Settlement Administrator will establish a website containing relevant court documents, notices, and the Claim Form, and which will provide for online and telephonic submission of claims. In accordance with Rule 23(e)(4), the notices will all inform Settlement Class Members of their right to object or exclude themselves from the Settlement and the process and deadlines for doing so.

Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days after filing the Agreement with the Court, Wells Fargo will send required notice to the appropriate government entities. 28 U.S.C § 1715(b). Because the proposed notice plan

effectuates direct notice to all Class Members identified by Wells Fargo's records, reaches other potential Class Members through publication notice and the Settlement Website, and fully apprises class members of their rights, it comports with the requirements of Due Process and Rule 23 and should be approved.

### 4. Plaintiffs' Counsel should be appointed Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation, and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

As described in detail above, proposed Class Counsel have diligently investigated Plaintiffs' TCPA claims and the feasibility of class certification, have committed extensive efforts to negotiating and executing this Settlement and the related papers, and have devoted and will continue to devote substantial time and resources to this litigation. Proposed Class Counsel have extensive experience with similar class action litigation, including scores of TCPA cases, and have been appointed class counsel in many class actions, including numerous TCPA cases in this District and in courts throughout the country. (Meyers Decl., at ¶¶ 9–10; Hutchinson Decl., at ¶¶ 8–14; Girard Decl., at ¶¶ 21–22.) Proposed Class Counsel have an in-depth knowledge of the laws applicable to the Settlement Class Members' claims and certification of the Settlement Class. (*See* Meyers Decl., at ¶ 10; Hutchinson Decl., at ¶ 8(b)–(s); Girard Decl., at ¶¶ 3–20.) Accordingly, the Court should appoint Plaintiffs' Counsel to serve as Class Counsel for the proposed Settlement Class pursuant to Rule 23(g).

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (1) granting preliminary approval of the proposed Settlement; (2) appointing Plaintiffs Joseph Dunn, Helen Iehl, Albert Pieterson, John Hastings, Windie Bishop, Lisa Barnes, Angela Garr, and Myesha Prather as Class Representatives; (3) appointing Myles McGuire, Evan M. Meyers and Eugene Y. Turin of McGuire Law, P.C.; Jonathan D. Selbin and Daniel M. Hutchinson of Lieff Cabraser Heimann & Bernstein, LLP; and Daniel C. Girard and Angelica M. Ornelas of Girard Sharp, LLP as Class Counsel; (4) approving the form and content of the proposed notice and ordering that it be effectuated; (5) scheduling a final approval hearing; and (6) providing such other and further relief as the Court deems reasonable and just.

Dated:  July 2, 2019                     Respectfully submitted,

JOSEPH DUNN, HELEN IEHL, ALBERT
PIETERSON, JOHN HASTINGS, WINDIE
BISHOP, LISA BARNES, ANGELA GARR,
MYESHA PRATHER individually and on behalf of
a class of similarly situated individuals

By: /s/ Evan M. Meyers
          One of Plaintiffs' Attorneys

Myles McGuire
Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

Jonathan D. Selbin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Fl.

New York, NY 10013
Tel: (212) 355-9000
jselbin@lchb.com

Daniel M. Hutchinson
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Fl.
San Francisco, CA 94111
Tel: (415) 956-1000
dhutchinson@lchb.com

Daniel C. Girard
Angelica M. Ornelas
GIRARD SHARP LLP
601 California Street, Ste. 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dgirard@girardgibbs.com
aornelas@girardsharp.com

*Counsel for Plaintiffs and
Proposed Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2019, I electronically filed the foregoing *Plaintiffs'*
*Unopposed Motion for Preliminary Approval of Class Action Settlement* with the Clerk of the
Court using the CM/ECF system. A copy of said document will be electronically transmitted to
all counsel of record.

/s/ Evan M. Meyers