# Exhibit A

**<u>SETTLEMENT AGREEMENT</u>**

**TABLE OF CONTENTS**

**Page**

I. BACKGROUND ..................................................................................1

II. DEFINITIONS ..................................................................................4

III. SETTLEMENT CLASS CERTIFICATION ....................................7

IV. SETTLEMENT OF LITIGATION and ALL CLAIMS AGAINST THE
RELEASED PARTIES ........................................................................9

V. SETTLEMENT FUND .....................................................................9

VI. RELEASE .......................................................................................12

VII. CERTIFICATION OF THE SETTLEMENT CLASS AND RELATED
MOTIONS ........................................................................................14

VIII. NOTICE TO PROPOSED SETTLEMENT CLASS MEMBERS ...................14

IX. OPT-OUTS .....................................................................................17

X. OBJECTIONS .................................................................................18

XI. FINAL APPROVAL HEARING.....................................................19

XII. FINAL APPROVAL ORDER ........................................................19

XIII. FINALITY ORDER........................................................................20

XIV. TERMINATION OF THE SETTLEMENT ...................................20

XV. ATTORNEYS' FEES AND INCENTIVE AWARDS.....................21

XVI. REPRESENTATIONS ....................................................................21

XVII. TAXES............................................................................................23

## SETTLEMENT AGREEMENT

This settlement agreement ("Agreement" or "Settlement Agreement") is entered into by and between Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo," as defined herein) and Joseph Dunn, Helen Iehl, Albert Pieterson, John Hastings, Windie Bishop, Angela Garr, Lisa Barnes and Myesha Prather ("Plaintiffs," as defined herein), both individually and on behalf of a Settlement Class (as defined herein).

## I.   BACKGROUND

1.   Plaintiffs in multiple courts around the country have commenced litigation challenging the legality of Wells Fargo's calling practices. On January 20, 2017, Plaintiff Prather filed a putative class action lawsuit against Wells Fargo Bank alleging violations of the Telephone Consumer Protection Act ("TCPA"), in the United States District Court for the Northern District of Illinois, captioned *Prather et al v. Wells Fargo Bank, N.A.*, No. 17-cv-00481 ("*Prather*"). On April 25, 2017, Plaintiff Albert Pieterson filed a putative class action lawsuit against Wells Fargo alleging violations of the TCPA, in the United States District Court for the Northern District of California, captioned *Pieterson et al v. Wells Fargo Bank, N.A.*, No. 17-cv-02306 ("*Pieterson*"). On April 27, 2017, Plaintiff Windie Bishop filed a putative class action lawsuit against Wells Fargo Bank alleging violations of the TCPA, in the United States District Court for the Northern District of Georgia, captioned *Bishop et al v. Wells Fargo Bank, N.A.*, No. 17-cv-01505 ("*Bishop*"). On June 24, 2017, Plaintiff John Hastings filed a putative class action lawsuit against Wells Fargo alleging violations of the TCPA, in the United States District Court for the Northern District of California, captioned *Hastings et al v. Wells Fargo Bank, N.A.*, No. 17-cv-03633 ("*Hastings*"). On October 25, 2018, Plaintiff Lisa Barnes filed a putative class action lawsuit against Wells Fargo Bank alleging violations of the TCPA, in the United States District Court for the Northern District of California, captioned *Barnes et al v. Wells Fargo Bank, N.A.*, No. 18-cv-06520 ("*Barnes*"). On November 19, 2018, Plaintiff Angela Garr filed a putative class action lawsuit against Wells Fargo Bank alleging violations of the TCPA, in the United States District Court for the Northern District of California, captioned *Garr et al v. Wells Fargo Bank, N.A.*, No. 18-cv-06997 ("*Garr*"). The aforementioned lawsuits, *Prather*, *Pieterson*, *Bishop*, *Hastings*, *Barnes*, and *Garr*, are hereafter referred to collectively as the "Litigation").

2.   Plaintiffs' proposed Amended Complaint, a copy of which is attached hereto as Exhibit 1, and which Plaintiffs will file in the Northern District of Illinois as the operative complaint in this matter, alleges that Wells Fargo's conduct violates the TCPA. Plaintiffs will dismiss the Related Actions without prejudice and will seek Court approval of this Settlement Agreement in the Northern District of Illinois as part of this matter.

3.      Defendant denies any liability or wrongdoing of any kind associated with the alleged claims in the Litigation. Defendant has denied and continues to deny each and every material factual allegation and all claims asserted against it in the Litigation. Nothing herein shall constitute an admission of wrongdoing or liability, or of the truth of any allegations in the Litigation. Nothing herein shall constitute an admission by Defendant that the Litigation has been properly brought on a class or representative basis, or that classes may be certified in the Litigation, other than for settlement purposes. To this end, the settlement of the Litigation, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of the Settlement: (i) are not and shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the allegations in the Litigation; (ii) are not and shall not be deemed to be, and may not be used as an admission or evidence of any fault or omission on the part of Defendant in any civil, criminal or administrative proceeding in any court, arbitration forum, administrative agency or other tribunal; and, (iii) are not and shall not be deemed to be and may not be used as an admission of the appropriateness of these or similar claims for class certification.

4.      This Settlement Agreement resulted from good faith, arm's-length settlement negotiations, including an in-person mediation, as well as telephonic conferences with a JAMS Chicago neutral, the Hon. James F. Holderman (Ret.), a former Chief Judge of the United States District Court, Northern District of Illinois. The Parties submitted detailed mediation submissions to Judge Holderman, setting forth their respective views as to the relative strengths of their positions. In connection with the underlying litigation, Class Counsel have reviewed and analyzed thousands of pages of documents, discovery responses and call data produced in this Action and in similar lawsuits brought against Wells Fargo, and they have engaged expert witnesses to assist with their analysis of the information produced by Wells Fargo. Additionally, Class Counsel have taken multiple in-person depositions of Defendant's representatives located in several states, propounded discovery to confirm the accuracy of Defendant's representations contained herein, investigated Defendant's historical automated calling practices, and researched Defendant's litigation and settlement history.

5.      Class Counsel have conducted an investigation into the facts and the law regarding the Litigation. Class Counsel have concluded that a settlement according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best interests of Plaintiffs and the Class recognizing (1) the existence of complex and contested issues of law and fact, (2) the ongoing regulatory proceedings concerning the scope of the TCPA, and divergent judicial decisions interpreting various provisions of the TCPA, (3) the risks inherent in litigation, (4) the likelihood that future proceedings will be unduly protracted and expensive if the proceeding is not settled by voluntary agreement, (5) the magnitude of the benefits derived from the contemplated settlement in light of both the maximum potential and likely range of recovery to be obtained through further litigation and the expense thereof, as well as the potential of no recovery

2

whatsoever, and (6) the Plaintiffs' determination that the settlement is fair, reasonable, adequate, and will substantially benefit the Class Members.

6.   The Parties shall use their best efforts to effectuate this Agreement, including, but not limited to, cooperating in promptly seeking the Court's approval of this Agreement, certification of the Settlement Class, and release by the Releasors of the Released Claims.

7.   No party shall be deemed the drafter of this Agreement or any provision thereof. No presumption shall be deemed to exist in favor of or against any party as a result of the preparation or negotiation of this Agreement.

8.   This Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the state of Illinois without regard to conflict of laws principles.

9.   Nothing express or implied in this Agreement is intended or shall be construed to confer upon or give any person or entity other than the Parties, Released Parties, and Settlement Class Members any right or remedy under or by reason of this Agreement. Each of the Released Parties is an intended third-party beneficiary of this Agreement with respect to the Released Claims and shall have the right and power to enforce the release of the Released Claims in his, her or its favor against all Releasors.

10.  This Agreement may be executed in multiple counterparts, all of which taken together shall constitute one and the same Settlement Agreement.

11.  This Agreement may not be modified or amended unless such modification or amendment is in writing executed by the Parties, except as specifically permitted by this Agreement. An electronic signature will be considered an original signature for purposes of execution of this Agreement.

12.  Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by email or letter by overnight delivery to their counsel in the Litigation.

13.  In consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Litigation be settled and compromised, and that the Releasors release the Released Parties of the Released Claims, without costs as to the Released Parties, Plaintiffs, Class Counsel, or the Settlement Class, except as explicitly provided for in this Agreement, subject to the approval of the Court, on the following terms and conditions.

II. **DEFINITIONS**

The following terms, as used in this Agreement, have the following meanings:

14. "Administrative Expenses" shall mean expenses associated with the Settlement Administrator, including but not limited to costs in providing notice, communicating with Class Members, and disbursing payments to the proposed Settlement Class Members.

15. "Approved Claims" shall mean complete and timely claims, submitted by Settlement Class Members, that have been approved for payment by the Settlement Administrator.

16. "Cash Award" means a cash payment to an eligible Settlement Class Member

17. "Call," "Calls" or "Called," consistent with applicable regulations and legal authority interpreting the TCPA, means and includes voice calls and SMS/text messages made or sent using equipment that constitutes or may constitute an automatic telephone dialing system, as well as artificial or prerecorded voice calls.

18. "Claim Form" shall mean the form that Settlement Class Members may submit to obtain compensation under this Settlement.

19. "Claims Deadline" shall mean the date by which all Claim Forms must be postmarked (if mailed) or submitted (if filed electronically) to be considered timely and shall be set as a date approximately 165 (one hundred sixty-five) days after entry of the Preliminary Approval Order, or such other date ordered by the Court. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order as well as in the Notice and the Claim Form.

20. "Class" or "Class Member" shall mean and refer to all persons within the United States who used or subscribed to a wireless or cellular phone number to which Wells Fargo made or initiated any Call during the Class Period (a) in connection with the collection or servicing of a mortgage or home equity loan, credit card account, retail installment sale contract for an automobile, automobile loan, overdraft on a deposit account, student loan, or in connection with a fraud alert on a credit card or deposit account, using any automated dialing technology or artificial or prerecorded voice technology, and (b) who were not customers of Wells Fargo at the time of the Call. Defendant and any affiliate or subsidiary of Defendant, and any entities in which any of such companies have a controlling interest, are also excluded from the Class.

21. "Class Counsel" shall refer to Co-Lead Class Counsel and Additional Class Counsel. "Co-Lead Class Counsel" shall refer to McGuire Law, P.C.; Lieff Cabraser Heimann & Bernstein, LLP; and Girard Sharp LLP. "Additional Class Counsel" shall refer to Burke Law Offices; Morgan and Morgan Complex Litigation Group; Skaar & Feagle, LLP; Law Offices of Todd M. Friedman, P.C.;

4

Greenwald Davidson Radbil PLLC, Keogh Law Ltd; Law Offices of Douglas J. Campion, APC; Meyer Wilson Co., LPA; and McMorrow Law, P.C.

22. "Class Period" means January 20, 2013 through the entry of the Preliminary Approval Order for Calls placed in connection with automobile loans or fraud alerts on credit cards or deposit accounts; September 18, 2014 to the entry of the Preliminary Approval Order for Calls placed in connection with credit card accounts; December 20, 2015 to the entry of the Preliminary Approval Order for Calls placed in connection with student loans or overdrafts on deposit accounts; March 1, 2016 to the entry of the Preliminary Approval Order for Calls placed in connection with mortgages or home equity loans; and April 1, 2016 to the entry of the Preliminary Approval Order for Calls placed in connection with retail installment sale contracts for automobiles.

23. "Class Release" shall have the meaning set forth in Section VI of this Agreement.

24. "Class Relief" means those benefits provided to Settlement Class Members by the Settlement Agreement, including without limitation the right to submit a Claim Form.

25. "Class Representatives" or "Plaintiffs" shall mean Joseph Dunn, Helen Iehl, Albert Pieterson, John Hastings, Windie Bishop, Angela Garr, Lisa Barnes, and Myesha Prather.

26. "Counsel" means both Class Counsel and Wells Fargo's Counsel, as defined herein.

27. "Court" shall mean the United States District Court for the Northern District of Illinois and the Honorable Manish S. Shah, and his successors, if any.

28. "Effective Date" shall mean five (5) days after the date when the judgment entered as a result of the Final Approval Order becomes Final.

29. "Estimated Class Size" means the Parties' good faith estimate of the number of unique cellular telephone numbers used or subscribed to by Settlement Class Members to which Wells Fargo made or initiated Calls during the Class Period using any automated dialing technology or artificial or prerecorded voice technology, based on analysis of information contained in Wells Fargo's available records and following confirmatory discovery. As of the date of the execution of this Agreement, the class size is estimated at 440,000 or less.

30. "Execution Date" shall mean the date on which this Agreement is fully executed by all Parties.

31. "Final" means the judgment and Final Approval Order have been entered on the docket, and (a) the time to appeal from such order and judgment has expired and no appeal has been timely filed; (b) if such an appeal has been filed, it has been finally resolved and has resulted in an affirmation of the Final Approval Order

and judgment; or (c) the Court following the resolution of the appeal enters a further order or orders approving settlement on the material terms set forth herein, and either no further appeal is taken from such order(s) or any such appeal results in affirmation of such order(s).

32.    "Final Approval Hearing" means the hearing before the Court where the Plaintiffs will request a judgment to be entered by the Court approving the Settlement Agreement, approving Class Counsel's request for an award of attorneys' fees and costs, and approving an incentive award to the Class Representatives. The Parties will request that the Court schedule the Final Approval Hearing approximately one hundred fifty (150) days after entry of the Preliminary Approval Order.

33.    "Final Approval Order" shall mean an order entered by the Court that:

    a.    Certifies the Class pursuant to Fed. R. Civ. P. 23(b)(3);

    b.    Finds that the Settlement Agreement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and approves and directs consummation of this Agreement;

    c.    Dismisses the Plaintiffs' claims pending before it with prejudice and without costs, except as explicitly provided for in this Agreement;

    d.    Approves the Class Release provided in Section VI and orders that, as of the Effective Date, the Released Claims will be released as to the Released Parties;

    e.    Reserves exclusive jurisdiction over the settlement and this Agreement; and

    f.    Finds that, pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

34.    "Opt-Out" shall mean a written request for exclusion from the Settlement Class as provided in Section IX of this Settlement Agreement.

35.    "Opt-Out Period" shall have the meaning set forth in Section IX of this Settlement Agreement.

36.    "Parties" shall mean Wells Fargo Plaintiffs, and the proposed Settlement Class.

37.    "Preliminary Approval Order" shall mean an order of the Court preliminarily approving the Settlement Agreement.

38.    "Released Claims" shall mean the claims against the Released Parties described in paragraph 55.

39.     "Released Parties" means Defendant and each of its respective past, present and future parents, subsidiaries, affiliated companies and corporations, and each of their respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, assigns, or related entities, and each of their respective executors, successors, and legal representatives, and also includes the following entities that placed calls or texts on Wells Fargo's behalf: Genesys, FICO Customer Communication Services, mBlox, Inc., CLX Communications, and Sinch.

40.     "Releasors" shall refer, jointly and severally, and individually and collectively, to Plaintiffs, the Settlement Class Members, and to each of their predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing, and anyone claiming by, through, or on behalf of them.

41.     "Related Actions" shall refer to *Pieterson et al v. Wells Fargo Bank, N.A.*, No. 17-cv-02306 (N.D. Cal); *Hastings et al v. Wells Fargo Bank, N.A.,* No. 17-cv-03633 (N.D. Cal.); *Barnes et al v. Wells Fargo Bank, N.A.*, No. 18-cv-06520 (N.D. Cal.); *Garr et al v. Wells Fargo Bank, N.A.*, No. 18-cv-06997 (N.D. Cal.).

42.     "Settlement Administrator" means Epiq Systems, Inc., the entity mutually selected and supervised by the Parties and approved by the Court to administer the settlement.

43.     "Settlement Class" or "Settlement Class Members" shall mean and refer to those persons who are members of the Class defined in paragraph 20 and who do not timely and validly request exclusion from the Settlement Class.

44.     "Settlement Fund" means the total sum of $17,850,000.00 (Seventeen Million Eight Hundred Fifty Thousand Dollars) that Defendant will pay to settle the Litigation and obtain a release of all Released Claims.

45.     "Wells Fargo" or "Defendant" shall mean Wells Fargo Bank, N.A., its past and present parents, predecessors, successors, affiliates, holding companies, subsidiaries, partners, employees, agents, assigns, and board members.

46.     "Wells Fargo's Counsel" or "Defendant's Counsel" shall refer to Mark D. Lonergan and Rebecca S. Saelao of Severson & Werson, P.C.

## III.    SETTLEMENT CLASS CERTIFICATION

47.     Defendant disputes that a class would be manageable or that common issues predominate over individual ones, and further denies that a litigation class properly could be certified on the claims asserted in the Litigation. However, solely for purposes of avoiding the expense and inconvenience of further litigation, Defendant does not oppose the certification of the Class for settlement purposes only. Preliminary certification of the Class for settlement purposes shall not be deemed a concession that certification of a litigation class is appropriate,

nor would Defendant be precluded from challenging class certification in further proceedings in the Litigation or in any other action if the Settlement Agreement is not finalized or finally approved. If the Settlement Agreement is not finally approved by the Court for any reason whatsoever, any certification of the Class will be void, and no doctrine of waiver, estoppel or preclusion will be asserted against Defendant in any litigated certification proceedings in the Litigation. No agreements made by or entered into by Defendant in connection with the Settlement Agreement may be used by Plaintiffs, any person in the Class or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the Litigation or any other judicial proceeding.

48.     Subject to Court approval, and for settlement purposes only, the following Class shall be certified:

All persons

a.      who were users or subscribers to a wireless or cellular telephone service within the United States to which Wells Fargo made or initiated any Call in connection with the collection or servicing of a mortgage or home equity loan, credit card account, retail installment sale contract for an automobile, automobile loan, overdraft on a deposit account, student loan, or in connection with a fraud alert on a credit card or deposit account, using any automated dialing technology or artificial or prerecorded voice technology;

b.      who were not customers of Wells Fargo at the time of the Call; and,

c.      who were Called between January 20, 2013 and the entry of the Preliminary Approval Order for Calls placed in connection with automobile loans or fraud alerts on credit cards or deposit accounts; between September 18, 2014 and the entry of the Preliminary Approval Order for Calls placed in connection with credit card accounts; between December 20, 2015 and the entry of the Preliminary Approval Order for Calls placed in connection with student loans or overdrafts on deposit accounts; between March 1, 2016 and the entry of the Preliminary Approval Order for Calls placed in connection with mortgages or home equity loans; or between April 1, 2016 and the entry of the Preliminary Approval Order for Calls placed in connection with retail installment sale contracts for automobiles.

d.      Excluded from the Class are Defendant, any affiliate or subsidiary of Defendant, any entities in which such companies have a controlling interest, the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

49.     If for any reason the settlement is not granted preliminary and final approval, Defendant's agreement to certification of the Class shall not be used for any purpose, including in any request for class certification in the Litigation or any other proceeding.

8

## IV. SETTLEMENT OF LITIGATION AND ALL CLAIMS AGAINST THE RELEASED PARTIES

50. Final approval of this Settlement Agreement will settle and resolve with finality, on behalf of the Plaintiffs and the Settlement Class, the Litigation and the Released Claims.

## V. SETTLEMENT FUND

51. **Establishment of Settlement Fund**

a. Within twenty (20) business days after the Effective Date, Defendant shall pay the total sum of $17,850,000 (Seventeen Million Eight Hundred Fifty Thousand Dollars), less any amounts already advanced by Defendant for Administrative Expenses, to create a Settlement Fund.

b. The Settlement Fund shall be used to pay (i) all Cash Awards pursuant to any Approved Claims; (ii) any incentive award to the Class Representatives; (iii) attorneys' fees, costs, and expenses of Class Counsel; and (iv) costs of administration of the Agreement, including without limitation payment of Administrative Expenses.

c. Any award of attorneys' fees, administrative costs, or any other fees, costs, or benefits otherwise awarded in connection with the Settlement Agreement shall be payable solely out of the Settlement Fund.

d. Provided that this Agreement is finally approved by the Court without material modification or amendment, the Settlement Fund, after deduction of fees and costs, will be used to satisfy Approved Claims for Settlement Class Members in exchange for a mutual release and covenants set forth in this Agreement, including, without limitation, a full, fair and complete release of all the Released Parties from Released Claims, and dismissal of the Litigation with prejudice.

e. Settlement benefits shall be allocated to the Settlement Class Members via a claims process set forth in paragraph 53.

f. The Court may require changes to the method of allocation to Settlement Class Members without invalidating this Settlement Agreement, provided that the other material terms of the Settlement Agreement are not materially altered, including but not limited to the scope of the Release, the Class Period, and the amount of the Settlement Fund.

g. Defendant's contribution to the Settlement Fund shall be fixed under this Section and be final. Defendant shall have no obligation to make further payments into the Settlement Fund and shall have no financial responsibility or obligation relating to the settlement beyond establishing the Settlement Fund. If the Settlement Agreement is not finally approved,

9

the Settlement Fund belongs to Defendant, less any Administrative Expenses paid to date. Plaintiffs shall have no financial responsibility for any Administrative Expenses paid out of the Settlement Fund in the event that the Settlement Agreement is not finally approved.

52. A Settlement Class Member who timely submits a valid Claim Form shall share in the Settlement Fund. Each Settlement Class Member who makes a valid and timely claim shall receive a payment as set forth in paragraph 53.

53. **Submission, Evaluation, and Payment of Claims**

a. All claims must be submitted on a Claim Form, either electronic or hard copy, or by providing telephonically all to the Settlement Administrator all of the information requested in the Claim Form. The Claim Form will require the Settlement Class Member to provide his or her full name, mailing address, contact telephone number and email address, the cellular telephone number to which the phone Call(s) at issue in the Litigation were placed, and an affirmation that he/she was not a Wells Fargo customer at the time of the Call at issue.

b. The Claim Form must be submitted on or before the Claims Deadline, which shall be approximately one hundred sixty-five (165) days after entry of the Preliminary Approval Order, or such other date set by the Court. The Claim Form shall be substantially in the form attached hereto as Exhibit 2.

c. Completed Claim Forms shall be submitted directly to the Settlement Administrator for processing, assessment, and payment. The Claim Form may be mailed to the Settlement Administrator, electronically transmitted to the Settlement Administrator by email or through the Settlement Website, or the information requested in the Claim Form may be submitted telephonically through a phone number established by the Settlement Administrator.

d. Any Claim Form that lacks the requisite information will be deemed to be incomplete and ineligible for payment. For any partially completed Claim Forms, the Settlement Administrator shall attempt to contact the Settlement Class Member who submitted the Claim Form at least one time by e-mail or, if no e-mail address is available, by regular U.S. mail (1) to inform the Settlement Class Member of any errors and/or omissions in the Claim Form and (2) to give the Settlement Class Member one opportunity to cure any errors and/or omissions in the Claim Form. The Settlement Class Member shall have until the Claims Deadline or thirty (30) days after the Settlement Administrator sends the e-mail or regular mail notice to the Proof of Class Member regarding the deficiencies in the Claim Form, whichever is later, to cure the errors and/or omissions in the Claim Form.

10

e.      Unless the Court orders otherwise, a Settlement Class Member is not entitled to Class Relief if he/she submits a Claim Form after the Claims Deadline, or if the Claim Form is incomplete after an opportunity to cure any errors and/or omissions or contains false information.

f.      In order for a claim to be approved, the Settlement Administrator must verify that (a) the claimant was not a Wells Fargo customer and (b) Wells Fargo made one or more Calls during the Class Period to the cellular telephone number provided on the Claim Form in connection with one or more of the account types listed in paragraph 20.

g.      If the Settlement Class Member was Called in connection with more than one type of account, a separate claim will be paid for each type of account on which a Call was made. For example, if a Settlement Class Member was Called in connection with a credit card account and a mortgage, the Settlement Administrator will treat the Settlement Class Member as having submitted two valid claims. However, only one claim will be approved for each type of account on which a Call was made, regardless of the number of Calls made on that account.

h.      After determining the total number of Approved Claims submitted by all Settlement Class Members, and after determining the amount remaining in the Settlement Fund after payment of Administrative Expenses to the Settlement Administrator, fees and costs to Class Counsel, and an incentive award to the Class Representatives, the remainder of the Settlement Fund shall be distributed to Settlement Class Members based on the total number of Approved Claims and the number of such claims submitted by each Settlement Class Member.

i.      The Settlement Administrator shall have sole and final authority for determining if Settlement Class Members' Claim Forms are complete and timely, in which case they will be accepted as Approved Claims. The Settlement Administrator may reject or accept any Claim Form submitted, and may, upon its sole discretion, request additional information prior to rejecting or accepting any Claim Form submitted.

j.      Within fourteen (14) days of completion of its review of the Claim Forms, the Settlement Administrator will submit to the Parties a report listing all Approved Claims.

k.      The funds provided to the Settlement Administrator will be maintained by an escrow agent as a Court-approved Qualified Settlement Fund pursuant to Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended, and shall be deposited in an interest-bearing account.

l.    Prompt payment shall be made by the Settlement Administrator on Approved Claims after the Effective Date of the settlement. Checks will be mailed to Settlement Class Members with Approved Claims. The Settlement Administrator shall use the addresses provided by the Settlement Class Members on the Approved Claims.

m.    The Settlement Administrator shall notify the Parties that all Approved Claims have been paid within ten (10) days of the last such payment.

n.    In the event that checks sent to Settlement Class Members are not cashed within one hundred eighty (180) days of their mailing date, whether because the checks were not received or otherwise, those checks will become null and void. Provided that the amount of the uncashed checks after the expiration date, less any funds necessary for settlement administration, would allow a further distribution to the qualifying claimants equal to or greater than $1.00 per qualifying claimant, such amount will be redistributed in equal amounts to the Settlement Class Members who submitted Approved Claims and cashed their checks. In the event that those redistributed checks are not cashed within ninety (90) days of their mailing date, whether because the checks were not received or otherwise, those checks will become null and void. The amount of the null and void checks will be paid through *cy pres* to one or more recipients selected by the Parties and approved by the Court. The Court may revise this *cy pres* provision as necessary without terminating or otherwise impacting this settlement, provided the Court's revision does not increase the amount that Defendant would otherwise pay under this Agreement.

## VI.   **RELEASE**

54.    In addition to the effect of any final judgment entered in accordance with this Agreement, upon final approval of this Agreement, and for other valuable consideration as described herein, the Released Parties shall be completely released, acquitted, and forever discharged from any and all Released Claims ("Class Release").

55.    As of the Effective Date, and with the approval of the Court, Plaintiffs and each Settlement Class Member, as well as their respective assigns, executors, administrators, successors and agents, hereby release, resolve, relinquish and discharge each and all of the Released Parties from each of the Released Claims (as defined below). The Settlement Class Members further agree that they will not institute any action or cause of action (in law, in equity or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have, in state or federal court, in arbitration, or with any state, federal or local government agency or with any administrative or advisory body, arising from the Released Claims. The release does not apply to members of the Class who timely opt-out of the Settlement. "Released Claims" mean any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises,

liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Final Approval Order, that arise out of or relate to the Released Parties' use of an "automatic telephone dialing system" or "artificial or prerecorded voice" to contact or attempt to contact Settlement Class Members on a wireless or cellular telephone in connection with the collection or servicing of a mortgage or home equity loan, credit card account, retail installment sales contract for an automobile, automobile loan, overdraft on a deposit account, student loan, or, in connection with a fraud alert on a credit card or deposit account during the Class Period. Notwithstanding the above, the Parties agree that claims arising from any Call to the extent it had a telemarketing purpose are not released. Nothing in the Settlement shall be construed to limit a Settlement Class Members' rights to contact, in any way or for any purpose, any state or federal agency regarding the activities of any party.

56. Each Releasor waives California Civil Code Section 1542 and similar provisions in other states. Each Releasor hereby certifies that he, she, or it is aware of and has read and reviewed the following provision of California Civil Code Section 1542 ("Section 1542"):

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her would have materially affected his or her settlement with the debtor or released party.

57. The provisions of the Class Release shall apply according to their terms, regardless of the provisions of Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction.

58. Each Releasor waives any and all defenses, rights, and benefits that may be derived from the provisions of applicable law in any jurisdiction that, absent such waiver, may limit the extent or effect of the release contained in this Agreement.

59. The Parties and each member of the proposed Settlement Class agree that the amounts to be paid under this Settlement Agreement to each Settlement Class Member represent the satisfaction of that Settlement Class Member's claims for the Released Claims. No portion of such settlement represents the payment of punitive or exemplary damages. Nonetheless, in consideration for the satisfaction of each Settlement Class Member's claim for compensatory damages, claims for punitive or exemplary damages arising from the Released Claims shall be released.

13

## VII. CERTIFICATION OF THE CLASS AND RELATED MOTIONS

60. This Settlement shall be subject to approval of the Court. As set forth in this Agreement, Defendant shall have the right to withdraw from the Settlement if the Court does not issue any of the requested orders (including the Final Approval Order) or if the Class is not certified, among other circumstances.

61. Plaintiffs shall submit to the Court a motion (the "Preliminary Approval Motion"): (a) for certification of the Settlement Class; and (b) for preliminary approval of the Agreement, and authorization to disseminate notice of class certification and settlement, the Settlement Agreement, and the final judgment contemplated by this Settlement Agreement to all potential Class Members. The Preliminary Approval Motion shall include: (i) the definition of the Class for settlement purposes as set forth in this Agreement; (ii) a proposed form of, method for, and date of dissemination of notice; (iii) a proposed form of preliminary approval, (iv) a proposed Claim Form; and (v) a date for the final approval hearing.

## VIII. NOTICE TO PROPOSED SETTLEMENT CLASS MEMBERS

62. **Payment of Administrative Expenses**

a. Wells Fargo shall pay the reasonable Administrative Expenses incurred prior to the creation of the Settlement Fund, and Wells Fargo will be given credit for all such payments which shall be deducted from the Settlement Fund as set forth below. The Settlement Administrator shall provide the Parties with an estimate of the costs of sending notice, establishing the Settlement Website and establishing a toll-free number, as well as any other initial Administrative Expenses. Wells Fargo shall pay the estimated amount to the Settlement Administrator within ten (10) business days after the entry of the Preliminary Approval Order. After that upfront payment of administration costs by Wells Fargo, the Settlement Administrator shall bill Wells Fargo monthly for any reasonable additional Administrative Expenses, until such a time as the Settlement Fund is established. Any amounts paid by Wells Fargo for the estimated costs of administration which are not incurred by the Settlement Administrator shall be used for other Administrative Expenses, or shall be deducted from future billings by the Settlement Administrator.

b. The Settlement Administrator shall maintain detailed records of the Administrative Expenses and shall provide those to the Parties monthly. At such time that Wells Fargo funds the Settlement Fund, all amounts previously paid to the Settlement Administrator by Wells Fargo shall be deducted from the total payment which it is required to pay to create the Settlement Fund under Section V. After Wells Fargo has created the Settlement Fund, Wells Fargo shall have no further obligation to pay any

14

amount under this Settlement Agreement, and any additional Administrative Expenses shall be paid out of the Settlement Fund.

63. **Notice to the Class**

a. To facilitate the notice and claims administration process, Wells Fargo will provide to the Settlement Administrator and to Class Counsel, within forty-five (45) days of entry of the Preliminary Approval Order, in an electronically searchable and readable format, Notice Databases for each type of account listed in paragraph 20. Each Notice Database will include (a) the cellular telephone numbers associated with a "wrong number" code in Wells Fargo's records to which Wells Fargo made Calls during the Class Period corresponding to the particular type of account, and (b) the name(s) and last known mailing address(es) for the holder(s) of the account on which the Call was made. Wells Fargo is only obligated to provide such information as is contained in the reasonably available computerized account records of the Defendant.

b. Class Counsel, with the assistance of their consultants/experts and/or the Settlement Administrator, will perform a "reverse look up" of telephone numbers within the Notice Databases to identify the name and address of individuals who were or may have been the user or subscriber of the phone number during the Class Period, and direct mailed Notice will be provided to persons identified through this process for whom the name and/or address information does not reasonably match that of the associated account holder in the Notice Databases. Potential Class Members may also be identified using other methodologies that Class Counsel and their consultants/experts conclude are reasonably likely to identify additional non-customers who are Class Members. These provisions for identification of potential Class Members and direct mailing of Notice are intended to work in conjunction with the other methods of Notice set forth below.

c. The Settlement Administrator will then cross reference the information obtained through this process with the United States Postal Services' change of address database to obtain any updated address information for Class Members.

d. Any personal information relating to members of the Class or to Wells Fargo customers who are not Class Members that is provided to the Settlement Administrator or Class Counsel pursuant to this Settlement shall be provided solely for the purpose of providing notice to members of the Class and allowing them to recover under this Settlement. Such information shall be kept in strict confidence, shall be used only for purposes of this Settlement, and shall not be disclosed to any third party.

15

64. **Form of Notice**

    a.    The Class Settlement Notice, which shall be substantially in the form of Exhibits 3-5 attached hereto, shall be used for the purpose of informing proposed Class Members, prior to the Final Approval Hearing, that there is a pending settlement, and to further (a) inform Class Members as to how they may obtain a copy of the Claim Form; (b) protect their rights regarding the settlement; (c) request exclusion from the Settlement Class and the proposed settlement, if desired; (d) object to any aspect of the proposed settlement, if desired; and (e) participate in the Final Approval Hearing, if desired. Finally, the Notice shall make clear the binding effect of the settlement on all persons who do not timely request exclusion from the Settlement Class.

    b.    Dissemination of the Class Settlement Notice shall be the responsibility of the Settlement Administrator. The text of the Class Settlement Notice shall be agreed upon by the Parties and shall be substantially in the forms attached as Exhibits 3-5 hereto.

    c.    Individual notice (substantially in the form of Exhibit 3) shall be sent by U.S. Mail to potential Class Members identified through the process described in paragraph 63.

    d.    Notice of the settlement (substantially in the form of Exhibit 4) shall also be posted on the Settlement Website. The "Settlement Website" means a website established by the Settlement Administrator, which shall contain information about the Settlement, including electronic copies of Exhibits 3-5 (or any forms of these notices that are approved by the Court), this Settlement Agreement, and all court documents related to the Settlement. The URL of the Settlement Website shall be www.WellsFargoTCPASettlement.com or such other URL as Class Counsel and Defendant may subsequently agree on in writing. Settlement Class Members shall be able to submit Claim Forms via the Settlement Website.

    e.    The Settlement Administrator shall also publish for national circulation in *USA Today* a one-time quarter page ad directed to potential Class Members (substantially in the form of Exhibit 5). In addition, the Settlement Administrator shall design and conduct an internet advertisement publication notice program which must be approved by both Parties. This internet advertisement publication notice shall run for the first twenty-one (21) days of the claims period after the Notice Deadline.

    f.    Toll-Free Telephone Number. No later than at the commencement of the dissemination of Class Settlement Notice, the Settlement Administrator shall set up a toll-free telephone number for receiving toll-free calls

16

related to the Settlement. That telephone number shall be maintained until thirty (30) days after the Claims Deadline. After that time, and for a period of ninety (90) days thereafter, a recording will advise any caller to the toll-free telephone number that the Claims Deadline has passed and the details regarding the Settlement may be reviewed on the related Settlement Website.

g. Press Release. After preliminary approval, Plaintiffs will issue a neutrally worded press release, the contents of which have been agreed to in advance by Defendant. The purpose of the press release is to facilitate Class Members learning about the Settlement through internet searches, and to provide instructions on how they may obtain additional information about the Settlement. The press release will announce that the Litigation has been settled and will include the URL for the dedicated Settlement Website through which Class Members can obtain relevant information.

h. CAFA Notice. Defendant shall be responsible for serving the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715 within ten (10) days of the filing of the Preliminary Approval Motion.

65. **Notice Deadline**

a. The Class Settlement Notice shall be sent directly to all identified potential Class Members within approximately seventy-five (75) days after the date that the Court enters the Preliminary Approval Order, or such other date that the Court may set ("Notice Deadline").

## IX.  OPT-OUTS

66. **Opt-Out Period**

a. Class Members will have up to and including approximately forty-five (45) days following the Notice Deadline to opt out of the settlement in accordance with this Section (the "Opt-Out Deadline"). If the settlement is finally approved by the Court, all Settlement Class Members who have not opted out by the Opt-Out Deadline will be bound by the Settlement and the Class Release, and the relief provided by the Settlement will be their sole and exclusive remedy for the claims alleged by the Settlement Class.

67. **Opt-Out Process**

a. Any Class Member who wishes to be excluded from the Settlement Class must provide a request for exclusion to the Settlement Administrator, known as an "Opt-Out." The Opt-Out must be postmarked, or submitted electronically via the Settlement Website, on or before the Opt-Out Deadline.

17

b.      In order to be valid, the Opt-Out must include: (a) the Class Member's name, address, telephone number, and the telephone number(s) at which any Calls (including any texts) from Wells Fargo were received; (b) the name and/or number of this case; and (c) a statement that the Class Member wishes to be excluded from the Settlement Class. An Opt-Out must be signed by the Class Member. An Opt-Out request that does not contain the required information, is not signed, or is not electronically submitted or postmarked by the Opt-Out Deadline, shall be invalid and the person serving such a request shall be considered a member of the Settlement Class and shall be bound by the Settlement, if approved.

c.      Within three (3) business days after the Opt-Out Deadline, the Settlement Administrator shall provide Counsel a written list reflecting all timely and valid Opt-Outs from the Settlement Class.

d.      A list reflecting all timely and valid Opt-Outs shall also be filed with the Court at the time of the motion for final approval of the settlement.

## X.    **OBJECTIONS**

68.    Settlement Class Members may object to this Agreement up to and including the date set by the Court in the Preliminary Approval Order, which shall be approximately forty-five (45) days following the Notice Deadline ("Objection Deadline").

69.    The Parties will request that the Court order that any Settlement Class Member who has any objection to certification of the Settlement Class, to approval of this Settlement Agreement or any of its terms, or to the approval process must send his or her objection to the Settlement Administrator, Class Counsel, and Defendant's Counsel providing:

a.      the case name and case number(s) of this Litigation;

b.      the objector's full name, current address and phone number;

c.      the phone number on which he or she allegedly received an unauthorized phone Call from Defendant;

d.      the reasons why the objector objects to the Settlement along with any supporting materials;

e.      the identity of any lawyer who assisted, provided advice, or represents the objecting Settlement Class Member as to this case or such objection; and,

f.      the objector's signature.

70.    The Parties will request that the Court set the Objection Deadline approximately forty-five (45) days after the Notice Deadline. The Parties will request that the

Court order that failure to comply timely and fully with these procedures shall result in the invalidity and rejection of an objection. The Parties will request that the Court order that no Settlement Class Member shall be entitled to be heard at the Final Approval Hearing (whether individually or through the objector's counsel), or to object to certification of the Class or to the Settlement Agreement, and no written objections or briefs submitted by any Settlement Class Member shall be received or considered by the Court at the Final Approval Hearing, unless written notice of the Settlement Class Member's objection and any brief in support of the objection have been served upon the Counsel not later than the Objection Deadline.

71. The Parties will request that the Court order that Settlement Class Members who fail to file and serve timely written objections in accordance with this Section shall be deemed to have waived any objections and shall be foreclosed from making any objection to the certification of the Settlement Class or to the Settlement Agreement.

## XI.  FINAL APPROVAL HEARING

72. The Parties will request that the Court hold a Final Approval Hearing.

73. At the Final Approval Hearing, the Parties will request that the Court consider whether the Class should be certified pursuant to Federal Rule of Civil Procedure 23 for settlement, and, if so, (1) consider any properly filed objections to the Settlement Agreement, (2) determine whether the Settlement Agreement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and should be approved, and shall provide findings in connection therewith, and (3) enter the Final Approval Order, including final approval of the Settlement Class and the Settlement Agreement and an award of attorneys' fees and expenses.

## XII.  FINAL APPROVAL ORDER

74. If the Settlement is approved preliminarily by the Court, and all other conditions precedent to the Settlement have been satisfied, no later than fourteen (14) calendar days prior to Final Approval Hearing, Plaintiffs and Defendant shall jointly seek entry of a Final Approval Order. The dismissal orders, motions or stipulation to implement this Section shall, among other things, seek or provide for a dismissal with prejudice and waiving any rights of appeal. The motion for entry of a Final Approval Order will include a declaration from the Settlement Administrator stating that the Notice required by the Agreement has been completed in accordance with the terms of the Preliminary Approval Order.

75. The Parties shall jointly submit to the Court a proposed order, that, without limitation:

a. Approves finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the

meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

b.   Dismisses, with prejudice, all Released Claims of the Settlement Class against Defendant in the Litigation, without costs and fees except as explicitly provided for in this Agreement; and,

c.   Reserves continuing and exclusive jurisdiction over the settlement and this Agreement, including but not limited to the Litigation, the Settlement Class, the Settlement Class Members, Defendant and the settlement for the purposes of administering, consummating, supervising, construing and enforcing the Settlement Agreement and the Settlement Fund.

76.   Class Counsel shall use their best efforts to assist Defendant in obtaining dismissal with prejudice of the Litigation and take all steps necessary and appropriate to otherwise effectuate all aspects of this Agreement.

## XIII.   FINALITY ORDER

77.   As part of the Final Approval Order, the Court's order shall operate to permanently enjoin any and all pending or future claims by Settlement Class Members against the Released Parties raising or arising out of a Released Claim.

78.   The Court's order shall enjoin and forever bar any and all Settlement Class Members from commencing and/or maintaining any action, legal or otherwise, against the Released Parties raising or arising out of a Released Claim.

79.   This provision is not intended to prevent or impede the enforcement of claims or entitlement to benefits under this Settlement Agreement.

## XIV.   TERMINATION OF THE SETTLEMENT

80.   Defendant shall have the right to unilaterally terminate this Agreement by providing written notice of its election to do so ("Termination Notice") to all other Parties hereto within ten (10) calendar days of any of the following occurrences:

a.   the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement Agreement;

b.   an appellate court reverses the Final Approval Order, and the Settlement Agreement is not reinstated without material change by the Court on remand;

c.   any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order, or the Settlement Agreement in a way that is material, unless such modification or amendment is accepted in writing by all Parties;

       d.      More than 1,000 of the Class Members Opt-Out.

       e.      the Effective Date does not occur; or

       f.      any other ground for termination provided for elsewhere in this Agreement occurs.

81.     In the event the Settlement Agreement is not approved or does not become final, or is terminated consistent with this Settlement Agreement, the Parties, pleadings, and proceedings will return to the *status quo ante* as if no settlement had been negotiated or entered into, and the Parties will negotiate in good faith to establish a new schedule for the Litigation.

## XV.   ATTORNEYS' FEES AND INCENTIVE AWARDS

82.     At least thirty (30) days prior to the Objection Deadline, Class Counsel shall petition the Court for an award of attorneys' fees not to exceed one-third of the Settlement Fund, plus their reasonable costs and expenses.

83.     In no event will Defendant have any liability for attorneys' fees, expenses, and costs beyond its obligation to establish the Settlement Fund as set forth in this Agreement. Defendant shall have no financial responsibility for this Settlement Agreement outside of the Settlement Fund. Defendant shall have no further obligation for attorneys' fees and costs sought by any member of the Class or by any counsel representing or working on behalf of one or more Class Members or the Settlement Class. Defendant will have no responsibility, obligation or liability for allocation of fees and costs among Class Counsel or attorneys representing or working on behalf of Class members.

84.     Prior to or at the same time that Plaintiffs seek final approval of the Settlement Agreement, Class Counsel shall petition the Court for an incentive award for the Class Representatives in an amount not to exceed $15,000.00 each, and Defendant agrees that it will not oppose such a request. The incentive awards shall be paid solely from the Settlement Fund.

85.     The payments of attorneys' fees, costs and an incentive award are subject to and dependent upon the Court's approval of the Settlement as fair, reasonable, adequate and in the best interests of the Settlement Class. However, this Settlement is not dependent or conditioned upon the Court approving Plaintiffs' request for such payment or awarding the particular amount sought by Plaintiffs. In the event the Court declines Plaintiffs' request or awards less than the amount sought, this Settlement shall continue to be effective and enforceable by the Parties.

## XVI.   REPRESENTATIONS

86.     The Parties agree that the Settlement Agreement provides fair, equitable and just compensation, and a fair, equitable, and just process for determining eligibility for

compensation for any given Settlement Class Member related to the Released Claims.

87. Class Counsel represent and agree that, within thirty (30) days after the conclusion of the Litigation, they will return to Defendant's Counsel, or certify destruction of, all materials produced by Defendant in this Litigation, whether in their possession or in the possession of their clients, experts, consultants or other persons within their control, and shall provide a declaration to Defendant that such return or destruction has occurred. The Parties represent that they have obtained the requisite authority to enter this Settlement Agreement in a manner that binds each party to its terms.

88. The Parties shall use their best efforts to conclude the settlement and obtain the Final Approval Order, including affirmatively supporting the settlement in the event of an appeal.

89. The Parties specifically acknowledge, agree and admit that this Settlement Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, correspondence, orders or other documents shall be considered a compromise within the meaning of Federal Rules of Evidence Rule 408, and any other equivalent or similar rule of evidence of any state, and shall not (1) constitute, be construed, be offered, or received into evidence as an admission of the validity of any claim or defense, or the truth of any fact alleged or other allegation in the Litigation or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, or (2) be used to establish a waiver by Defendant of any defense or right, or to establish or contest jurisdiction or venue in other litigation.

90. The Parties also agree that this Settlement Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, correspondence, orders or other documents entered in furtherance of this Settlement Agreement, and any acts in the performance of this Settlement Agreement are not intended to establish grounds for certification of any class involving any Class Member other than for certification of the Class for settlement purposes.

91. The provisions of this Settlement Agreement, and any orders, pleadings or other documents entered in furtherance of this Settlement Agreement, may be offered or received in evidence solely (1) to enforce the terms and provisions hereof or thereof, (2) as may be specifically authorized by a court of competent jurisdiction after an adversary hearing upon application of a Party hereto, (3) in order to establish payment, or an affirmative defense of preclusion or bar in a subsequent case, (4) in connection with any motion to enjoin, stay or dismiss any other action, or (5) to obtain Court approval of the Settlement Agreement.

92. Subject to Paragraph 64(g), the Parties agree that they will not initiate any publicity of the Settlement and will not respond to requests by any media (whether print, online, or any traditional or non-traditional form) about the

Settlement. Notice of the Settlement will be delivered exclusively through the notice process set forth in Section 64, above. Nothing in this provision shall be interpreted to limit representations that the Parties or their attorneys may make to the Court to assist it in its evaluation of the proposed Settlement, nor shall this provision prohibit Class Counsel from having communications about the Settlement directly with the Settlement Administrator or with Class Members.

93. This Agreement shall be deemed executed as of the date that the last party signatory signs the Agreement. This Agreement shall fully supersede any previous agreement entered into by the Parties.

## XVII. TAXES

94. Qualified Settlement Fund. The Parties agree that the account into which the Settlement Fund is deposited is intended to be and will at all times constitute a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B 1. The Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of Section 13, including, if necessary, the "relation back election" (as defined in Treas. Reg. §1.468B 1(j)(2)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such Treasury regulations promulgated under §1.468B of the Internal Revenue Code of 1986, as amended (the "Code"). It shall be the responsibility of the Settlement Administrator to cause the timely and proper preparation and delivery of the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

95. The Settlement Administrator is "Administrator." For the purpose of §1.468B of the Code and the Treasury regulations thereunder, the Settlement Administrator shall be designated as the "administrator" of the Settlement Fund. The Settlement Administrator shall cause to be timely and properly filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B 2(k)). Such returns shall reflect that all Taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund.

96. Taxes Paid by Administrator. All taxes arising in connection with income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Defendant or any of the other Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes shall be paid by the Settlement Administrator from the Settlement Fund.

97. Expenses Paid from Fund. Any expenses reasonably incurred by the Claims

23

Administrator in carrying out its duties, including fees of tax attorneys and/or accountants, shall be paid by the Settlement Administrator from the Settlement Fund.

98. Responsibility for Taxes on Distribution. Any person or entity that receives a distribution from the Settlement Fund shall be solely responsible for any taxes or tax-related expenses owed or incurred by that person or entity by reason of that distribution. Such taxes and tax-related expenses shall not be paid from the Settlement Fund.

99. Defendant Is Not Responsible. In no event shall Defendant or any of the other Released Parties have any responsibility or liability for taxes or tax-related expenses arising in connection with the payment or distribution of the Settlement Fund to Plaintiffs, Settlement Class Members, Class Counsel or any other person or entity, and the Settlement Fund shall indemnify and hold Defendant and the other Released Parties harmless for all such taxes and tax-related expenses (including, without limitation, taxes and tax-related expenses payable by reason of any such indemnification).

[Remainder of this page intentionally left blank.]

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement to be executed, dated as of June ___, 2019.

DATED: 6-13-19

Plaintiff

DATED: _____

Plaintiff

DATED: _____

Plaintiff

DATED: _____

Plaintiff

DATED: _____

Plaintiff

DATED: _____

Plaintiff

DATED: _____

Plaintiff

DATED: _____

Plaintiff

25

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement to be executed, dated as of June 14, 2019.

DATED: JUNE 14, 2019        Plaintiff
                            _Wordie Bishop_____

DATED: _____      Plaintiff
                            _____

DATED: _____      Plaintiff
                            _____

DATED: _____      Plaintiff
                            _____

DATED: _____      Plaintiff
                            _____

DATED: _____      Plaintiff
                            _____

DATED: _____      Plaintiff
                            _____

DATED: _____      Plaintiff
                            _____

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement to be executed, dated as of June ___, 2019.

DATED: _June 7, 2019_       Plaintiff

_Angela Garr_

DATED: _____       Plaintiff

_____

DATED: _____       Plaintiff

_____

DATED: _____       Plaintiff

_____

DATED: _____       Plaintiff

_____

DATED: _____       Plaintiff

_____

DATED: _____       Plaintiff

_____

DATED: _____       Plaintiff

_____

25

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement to be executed, dated as of June __, 2019.

DATED: 6-11-2019

Plaintiff

_Lisa Baines_

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

25

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement to be executed, dated as of June _6_, 2019.

DATED: _June 6, 2019_          Plaintiff _John Hastings_

DATED: _____          Plaintiff

DATED: _____          Plaintiff

DATED: _____          Plaintiff

DATED: _____          Plaintiff

DATED: _____          Plaintiff

DATED: _____          Plaintiff

DATED: _____          Plaintiff

25

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement to be executed, dated as of June ___, 2019.

DATED: __6/11/19__

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

25

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement to be executed, dated as of June __, 2019.

DATED: 6/19/2019 _____

Plaintiff

Joseph Dunn

DocuSigned by:
8B8FB19491CC4CD...

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement to be executed, dated as of June __, 2019.

DATED: 6/20/2019 _____

Plaintiff

*Helen Iehl*

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: _____

Plaintiff

_____

DATED: 6/27/2019          By: _____

Name: AVID MODJTABAI

Title: SR EVP

For Defendant Wells Fargo Bank, N.A.

APPROVED AS TO FORM AND CONTENT:

DATED: _____          LEIFF CABRASER HEIMANN &
                                  BERNSTEIN, LLP

                                  By: _____
                                       Jonathan D. Selbin
                                  Attorneys for Plaintiffs and Class Counsel

DATED: _____          MCGUIRE LAW, P.C.

                                  By: _____
                                       Evan M. Meyers
                                  Attorneys for Plaintiffs and Class Counsel

DATED: _____          GIRARD SHARP LLP

                                  By: _____
                                       Daniel C. Girard
                                  Attorneys for Plaintiffs and Class Counsel

DATED: 7/1/2019          SEVERSON & WERSON
                                  A Professional Corporation

                                  By: _____
                                       Mark D. Lonergan
                                       Rebecca S. Saelao
                                  Attorneys for Defendant Wells Fargo Bank,
                                  N.A.

26

DATED: _____   By:_____

                                                     Name:_____

                                                     Title:_____
                                                              For Defendant Wells Fargo Bank, N.A.

APPROVED AS TO FORM AND CONTENT:

DATED: __7/1/2019_____   LIEFF CABRASER HEIMANN &
                                                   BERNSTEIN, LLP

                                                   By: _____
                                                            Jonathan D. Selbin
                                                   *Attorneys for Plaintiffs and Class Counsel*

DATED: _____   MCGUIRE LAW, P.C.

                                                     By: _____
                                                            Evan M. Meyers
                                                   *Attorneys for Plaintiffs and Class Counsel*

DATED: _____   GIRARD SHARP LLP

                                                     By: _____
                                                            Daniel C. Girard
                                                   *Attorneys for Plaintiffs and Class Counsel*

DATED: _____   SEVERSON & WERSON
                                                   A Professional Corporation

                                                     By: _____
                                                            Mark D. Lonergan
                                                            Rebecca S. Saelao
                                                   *Attorneys for Defendant Wells Fargo Bank,*
                                                   *N.A.*

26

DATED: _____      By: _____

                                   Name: _____

                                   Title: _____
                                             For Defendant Wells Fargo Bank, N.A.


APPROVED AS TO FORM AND CONTENT:


DATED: _____      LIEFF CABRASER HEIMANN &
                                             BERNSTEIN, LLP

                                   By: _____
                                             Jonathan D. Selbin
                                   *Attorneys for Plaintiffs and Class Counsel*


DATED: ____7/1/19____      MCGUIRE LAW, P.C.

                                   By: _Evan Meyers_____
                                         Evan M. Meyers
                                   *Attorneys for Plaintiffs and Class Counsel*


DATED: _____      GIRARD SHARP LLP

                                   By: _____
                                             Daniel C. Girard
                                     *Attorneys for Plaintiffs and Class Counsel*


DATED: _____      SEVERSON & WERSON
                                             A Professional Corporation

                                   By: _____
                                             Mark D. Lonergan
                                           Rebecca S. Saelao
                                   *Attorneys for Defendant Wells Fargo Bank,*
                                   *N.A.*

DATED: _____     By:_____

                                      Name:_____

                                      Title:_____
                                           For Defendant Wells Fargo Bank, N.A.


APPROVED AS TO FORM AND CONTENT:


DATED: _____     LIEFF CABRASER HEIMANN &
                                      BERNSTEIN, LLP

                                      By: _____
                                           Jonathan D. Selbin
                                      *Attorneys for Plaintiffs and Class Counsel*


DATED: _____     MCGUIRE LAW, P.C.

                                      By: _____
                                           Evan M. Meyers
                                      *Attorneys for Plaintiffs and Class Counsel*


DATED: _July 1, 2019_                 GIRARD SHARP LLP

                                      By: _____
                                           Daniel C. Girard
                                      *Attorneys for Plaintiffs and Class Counsel*


DATED: _____     SEVERSON & WERSON
                                      A Professional Corporation

                                      By: _____
                                           Mark D. Lonergan
                                           Rebecca S. Saelao
                                      *Attorneys for Defendant Wells Fargo Bank,
                                      N.A.*

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH DUNN, HELEN IEHL, ALBERT PIETERSON, JOHN HASTINGS, WINDIE BISHOP, LISA BARNES, ANGELA GARR, and MYESHA PRATHER, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) ) ) | No. 17-cv-00481 |
| *Plaintiffs*, | ) ) ) | Hon. Manish S. Shah |
| v. | ) ) | |
| WELLS FARGO BANK, N.A., | ) ) | |
| *Defendant*. | ) | |

<u>**SECOND AMENDED CLASS ACTION COMPLAINT**</u>

Plaintiffs Joseph Dunn, Helen Iehl, Albert Pieterson, John Hastings, Windie Bishop, Lisa Barnes, Angela Garr, and Myesha Prather (together "Plaintiffs") bring this second amended class action complaint against Wells Fargo Bank, N.A. ("Wells Fargo") to stop Defendant's practice of placing unauthorized automated text messages and telephone calls to consumers, and to obtain redress for all persons injured by its conduct. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by their attorneys.

**NATURE OF THE ACTION**

1.      In an effort to advance its nationwide consumer credit and banking business, Wells Fargo violated federal law by making unauthorized automated text message and telephone calls (together "robocalls") to the cellular telephones of individuals throughout the nation.

2.      By effectuating these unauthorized robocalls, Defendant has violated the called parties' statutory rights and has caused the call recipients actual harm, not only because the called parties were subjected to the aggravation and invasion of privacy that necessarily

1

accompanies unsolicited automated calls, but also because the called parties frequently have to pay their cell phone service providers for the receipt of such robocalls.

3.      In order to redress these injuries, Plaintiffs, on behalf of themselves and a nationwide class, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), which protects the privacy right of consumers to be free from receiving unauthorized voice and text message calls to cellular phones.

4.      On behalf of the proposed class, Plaintiffs seek injunctive relief and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## PARTIES

5.      Plaintiff Joseph Dunn is a natural person and a citizen of Florida.

6.      Plaintiff Helen Iehl is a natural person and a citizen of Florida.

7.      Plaintiff Albert Pieterson is a natural person and a citizen of Florida.

8.      Plaintiff John Hastings is a natural person and a citizen of Texas.

9.      Plaintiff Windie Bishop is a natural person and a citizen of Tennessee.

10.     Plaintiff Lisa Barnes is a natural person and a citizen of Michigan.

11.     Plaintiff Angela Garr is a natural person and a citizen of Texas.

12.     Plaintiff Myesha Prather is a natural person and a citizen of Nevada.

13.     Defendant Wells Fargo is a national banking association that provides banking and financial services and products to consumers and businesses throughout the country, including online and mobile personal banking.  Defendant's principal place of business is located in South Dakota.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227.

15.      Venue is proper in this District pursuant to 28 U.S.C. 1391(b) because Defendant conducts business in this District; because Defendant is registered to do business in this District; and because a substantial part of the events concerning the conduct at issue occurred in this District, as manty of the unauthorized robocalls at issue in this case were received in this District.

## COMMON ALLEGATIONS OF FACT

16.     Defendant is the third largest bank in the United States and a provider of a variety of financial services to consumers and businesses located throughout the country, including consumer checking accounts, credit cards, student loans, automotive loans, and mortgage financing.

17.     As an ordinary business practice, Defendant collects the telephone numbers of its customers upon the opening of any such financial services account, and which are then used going forward as part of its automated calling operation for the purpose of sending phone calls and text messages regarding account activity and for servicing of the accounts.  Defendant's calling operation uses an automated telephone dialing system to send text messages and phone calls for such purposes.

18.     However, due to systemic issues with Defendant's procedures for recording and updating its customers' contact information, Defendant fails to confirm that the telephone numbers to which Defendant places automated text messages and phone calls actually belong to the customers who have supposedly provided them to Defendant.

19.     As a consequence, many of the telephone numbers Defendant receives in connection with its calling operation are inaccurate, or have become inaccurate, and result in Defendant routinely placing automated text message and telephone calls to the cellular telephones of individuals who have never provided consent to be called by Defendant.

20.     In addition to being an aggravating invasion of privacy, unsolicited automated telephone calls can actually cost recipients money because called parties such as Plaintiffs must frequently pay their cellular telephone service providers for the calls and text messages they receive, incur a usage allocation deduction to their cell phone plan, or pay a fixed or variable usage fee, regardless of whether the call is authorized.

**Facts Specific to Plaintiff Dunn**

21.     Beginning at least as early as December 2016, Plaintiff Dunn began to receive automated phone and text message calls on his cellular telephone regarding activity on a Wells Fargo bank account, including a fraud alert "courtesy opt in" text on or about August 4, 2017, relating to unusual, suspicious, or potentially fraudulent activity detected on a Wells Fargo customer's account.

22.     However, Plaintiff Dunn was not a Wells Fargo account holder and had never provided consent to receive any automated calls from Wells Fargo.

23.     Nonetheless, Plaintiff Dunn received numerous such calls, continuing until September 2018.

24.     The unauthorized automated calls that Plaintiff Dunn received invaded his privacy, forced him to spend significant time investigating their source, repeatedly interfered with the use of his cellular telephone, and took up memory storage on their cellular telephones.

4

**Facts Specific to Plaintiff Iehl**

25.     Plaintiff Iehl was not a Wells Fargo account holder and did not provide consent to receive any automated calls from Wells Fargo.

26.     Nonetheless, as recently as September 2018, Plaintiff Iehl received automated phone and text message calls on her cellular telephone.

27.     The unauthorized automated calls that Plaintiff Iehl received caused her actual damages, constituted an invasion of privacy, and otherwise interfered with her use of the cellular telephone service.

**Facts Specific to Plaintiff Pieterson**

28.     Plaintiff Pieterson has been a Verizon Wireless subscriber and holder of his cellular telephone number, (321) XXX-7599, since 2012.

29.     Between August 2016 and March 2017, Defendant placed fifteen (15) or more calls to Plaintiff Pieterson's cellular telephone regarding a credit card debt owed by a person unknown to him.   Most recently, Defendant placed calls to Plaintiff Pieterson's cellular telephone number on March 25, 2017.   The automated debt collection calls, which originated from telephone number (800) 988-8019, identified "Edgar," a person unknown to Plaintiff Pieterson, as the intended recipient and used an artificial or prerecorded voice.

30.     All of the calls placed by Defendant to Plaintiff Pieterson's cellular telephone number were made using an ATDS, which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice and to dial such numbers, as specified by 47 U.S.C § 227(a)(1).

31.     Plaintiff Pieterson has never been a customer of Wells Fargo.

32.     Plaintiff Pieterson did not provide his cellular telephone number to Defendant, nor did he ever provide express consent for Defendant to place calls to his cellular telephone regarding debts owed by a person named "Edgar" or any other subject matter.

33.     Plaintiff Pieterson answered certain calls placed by Defendant to his cellular telephone, informed Defendant that he was not the intended recipient of the calls, and requested that Defendant stop calling him.

34.     Defendant's robocalls, as received by Plaintiff Pieterson, did not provide him the opportunity to opt out of or request the cessation of Defendant's calls, as evidenced by the fact that Defendant continued placing calls to his cellular telephone number after he informed Defendant that he was not the intended recipient and requested that the calls cease.

35.     As a result of the calls described above, Plaintiff Pieterson suffered an invasion of privacy, as well as particularized and concrete injuries, including the inducement of stress, anxiety, nervousness, embarrassment, distress, and/or aggravation.  Plaintiff Pieterson also suffered out-of-pocket losses, including the monies paid to his wireless carriers for the receipt of such calls.  Additionally, due to both the answered and unanswered calls placed by Defendant, Plaintiff Pieterson suffered the expenditure of time, exhaustion of his cellular telephone batteries, unavailability of his cellular telephones while Defendant's calls were incoming, and trespass upon his chattel.  All of the above-mentioned injuries were caused by, and/or directly related to, Defendant's placement of calls to Plaintiff Pieterson by using an ATDS to call his cellular telephone number.

**Facts Specific to Plaintiff Hastings**

36.     From around September of 2016 through February of 2017, Defendant contacted Plaintiff Hastings on his cellular telephone, number ending in 1525, in an attempt to collect an alleged outstanding debt owed by "Maria Rodriguez."

37.     Defendant placed multiple calls to Plaintiff Hastings' cellular telephone from telephone numbers confirmed to belong to Defendant, including (800) 642-4720 and (877) 453-2904.

38.     Defendant left numerous voice messages in which Defendant claimed to be attempting to collect a debt from "Maria Rodriguez."

39.     When calling Plaintiff Hastings, Defendant used an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

40.     When calling Plaintiff Hastings, Defendant utilized an "artificial or prerecorded voice," as defined by 47 U.S.C. § 227(b)(1)(A).

41.     Defendant's calls to Plaintiff Hastings were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

42.     Defendant's calls were placed to telephone number assigned to a cellular telephone service, as defined by 47 U.S.C. § 227(b)(1).

43.     On several occasions, Plaintiff Hastings answered Defendant's telephone calls and informed an agent for Defendant that: 1) "Maria Rodriguez" could not be reached on his telephone; 2) that Defendant had an incorrect telephone number; and 3) that Defendant must cease placing such calls to him.

44.     Plaintiff Hastings also made several telephone calls to Defendant directly and informed Defendant that: 1) "Maria Rodriguez" could not be reached on his telephone; 2) that

Defendant had an incorrect telephone number; and 3) that Defendant must cease placing such calls to him.

45.     Despite receiving this information on numerous occasions, Defendant continued to place frequent calls to Plaintiff Hastings on his cellular telephone using an "automated telephone dialing system" and/or an "artificial or prerecorded voice."

46.     Plaintiff Hastings is not a customer of Defendant.  Furthermore, Plaintiff Hastings does not know nor has ever known "Maria Rodriguez."  Accordingly, Defendant never received Plaintiff Hastings' "prior express consent," as defined by 47 U.S.C. § 227(b)(1)(A), to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone.

**Facts Specific to Plaintiff Bishop**

47.     In an attempt to reach a third party unknown to Plaintiff Bishop, Wells Fargo began placing calls to phone number 404-XXX-2268—a number for which Plaintiff was the primary user.

48.     By way of example, Wells Fargo called Plaintiff Bishop's cellular telephone on, among other dates, April 23, 2016.

49.     During at least one call Wells Fargo made to her cellular telephone, Plaintiff Bishop informed the Wells Fargo representative that she did not know the person Wells Fargo was looking for and to stop calling.

50.     On information and belief, Wells Fargo called Plaintiff Bishop's cell phone number using an automatic telephone dialing system with the capacity to store or produce telephone numbers and dial those numbers at random, in sequential order, or from a database or list of numbers.

51.     Plaintiff Bishop is not, nor ever was, a Wells Fargo customer, and she has never had a business relationship with Defendant.

52.     Plaintiff Bishop never provided her cellular telephone number to Wells Fargo, and Defendant did not have her consent or permission to call her cell phone, let alone using an automatic telephone dialing system.

53.     Plaintiff Bishop was harmed by these calls because they were unwelcome intrusions on her privacy that wasted her time, depleted her cell phone battery, and occupied her telephone line from legitimate communications.

**Facts Specific to Plaintiff Barnes**

54.      In 2016, Defendant began placing calls to Plaintiff Barnes' cellular telephone number.

55.     For example, Defendant placed at least one call to Plaintiff Barnes' cellular telephone number on October 22, 2016, October 26, 2016, and July 3, 2017.

56.     Defendant placed its calls to Plaintiff Barnes' cellular telephone number from telephone numbers including (800) 289-8019, (248) 728-2304, and (888) 804-5037.

57.     When dialed, telephone number (800) 289-8019 plays a recorded messages that begins: "Welcome to Wells Fargo dealer services . . . ."

58.     When dialed, telephone number (888) 804-5037 plays a recorded messages that begins: "Welcome to Wells Fargo . . . ."

59.     Upon information and good faith belief, Defendant placed additional calls to Plaintiff's cellular telephone number not listed above.

60. Defendant's calls to Plaintiff's cellular telephone number were intended for a recipient other than Plaintiff Barnes—a man Plaintiff Barnes does not know named Richard Loutman (spelling unknown).

61. On occasion, Plaintiff Barnes answered calls that Defendant placed to her cellular telephone number, and informed Defendant that she was not the individual Defendant intended to reach, and requested that Defendant stop placing calls to her cellular telephone number.

62. After Defendant failed to heed her requests that it stop placing calls to her cellular telephone, Plaintiff Barnes went to one of Defendant's local branches in Holland, Michigan in connection with her efforts to get the calls to stop in or around mid-2016.

63. Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, including the use of an artificial or prerecorded voice, Defendant placed its calls to Plaintiff Barnes' cellular telephone number using an automatic telephone dialing system.

64. Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, including the use of an artificial or prerecorded voice, Defendant placed its calls to Plaintiff Barnes' cellular telephone number using equipment which has the capacity—(i) to store numbers to be called or (ii) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person).

65. Upon information and good faith belief, Defendant placed its calls to Plaintiff Barnes' cellular telephone number for non-emergency purposes.

66. Upon information and good faith belief, Defendant placed its calls to Plaintiff Barnes' cellular telephone number voluntarily.

10

67.     Upon information and good faith belief, Defendant placed its calls to Plaintiff Barnes' cellular telephone number under its own free will.

68.     Upon information and good faith belief, Defendant had knowledge that it was using an automatic telephone dialing system or an artificial or prerecorded voice to place its calls to Plaintiff Barnes' cellular telephone number.

69.     Upon information and good faith belief, Defendant intended to use an automatic telephone dialing system or an artificial or prerecorded voice to place its calls to Plaintiff Barnes' cellular telephone number.

70.     Plaintiff Barnes is not, and was not ever, one of Defendant's customers.

71.     Plaintiff Barnes does not, and never did, have a business relationship with Defendant.

72.     Plaintiff Barnes did not give Defendant prior express consent to place calls to her cellular telephone number by using an automatic telephone dialing system or an artificial or prerecorded voice.

73.     Upon information and good faith belief, Defendant maintains business records that show all calls it placed to Plaintiff Barnes' cellular telephone number.

74.     Plaintiff Barnes suffered actual harm as a result of Defendant's calls in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

75.     Moreover, Defendant's calls unnecessarily tied up Plaintiff Barnes' cellular telephone line.

76.     Upon information and good faith belief, Defendant, as a matter of pattern and practice, uses an automatic telephone dialing system and/or an artificial or prerecorded voice to

11

place calls to telephone numbers assigned to a cellular telephone service, absent prior express consent.

**Facts Specific to Plaintiff Garr**

77.     Plaintiff Garr's telephone number, is, and at all relevant times has been, assigned to a cellular telephone service.

78.     Wells Fargo called Plaintiff Garr's cellular phone repeatedly over the course of the past two years.

79.     Wells Fargo's calls pertain to a mortgage loan.

80.     Wells Fargo's calls were not made for an emergency purpose.

81.     Wells Fargo's calls to Plaintiff Garr's cellular phone were intended for a man whom Plaintiff Garr does not know and has never met.  Plaintiff Garr believes the calls were directed to someone named "Chris Pendle," "Chris Pendola," or some similar name.

82.     Plaintiff Garr also received emails from Wells Fargo, which pertained to the same mortgage loan account that does not belong to Plaintiff Garr.

83.     Plaintiff Garr has never been a customer of Wells Fargo and has never borrowed money from Wells Fargo.

84.     Plaintiff Garr does not have a mortgage loan with Wells Fargo.

85.     Plaintiff Garr did not provide her cellular telephone number to Wells Fargo and never provided express consent for Wells Fargo to call her about someone else's mortgage or any other subject matter.

86.     Plaintiff Garr's cellular phone number has been registered on the national do-not-call registry since February 6, 2008.

87.     Plaintiff Garr answered certain calls placed by Wells Fargo when they first began in 2016, informed Wells Fargo that she was not the intended recipient of the calls, and requested that Wells Fargo stop calling her.

88.     Plaintiff Garr continued to receive calls from Wells Fargo after asking Wells Fargo to stop calling her and place her cellular phone number on Wells Fargo's do-not-call list.

89.     Plaintiff Garr also responded to e-mail communications she received from Wells Fargo by informing Wells Fargo that she was not the appropriate recipient of these emails and that her contact information should be not be used by Wells Fargo to reach the holder of the mortgage loan account.

90.     Each time that it called her cellular phone, Wells Fargo called Plaintiff Garr using an ATDS.  Plaintiff Garr noted a pause before the start of each message she received when she did not answer, and before being connected with a Wells Fargo agent when she did answer, which is characteristic of a call placed by an ATDS.

91.     Wells Fargo also called Plaintiff Garr using a prerecorded or artificial voice, as evidenced by the tone and cadence of the voice on these calls.

92.     During the relevant period, Plaintiff Garr has carried her cellular phone with her at most times so that she can be available to family, friends, and her employer.

93.     Wells Fargo's repeated calls invaded Plaintiff Garr's privacy and intruded upon her right to seclusion.  The calls frustrated and upset Plaintiff Garr by constantly interrupting her daily life and wasted her time.

94.     Wells Fargo's calls intruded upon and occupied the capacity of Plaintiff Garr's cellular phone and depleted the battery of her cellular phone.  The calls temporarily seized and trespassed upon Plaintiff Garr's use of her cellular phone and caused her to divert attention away

13

from other activities to address the calls. The clutter of Wells Fargo's calls also impaired the usefulness of the call log feature of Plaintiff Garr's cellular phone.

**Facts Specific to Plaintiff Prather**

95.     Beginning in or about July 2016, in an apparent effort to contact a previous Wells Fargo customer for the purpose of providing a notification about their account activity, Defendant sent Plaintiff Prather's cellular telephone an unauthorized text message regarding "unusual activity" on a "card."

96.     In the text message transmission that Plaintiff Prather received, the "from" field was identified as "93557," which is an abbreviated telephone number known as an SMS short code operated by Defendant's agents. The use of an SMS short code by Defendant's agents enabled Defendant's mass transmission of unauthorized text messages to lists of cellular telephone numbers.

97.     Shortly after receiving the above unauthorized text message call, Plaintiff Prather received three additional text message notifications on her cellular telephone. Each of these text messages was sent automatically and instantaneously by Defendant though the use of an automatic telephone dialing system from the short code 93557.

98.     In addition, shortly after receiving the above text message call, Plaintiff Prather repeatedly had her privacy invaded by Defendant, and received at least an additional six automated calls on her cellular telephone from Defendant that attempted to notify her of activity on an account that she had never opened.

99.     Plaintiff Prather was not a Wells Fargo customer at the time of the calls and at no time did Plaintiff Prather provide Defendant with consent to receive any of these automated text messages or telephone calls.

## CLASS ACTION ALLEGATIONS

100.    Plaintiffs bring this action on behalf of themselves and a nationwide Class defined

as follows:

> All persons
> a.    who were users or subscribers to a wireless or cellular telephone service within the United States to which Wells Fargo made or initiated any Call in connection with the collection or servicing of a mortgage or home equity loan, credit card account, retail installment sale contract for an automobile, automobile loan, overdraft on a deposit account, student loan, or in connection with a fraud alert on a credit card or deposit account, using any automated dialing technology or artificial or prerecorded voice technology;
> b.    who were not customers of Wells Fargo at the time of the Call; and,
> c.    who were Called between January 20, 2013 and the entry of the Preliminary Approval Order for Calls placed in connection with automobile loans or fraud alerts on credit cards or deposit accounts; between September 18, 2014 and the entry of the Preliminary Approval Order for Calls placed in connection with credit card accounts; between December 20, 2015 and the entry of the Preliminary Approval Order for Calls placed in connection with student loans or overdrafts on deposit accounts; between March 1, 2016 and the entry of the Preliminary Approval Order for Calls placed in connection with mortgages or home equity loans; or between April 1, 2016 and the entry of the Preliminary Approval Order for Calls placed in connection with retail installment sale contracts for automobiles.
> d.    Excluded from the Class are Defendant, any affiliate or subsidiary of Defendant, any entities in which such companies have a controlling interest, the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

101.    Plaintiffs will fairly and adequately represent and protect the interests of the other

members of the Class.   Plaintiffs have retained counsel with substantial experience in

prosecuting complex litigation and class actions.  Plaintiffs and their counsel are committed to

vigorously prosecuting this action on behalf of the other members of the Class, and have the

financial resources to do so.  Neither Plaintiffs nor their counsel has any interest adverse to those

of the other members of the Class.

102.    Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy.  The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

103.    Defendant has acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

104.    The factual and legal bases of Defendant's liability to Plaintiffs and to the other members of the Class are the same, resulting in injury to the Plaintiffs and to all of the other members of the Class.  Plaintiffs and the other members of the Class have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

105.    Upon information and belief, there are hundreds, if not thousands, of members of the Class such that joinder of all members is impracticable.

106.    There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class.  Common questions for the Class include, but are not limited to, the following:

(a)    Did Defendant systematically place automated calls and text messages regarding its financial services to persons who were not Wells Fargo customers?

(b)    Were the automated calls and text messages placed by Defendant to non-customers made without prior express consent?

16

(c)     Did the automated calls and text messages made by Defendant to non-customers violate the called parties' respective rights to privacy?

(d)     Was Defendant's conduct in violation of the TCPA willful such that the members of the Class are entitled to treble damages?

(e)     Should Defendant be enjoined from continuing to engage in such conduct?

**COUNT I**
**Violation of Telephone Consumer Protection Act (47 U.S.C. 227) on behalf of the Class**

107.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

108.    Defendant made unsolicited and unauthorized automated telephone calls to the cellular telephone numbers of Plaintiffs and the other members of the Class without obtaining their prior express consent.

109.    Defendant made unsolicited and unauthorized automated text message calls to the telephone numbers of Plaintiffs Dunn and Iehl and the other members of the Class.  These text message calls were made *en masse* using a short code and equipment that had the capacity at the time the calls were placed to store or produce telephone numbers to be called using a random or sequential number generator and to automatically dial such numbers without human intervention. These text message calls were made without the prior express consent of Plaintiffs Dunn and Iehl and the members of the Class.

110.    Defendant has, therefore, violated the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

111.    As a result of Defendant's illegal conduct, the members of the Class have had their privacy rights invaded and have suffered actual and statutory damages and, under 47 U.S.C. §227(b)(3)(B), are each entitled, inter alia, to a minimum of $500.00 in damages for each such violation of the TCPA.

112.     To the extent the Court should determine that Defendant's conduct was willful and knowing, the Court may, pursuant to §227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Class.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for the following relief:

A.     An order certifying the Class as defined above;

B.     An award of the greater of actual or statutory damages;

C.     An injunction requiring Defendant to cease all unauthorized automated telephone activities;

D.     Pre-judgment interest from the date of filing this lawsuit;

E.     An award of reasonable attorneys' fees and costs; and

F.     Such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.


Dated:  June __, 2019                    Respectfully submitted,

                                         JOSEPH DUNN, HELEN IEHL, ALBERT
                                         PIETERSON, JOHN HASTINGS, WINDIE
                                         BISHOP, LISA BARNES, ANGELA GARR, and
                                         MYESHA PRATHER individually and on behalf of
                                         a class of similarly situated individuals

                                         By: /s/_____
                                              One of Plaintiffs' Attorneys

18

Myles McGuire
Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

Jonathan D. Selbin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: (212) 355-9000
Fax: (212) 355-9592
jselbin@lchb.com

Daniel C. Girard
GIRARD SHARP LLP
601 California Street, 14th Floor
San Francisco, California 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dcg@girardgibbs.com

19

# Exhibit 2

*Prather et al. v. Wells Fargo Bank, N.A.,* No. 17-CV-00481 (N.D. Ill.)

# **WELLS FARGO CLASS ACTION SETTLEMENT CLAIM FORM**

**To receive benefits from this Settlement, you must fill out this form, sign it, and submit it electronically or by mail on or before _____, 2019. You may submit your Claim Form online at www.website.com, by email to _____, or by mail to:**

**Wells Fargo Settlement Administrator**
**[Address]**

IMPORTANT NOTE: You should not submit more than one Claim Form. Submitting more than one Claim Form will not increase your compensation under the Settlement Agreement.

**You should only submit this Claim Form if you are a member of the Settlement Class and the following applies to you:**

(a)      you used or subscribed to a wireless or cellular telephone service within the United States to which Wells Fargo Bank, N.A. ("Wells Fargo") made or initiated any Call (including any text message) in connection with the collection or servicing of a mortgage or home equity loan, credit card account, retail installment sale contract for an automobile, automobile loan, overdraft on a deposit account, student loan, or in connection with a fraud alert on a credit card or deposit account, using any automated dialing technology or artificial or prerecorded voice technology; and
(b)      you were not a customer of Wells Fargo at the time of the Call.

By submitting a claim, you are attesting that you received one or more phone call(s) or text messages from Wells Fargo but were not a Wells Fargo customer at the time you received the call or text message.

_____  \_\_\_  _____
FIRST NAME                           MI      LAST NAME

_____
STREET ADDRESS

_____  _____  _____
CITY                                                      STATE      ZIP

_____  _____
EMAIL ADDRESS                                      CONTACT PHONE NUMBER

_____
CELL PHONE NUMBER AT WHICH YOU RECEIVED PHONE CALL(S) OR TEXT MESSAGE(S) FROM WELLS FARGO

Class Member ID from email or postcard notice (if you did not receive such a notice, leave this blank): _____

*I declare that I am a member of the Settlement Class, and I have accurately filled out this form.*

**SIGNATURE:** _____      **DATE:**_____

*Remember to submit your Claim Form by _____, 2019. If you have questions, visit www.website.com or call 1-999-999-9999.*

# Exhibit 3

Class Member ID Number: _____

[FRONT]

**If You Received an automated phone call or text message from Wells Fargo Bank, N.A., but were not a Wells Fargo customer, you may be eligible for a cash payment from a class action settlement.**

A settlement has been reached in a class action lawsuit against Wells Fargo Bank, N.A. ("Wells Fargo"). The lawsuit, *Prather et al. v. Wells Fargo Bank, N.A.,* No. 17-CV-00481 (N.D. Ill.), involves claims that Wells Fargo violated federal law by making automated phone calls and texts to non-customers' cellphones without those persons' permission. The individuals who brought the case allege that Wells Fargo violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") by sending calls and text messages using automated dialing technology or artificial/prerecorded voice technology to non-customers' cellphones without those individuals' prior express consent.

**Why am I being contacted?**  Records indicate that you may have received one or more automated telephone calls or text messages from Wells Fargo, but were not a Wells Fargo customer, and that you may be eligible to receive a payment from the settlement. ***SEE THE BACKSIDE OF THIS CARD TO DETERMINE IF YOU ARE INCLUDED IN THE CLASS***.

**What Does the Settlement Provide?**  The proposed settlement provides for a fund totaling $17,850,000.00, which will be used to make payments to the class members after first making deductions for notice and administration costs, incentive awards to the class representatives, and attorneys' fees for class counsel. **To receive a settlement check, you must complete and submit a Claim Form by [date].** Class Members can file a claim online at www.WellsFargoTCPASettlement.com, or you can visit that website to download a Claim Form and submit it by email at _____, or by U.S. Mail. For more information about this settlement, including its benefits, your options, and how to submit a claim, please visit www.website.com for more information.

**Your Rights May Be Affected.**  If you do not want to be legally bound by the Settlement, you must exclude yourself by **[date].** If you do not exclude yourself, you will release your claims against Wells Fargo, as more fully described in the Settlement Agreement available for review at www.website.com. If you stay in the Settlement, you may object to it by **[date]**. The Detailed Notice available at ww.website.com explains how to exclude yourself or object. The Court is scheduled to hold a hearing on **[date]** to consider whether to approve the Settlement, Class Counsel's request for attorneys' fees of up to 1/3 of the Settlement Fund, plus expenses, and an incentive award for the Class Representatives of up to $15,000 each. You can appear at the hearing, but you do not have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

***For more information, visit www.website.com or call 1-999-999-9999.***

**Class Member ID Number:** _____

[BACK]

**<u>Am I Included in the Settlement?</u>** You may be entitled to compensation from this Settlement if you received debt collection or account servicing calls or texts from Wells Fargo on your cell phone, even though you were not a Wells Fargo customer at the time.

Please see the detailed notice at www.website.com for a more detailed explanation of who is entitled to compensation from the Settlement.

**To receive benefits from this Settlement, you must fill out a Claim Form, sign it, and submit it electronically or by mail on or before _____, 2019. You may submit your Claim Form online at www.website.com, by email to _____, or by mail to:**

**Wells Fargo Settlement Administrator**
**[Address]**

# Exhibit 4

## <u>LEGAL NOTICE BY ORDER OF COURT</u>

**IF YOU RECEIVED A PHONE CALL OR TEXT MESSAGE FROM WELLS FARGO BANK,
BUT YOU WERE NOT A WELLS FARGO BANK CUSTOMER,
<u>YOU MAY BE ELIGIBLE FOR A CASH PAYMENT FROM A CLASS ACTION SETTLEMENT</u>.**

**This notice describes rights you may have in connection with the settlement of a lawsuit.**

*The United States District Court for the Northern District of Illinois authorized this Notice.
This is not a solicitation from a lawyer.* **This is <u>not</u> a legal action against you.**

*Para una notificacion en Espanol, visitar www.website.com.*

This notice describes a proposed settlement in a class action lawsuit brought against Wells Fargo Bank, N.A. ("Wells Fargo") regarding phone calls and text messages placed to certain persons and entities. **Please read this notice carefully. It summarizes your rights and options under the Settlement, which are affected whether or not you act. The full Settlement Agreement can be accessed at www.website.com.**

If you received a phone call or text message and you fit the description of the Settlement Class (as defined below), then you have the following options:

- <u>You can submit a claim for monetary compensation.</u> The amount of the check you would receive depends on the number of people who file claims, the costs of administration of the settlement, attorneys' fees and costs, and class representatives' incentive awards. **To receive a check, you must submit a Claim Form by [date].** The process for submitting a claim is described below.

- <u>You can exclude yourself </u>from the Settlement (and receive no money from the Settlement but retain your right to bring your own lawsuit). Your request to exclude yourself must be submitted no later than [date]. You must follow the process described in part 8 below. If the Settlement is approved and you do not exclude yourself, you will be bound by the Settlement and will release certain claims described below.

- <u>You can object to the Settlement.</u> The deadline for objecting to the Settlement is [date]. All objections must be mailed to the Wells Fargo TCPA Settlement Administrator, to Class Counsel, and to counsel for Wells Fargo. See Part 7 below for the mailing addresses, as well as further details about filing an objection.

- <u>You can do nothing</u>. If you do nothing, you will receive no money from the Settlement Fund, but you will still be bound by all orders and judgments of the Court. Unless you exclude yourself from the settlement, you will not be able to file or continue a lawsuit against the Released Parties regarding any of the Released Claims. *Submitting a valid and timely Claim Form is the only way to receive a payment from this settlement.*

TO SUBMIT A CLAIM FORM, OR FOR INFORMATION ON HOW TO REQUEST EXCLUSION FROM THE CLASS OR FILE AN OBJECTION, PLEASE VISIT THE SETTLEMENT WEBSITE, WWW.WELLSFARGOTCPASETTLEMENT.COM, OR CALL (XXX) XXX-XXXX.

**Please <u>do not</u>** call or write the Court, the Court Clerk's office, Wells Fargo, or Wells Fargo's counsel for more information. They will <u>not</u> be able to assist you.

## BASIC INFORMATION

In a putative class action case known as *Prather et al. v. Wells Fargo Bank, N.A.,* No. 17-CV-00481, pending in the U.S. District Court for the Northern District of Illinois, the Plaintiff alleged that Wells Fargo engaged in violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), by calling or texting individuals using automated dialing technology or artificial/prerecorded voice technology who were not Wells Fargo customers. Wells Fargo denies Plaintiff's allegations and denies that it did anything wrong. The Court has not decided who is right.

A settlement of this lawsuit ("Settlement") has been negotiated which, if approved by the Court, may entitle you to a payment. By entering into the Settlement, Wells Fargo has not admitted the truth or validity of any of the claims against it. Your rights and options under the Settlement—and the deadlines to exercise them—are explained below.

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **SUBMIT A CLAIM** | This is the only way to receive a payment from the Settlement. Class Members who submit a valid claim form by the deadline of [date] will receive a cash payment and will give up certain rights to sue the Released Parties as described in parts 4 and 6 below. |
| **DO NOTHING** | If you do nothing, you will receive no money from the Settlement, but *you will still give up your rights to sue the Released Parties* as described in parts 6 and 10 below. |
| **EXCLUDE YOURSELF FROM THE CASE** | If you exclude yourself, you can sue the Released Parties on your own and at your own expense regarding the automated phone calls and texts released under this Settlement, but you will not receive a payment from the Settlement. The deadline for excluding yourself is: [date]. See part 8 below. |
| **OBJECT** | You may file an objection if you wish to object to the Settlement. The deadline to object to the settlement is [date]. See part 7 below. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. The Court has set a hearing for [date] at [time], subject to change. See part 11 below. |

These rights and options—**and the deadlines to exercise them**—are explained in this notice.

The Court in charge of this case still has to decide whether to approve the Settlement. If it does and any appeals are resolved, benefits will be distributed to those who timely submit claims and qualify. Please be patient.

| WHAT THIS NOTICE CONTAINS |
|---|

1. WHO IS IN THE SETTLEMENT? ......................................................................................... 4

2. WHAT IS THIS LITIGATION ABOUT? ............................................................................... 4

3. WHO REPRESENTS ME? .................................................................................................... 5

4. WHAT BENEFITS CAN I RECEIVE FROM THE SETTLEMENT? ....................................... 5

5. DO I HAVE TO PAY THE LAWYERS REPRESENTING ME? ............................................ 6

6. WHAT AM I AGREEING TO BY REMAINING IN THE SETTLEMENT CLASS IN THIS CASE? .................. 6

7. WHAT IF I DO NOT AGREE WITH THE SETTLEMENT? ................................................. 7

8. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASS? ................................. 7

9. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND ASKING TO BE EXCLUDED? ...................... 8

10. WHAT IF I DO NOTHING AT ALL? ................................................................................ 8

11. WHAT WILL BE DECIDED AT THE FINAL APPROVAL HEARING? ............................... 8

12. IS THIS THE ENTIRE SETTLEMENT AGREEMENT? ..................................................... 9

13. WHERE CAN I GET MORE INFORMATION? ................................................................ 9

## 1.   WHO IS IN THE SETTLEMENT CLASS?

The judge in the case has certified a class for settlement purposes only.

Generally, the Settlement Class includes all persons whose cell phones Wells Fargo called or texted for account servicing, account collection, or fraud alert purposes, even though they were not Wells Fargo customers at the time of the call(s).

If you received notice of the Settlement directed to you, then you may be a member of the Settlement Class. But even if you did not receive a notice, you may still be a member of the Settlement Class.

More specifically, the "Settlement Class" is defined as all persons:

(A)   who were users or subscribers to a wireless or cellular telephone service within the United States to which Wells Fargo made or initiated any Call (which includes any text message) using any automated dialing technology or artificial or prerecorded voice technology in connection with the collection or servicing of a mortgage or home equity loan, credit card account, retail installment sale contract for an automobile, automobile loan, overdraft on a deposit account, student loan, or in connection with a fraud alert on a credit card or deposit account, using any automated dialing technology or artificial or prerecorded voice technology;

(B)   who were not customers of Wells Fargo at the time of the Call; and

(C)   who were called

  i.   between January 20, 2013 and [Prelim Approval] for Calls placed in connection with automobile loans or fraud alerts on credit cards or deposit accounts;

  ii.   between September 18, 2014 and [Prelim Approval] for Calls placed in connection with credit card accounts;

  iii.   between December 20, 2015 and [Prelim Approval] for Calls placed in connection with student loans or overdrafts on deposit accounts;

  iv.   between March 1, 2016 and [Prelim Approval] for Calls placed in connection with mortgages or home equity loans; or

  v.   between April 1, 2016 and [Prelim Approval] for Calls placed in connection with retail installment sale contracts for automobiles.

Excluded from the Settlement Class are all persons who elect to exclude themselves from the Settlement Class, the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

If you are not sure whether you are in the Settlement Class, or have any other questions about the Settlement, visit the Settlement website at www.website.com or call the toll-free number 1-999-999-9999.

## 2.   WHAT IS THIS LAWSUIT ABOUT?

This case was brought as a putative class action alleging that Wells Fargo engaged in violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), by placing calls or texts using automated dialing technology or artificial/prerecorded voice technology to non-customers. This is just a summary of the allegations. The complaint in the lawsuit is posted at www.website.com, and contains all of the allegations. Wells Fargo denies these allegations; however, in order to avoid the expense, inconvenience, and distraction of continued litigation, the Parties have agreed to the settlement described herein.

## 3.    WHO REPRESENTS ME?

In a class action, one or more people or entities called class representatives sue on behalf of people and entities who have similar claims. In this case, Joseph Dunn, Helen Iehl, Albert Pieterson, John Hastings, Windie Bishop, Lisa Barnes, Angela Garr, and Myesha Prather sued Wells Fargo in a representative capacity, and the Court has appointed each of them to be Settlement Class Representatives for all Settlement Class Members in this case.

The Court also approved McGuire Law, P.C.; Lieff Cabraser Heimann & Bernstein, LLP; and Girard Sharp LLP to be Co-Lead Counsel. Burke Law Offices, LLC; Morgan and Morgan; Skaar & Feagle, LLP; Law Offices of Todd M. Friedman, P.C.; Greenwald Davidson Radbil PLLC, Keogh Law Ltd; Law Offices of Douglas J. Campion, APC; Meyer Wilson Co., LPA, and McMorrow Law, P.C. have been designated as additional counsel for the Settlement Class. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 4.    WHAT BENEFITS CAN I RECEIVE FROM THE SETTLEMENT?

Under the Settlement, Wells Fargo has agreed to provide monetary compensation to Class Members who timely submit valid claims. The amount of the checks are not yet known. The total Settlement Fund is $17,850,000.00 The amount of the check you will be sent depends on the number of Class Members who timely submit valid claims, the costs of settlement administration, attorneys' fees and costs, and an incentive award for the Class Representatives, all of which will be paid from the Settlement Fund. Every Settlement Class Member who submits a timely, valid claim will be sent a check in the same amount. ***Submitting a timely and valid Claim Form is the only way to receive a payment from the Settlement and is the only thing you need to do to receive a payment.*** Claim Forms are available at www.website.com. Claim Forms may be submitted online at www.website.com, emailed to the Settlement Administrator at _____, or mailed to the Settlement Administrator at [address].

If you timely submit a valid Claim Form, your claim will be paid by a check mailed to you. Claims will only be paid after the Court grants Final Approval of the Settlement and after any appeals are resolved (see part 11 below). If there are appeals, resolving them can take time. Please be patient.

If you were to file your own case against Wells Fargo for the violations alleged here, and if you were to prevail in proving the alleged violations, you could recover between $500 and $1,500 per violation, plus you could obtain an injunction limiting future conduct. However, there are delays, risks and costs associated with pursuing your own case. The lawyers from this case will not represent you in a separate case against Wells Fargo, and the TCPA does not provide for attorneys' fees to prevailing individual plaintiffs. In addition, Wells Fargo has denied that it made any illegal calls or sent any illegal texts to anyone, and Wells Fargo will undoubtedly assert substantial defenses in any separate suit. Although this settlement may provide Class Members with less money than they would obtain if they filed and won their own case, it eliminates the risk of nonrecovery, in most cases provides a recovery more quickly than individual litigation, it costs Class Members no money, and permits Class Members to obtain monetary benefits without the need to go to Court or to file anything other than a Claim Form.

Note that if you receive a check, you will have six (6) months to cash the check sent to you. If you do not cash the check within 6 months, your check will be void and the funds will be utilized as the Court deems appropriate, including redistribution to other Class Members and distribution to a charitable organization.

| **5.** | **DO I HAVE TO PAY THE LAWYERS REPRESENTING ME?** |

No. Class Counsel will apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund ($5,950,000), plus expenses, for investigating the facts, litigating the case and negotiating the settlement. To date, Class Counsel have not received any payment for their services in conducting this Litigation on behalf of the Settlement Class Representatives and the Settlement Class; nor have Class Counsel been reimbursed for their expenses directly relating to their representation of the Settlement Class. Class Counsel will also request the Court to award an incentive award of up to $15,000 to each Class Representative in recognition of their service to the Settlement Class. The amount of any fee or incentive award will be determined by the Court. Class Counsel's contact information is as follows:

| Evan M. Meyers | Jonathan D. Selbin | Daniel C. Girard |
|---|---|---|
| MCGUIRE LAW, P.C. | LIEFF CABRASER HEIMANN & | GIRARD SHARP LLP |
| 55 W. Wacker Drive, | BERNSTEIN, LLP | 601 California Street |
| 9th Floor | 250 Hudson Street, 8th Floor | Suite 1400 |
| Chicago, IL 60601 | New York, NY 10013 | San Francisco |
| Tel: 312-893-7002 | Tel: (212) 355-9000 | California 94108 |
| emeyers@mcgpc.com | jselbin@lchb.com | Tel: (415) 981-4800 |
| | | dgirard@girardsharp.com |

| **6.** | **WHAT AM I AGREEING TO BY REMAINING IN THE SETTLEMENT CLASS IN THIS CASE?** |

Unless you exclude yourself, you will be part of the Settlement Class, and you will be bound by the release of claims in the Settlement. This means that if the Settlement is approved, you cannot sue, continue to sue, or be party of any lawsuit against Wells Fargo or the other Released Parties asserting a "Released Claim," as defined below. It also means that the Court's Order approving the Settlement and the judgment in this case will apply to you and legally bind you.

The "Released Claims" that you will not be able to assert against Wells Fargo or the Released Parties if you remain a part of the Settlement Class are as follows: any and all claims causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Final Approval Order, that arise out of or relate to the Released Parties' use of an "automatic telephone dialing system" or "artificial or prerecorded voice" to contact or attempt to contact Settlement Class Members on a wireless or cellular telephone in connection with the collection or servicing of a mortgage or home equity loan, credit card account, retail installment sales contract for an automobile, automobile loan, overdraft on a deposit account, student loan, or, in connection with a fraud alert on a credit card or deposit account during the Class Period. Notwithstanding the above, claims arising from any Call to the extent it had a telemarketing purpose are not released. Nothing in the Settlement shall be construed to limit a Settlement Class Members' rights to contact, in any way or for any purpose, any state or federal agency regarding the activities of any party.

"Released Parties" means Wells Fargo and each of its respective past, present and future parents, subsidiaries, affiliated companies and corporations, and each of their respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, assigns, or related entities, and each of their respective executors, successors, and legal representatives, and also includes the

following entities that placed calls or texts on Wells Fargo's behalf: Genesys, FICO Customer Communication Services, mBlox, Inc., CLX Communications, and Sinch.

"Related Actions" mean *Pieterson et al v. Wells Fargo Bank, N.A.*, No. 17-cv-02306 (N.D. Cal); *Hastings et al v. Wells Fargo Bank, N.A.,* No. 17-cv-03633 (N.D. Cal.); *Barnes et al v. Wells Fargo Bank, N.A.*, No. 18-cv-06520 (N.D. Cal.); and *Garr et al v. Wells Fargo Bank, N.A.*, No. 18-cv-06997 (N.D. Cal.).

## 7.     WHAT IF I DO NOT AGREE WITH THE SETTLEMENT?

If you are a member of the Settlement Class, you may object to the Settlement or any part of the Settlement that you think the Court should reject, and the Court will consider your views. To object, you must send your objection to the Settlement Administrator, Class Counsel, and Wells Fargo's Counsel providing:

     a.    the case name and case number(s) of this Litigation (*Prather et al. v. Wells Fargo Bank, N.A.,* No. 17-CV-00481);

     b.    your full name, current address and phone number;

     c.    the phone number at which you allegedly received a phone call or text message from Wells Fargo;

     d.    the reasons why you object to the Settlement along with any supporting materials;

     e.    the identity of any lawyer who assisted, provided advice, or represents you as to this case or as to your objection; and

     f.    your signature.

**Your objection must be postmarked no later than [date].**  Objections must be mailed to:

    Wells Fargo TCPA Settlement Administrator
    [ADDRESS]

    **Plaintiffs' Counsel:**             **Wells Fargo's Counsel**:
    Eugene Y. Turin                  Rebecca S. Saelao
    MCGUIRE LAW, P.C.             SEVERSON &WERSON
    55 W. Wacker Drive, 9th Floor      A Professional Corporation
    Chicago, IL 60601                One Embarcadero Center, Suite 2600
                                  San Francisco, California 94111

## 8.     HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASS?

If you want to exclude yourself from the Settlement Class, sometimes referred to as "opting-out," you will not be eligible to recover any benefits as a result of this Settlement. However, you will keep the right to sue or continue to sue Wells Fargo or Released Parties on your own and at your own expense about any of the Released Claims.

To exclude yourself from the Settlement Class, you must send a letter to the Settlement Administrator identifying:

    (1)     the name and case number of this lawsuit (*Prather et al. v. Wells Fargo Bank, N.A.,* No. 17-

CV-00481);

(2)     the phone number at which you received a phone call or text message from Wells Fargo;

(3)     your full name, current address, and telephone number;

(4)     a statement that you wish to exclude yourself from the Settlement Class; and

(5)     your signature.

If you wish to exclude yourself, you must submit the above information to the following address so that it is postmarked no later than [date]:

Wells Fargo TCPA Settlement Administrator: [address]

*REQUESTS FOR EXCLUSION FROM THE CLASS THAT ARE NOT POSTMARKED ON OR BEFORE [date] WILL NOT BE HONORED.*

| **9.**     **WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND ASKING TO BE EXCLUDED?** |
|---|

Objecting is simply telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object to the Settlement because it no longer affects you.

| **10.**     **WHAT IF I DO NOTHING AT ALL?** |
|---|

You will remain a member of the Settlement Class. **However, you must timely submit a Claim Form in order to receive a cash benefit in this Settlement.** See part 4, above.

| **11.**     **WHAT WILL BE DECIDED AT THE FINAL APPROVAL HEARING?** |
|---|

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees, expenses, and incentive awards ("Final Approval Hearing"). The Final Approval Hearing is currently set for [date] at [time], at the United States District Court for the Northern District of Illinois, Eastern Division, located in Courtroom 1919, 219 South Dearborn Street, Chicago, IL 60604. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.website.com and the Court's docket for updates.

At the Final Approval Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider the request by Class Counsel for attorneys' fees and expenses and for the Class Representatives' incentive awards. If there are objections, the Court will consider them at the Final Approval Hearing. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

You may attend the hearing, at your own expense, but you do not have to do so. You cannot speak at the hearing if you exclude yourself from the Settlement.

You may ask the Court for permission to speak at the hearing. To do so, you must send a letter saying that you intend to appear and wish to be heard.  Your notice of intention to appear must include the following:

(1)     the name and case number of this lawsuit (*Prather et al. v. Wells Fargo Bank, N.A.,* No. 17-CV-00481);

(2)     your full name, current address and telephone number;

(3)     the phone number at which you allegedly received a phone call or text message from Wells

8

Fargo;

(4)    a statement that this is your "Notice of Intention to Appear" at the Final Approval Hearing for this lawsuit (*Prather et al. v. Wells Fargo Bank, N.A.,* No. 17-CV-00481), along with copies of any papers, exhibits, or other evidence or information that you will present to the Court;

(5)    the reasons you want to be heard; and

(6)    your signature.

You must send copies of your notice of intention to appear, postmarked by [date], to:

Clerk of the Court
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

| **Plaintiffs' Counsel:** | **Wells Fargo's Counsel**: |
|---|---|
| Eugene Y. Turin | Rebecca S. Saelao |
| MCGUIRE LAW, P.C. | SEVERSON &WERSON |
| 55 W. Wacker Drive, 9th Floor | A Professional Corporation |
| Chicago, IL 60601 | One Embarcadero Center, Suite 2600 |
| | San Francisco, California 94111 |

## 12. DOES THIS NOTICE CONTAIN THE ENTIRE SETTLEMENT AGREEMENT?

No. This is only a summary of the Settlement. If the Settlement is approved and you do not exclude yourself from the Settlement Class, you will be bound by the release contained in the Settlement Agreement, and not just by the terms of this Notice. Capitalized terms in this Notice are defined in the Settlement Agreement. You can view the full Settlement Agreement online at www.website.com, or you can write to the address below for more information.

## 13. WHERE CAN I GET MORE INFORMATION?

For more information, you may visit www.website.com, you may call the Wells Fargo TCPA Settlement Administrator at 1-999-999-9999, or you may contact Class Counsel as set forth in Section 5, above.

## PLEASE MONITOR THE CASE WEBSITE, WWW.WEBSITE.COM, FOR UPDATES AND OTHER IMPORTANT INFORMATION.

**NOTE:** PLEASE **DO NOT** CALL OR WRITE THE COURT, THE COURT CLERK'S OFFICE, WELLS FARGO, OR WELLS FARGO'S COUNSEL FOR MORE INFORMATION. THEY WILL NOT BE ABLE TO ASSIST YOU. If you have questions, please call [number] or visit www.website.com.

# Exhibit 5

# If You Received an automated phone call or text message from Wells Fargo Bank, N.A. and you were not a Wells Fargo customer you may be eligible to receive a cash payment from a class action settlement.

The United States District Court for the Northern District of Illinois has authorized this notice to inform you about your rights. This is <u>not</u> an advertisement and <u>not</u> a solicitation from a lawyer.

*Para una notificacion en Espanol, visitar www.website.com.*

A settlement has been reached in a class action lawsuit against Wells Fargo Bank, N.A. ("Wells Fargo"). The lawsuit, *Prather et al. v. Wells Fargo Bank, N.A.*, No. 17-CV-00481 (N.D. Ill.), involves claims that Wells Fargo violated federal law by making automated phone calls and texts to non-customers' cellphones without those persons' permission. The individuals who brought the case allege that Wells Fargo violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") by sending calls and text messages using automated dialing technology or artificial/prerecorded voice technology to non-customers' cellphones without those individuals' prior express consent. Wells Fargo denies the allegations, and the Court has not decided who is right or wrong. Rather, the parties have reached a compromise to settle the lawsuit and avoid the uncertainties and costs associated with further litigation.

### <u>Am I Included in the Settlement?</u>

You may be entitled to compensation from this Settlement if you were not a Wells Fargo customer but received calls or text messages on your cell phone from Wells Fargo relating to the collection or servicing of (i) a mortgage or home equity loan, (ii) credit card account, (iii) retail installment sale contract for an automobile loan, (iv) automobile loan, (v) overdraft on a deposit account, (vi) a student loan, or in connection with a fraud alert. Please visit the detailed notice at www.website.com to determine if you are eligible to receive compensation from the Settlement.

### <u>What can I get from the Settlement?</u>

The proposed settlement provides for a fund totaling $17,850,000.00 which will be used to make payments to the class members after first making deductions for notice and administration costs, incentive awards to the class representatives, and attorneys' fees and expenses for class counsel. If the Court finally approves the settlement, each settlement class member who timely submits a valid claim form will be eligible to receive an equal payment from the Settlement Fund. To receive a payment, you must submit a Claim Form by **[date]**. Class Members can file a claim online at www.WellsFargoTCPASettlement.com, or visit that website and download a Claim Form and submit by email or U.S. Mail. Visit www.WellsFargoTCPASettlement.com or call for more information about this settlement and on how to file your claim for cash benefits.

### <u>Your rights may be affected.</u>

Class Members who do not want to be legally bound by the Settlement must exclude themselves by **[date]**. Class Members who do not exclude themselves will release their claims against Wells Fargo, as more fully described in the Settlement Agreement available at www.website.com. Class Members who stay in the Settlement may object to it by **[date]**. The Detailed Notice available on the website listed below explains how to exclude yourself or object. The Court is scheduled to hold a hearing on _____, 2019 to consider whether to approve the settlement, Class Counsel's request for attorneys' fees of up to 1/3 of the settlement fund, plus expenses, and incentive awards to the Class Representatives of up to $15,000 each. You can appear at the hearing but do not have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing. For more information, call or visit the website below.

### <u>How can I get more information?</u>

Please do not contact the Court or Wells Fargo with questions regarding this lawsuit. They will not be able to help you. - If you have questions or want a detailed notice or other documents about this lawsuit and your rights and options, visit www.website.com. You may also contact the Settlement Administrator by calling 1-999-999-9999, or Class Counsel at the telephone number and email addresses provided in the detailed notice available at www.website.com.

*For more information and for a Claim Form, visit www.website.com or call 1-999-999-9999.*