**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH DUNN, HELEN IEHL, ALBERT PIETERSON, JOHN HASTINGS, WINDIE BISHOP, LISA BARNES, ANGELA GARR, and MYESHA PRATHER individually and on behalf of a class of similarly situated individuals, | ) ) ) ) ) ) | No. 17-cv-00481 |
| *Plaintiffs*, | ) ) ) | Hon. Manish S. Shah |
| v. | ) ) | |
| WELLS FARGO BANK, N.A., | ) ) | |
| *Defendant*. | ) | |

**PLAINTIFFS' *UNOPPOSED* MOTION FOR APPROVAL OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS**

Myles McGuire
Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

Jonathan D. Selbin
Daniel M. Hutchinson
LIEFF CABRASER
HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: (212) 355-9000
Fax: (212) 355-9592
jselbin@lchb.com
dhutchinson@lchb.com

Daniel C. Girard
Angelica M. Ornelas
GIRARD SHARP, LLP
601 California St., 14th Fl.
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dgirard@girardsharp.com
aornelas@girardsharp.com

*Counsel for Plaintiffs and
Class Counsel*

## TABLE OF CONTENTS

Table of Authorities ................................................................................................ iv

I.     INTRODUCTION ........................................................................................ 1

II.    BACKGROUND ......................................................................................... 2

     A.    History Of The Litigation And Class Counsel's Efforts During Negotiations. ...... 2

         1.   The Illinois Litigation .................................................................... 4

         2.   The California Litigation. .............................................................. 6

         3.   Mediation and Settlement Negotiations. ...................................... 7

     B.    Class Counsel's Continuing Efforts Since Preliminary Approval ..................... 8

III.   RELIEF FOR THE SETTLEMENT CLASS MEMBERS .............................. 9

     A.    The Settlement's Notice Plan Has Succeeded in Notifying Thousands of Potential Settlement Class Members. .................................................. 9

     B.    Monetary Relief. ........................................................................... 10

     C.    The Settlement Class Members' Response To The Settlement Has Been Overwhelmingly Positive. ................................................... 10

IV.   DISCUSSION ............................................................................................ 11

     A.    Under The Percentage-Of-The-Fund Method For Calculating Attorneys' Fees— The Preferred Method In TCPA Class Actions—Class Counsel's Requested Fees Are Reasonable And Within The Market Rate. ............................. 12

         1.   Class Counsel's retainer agreements with Plaintiffs contemplate the requested fee award. ................................................. 13

         2.   Class Counsel's requested fee was calculated using the sliding-scale formula this District has adopted. .................................. 14

         3.   The risks associated with this litigation justify an upward adjustment to the base fee award under this District's sliding-scale formula. .......................... 16

         4.   An upward adjustment to Class Counsel's base fee is also justified by the substantial benefits Class Counsel achieved for the Settlement Class Members. ...................................... 19

     B.    Class Counsel's Requested Fee Award Is Also Appropriate Under The Lodestar Method. ....................................................... 21

         1.   The requested fee award reflects a reasonable rate under the lodestar method, because it comports with the prevailing market value of the time and resources that Class Counsel invested in this litigation. ......................... 21

2. The risks of this litigation and the exceptional relief obtained on behalf of the Settlement Class Members justify a multiplier of 1.88. ......................24

C. The Court Should Also Award Class Counsel's Reasonable Litigation Expenses Incurred In Prosecuting This Litigation. ............................................................27

D. The Agreed-Upon Incentive Award Is Warranted And Is In Line With Other Incentive Awards Approved By Other Courts In This District. ...........................28

V. CONCLUSION ...........................................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Lockheed Martin Corp.*,
  No. 06–cv–701, 2015 WL 4398475 (S.D. Ill. 2015)..............................................................22

*Aranda v. Caribbean Cruise Line, Inc.*,
  No. 12 C 4069, 2017 WL 1369741 (N.D. Ill. 2017)............................................. 15–17, 20, 30

*Arthur v. Sallie Mae, Inc.*,
  No. C10-0198JLR, 2012 WL 90101 (W.D. Wash. 2012)........................................................20

*Beesley v. Int'l Paper Co.*,
  3:06-CV-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. 2014)....................................................27

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  896 F.3d 792 (7th Cir. 2018) ........................................................................................... 15–17

*Blum v. Stenson*,
  465 U.S. 886 (1984) .................................................................................................................22

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ...........................................................................................................12, 27

*City of Greenville v. Syngenta Crop Prot., Inc.*,
  904 F. Supp. 2d 902 (S.D. Ill. 2012) ......................................................................................27

*Civil Rights Educ. and Enf't Ctr. v. Ashford Hosp. Trust, Inc.*,
  No. 15-cv-00216, 2016 WL 1177950 (N.D. Cal. 2016) .........................................................22

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ..........................................................................................11, 28

*Craftwood Lumber Co. v. Interline Brands*,
  No. 11-cv-4462, 2015 WL 2147679 (N.D. Ill. 2015). .......................................................15, 30

*Davis v. AT&T Corp.*,
  No. 15-2342, 2017 WL 1155350 (S.D. Cal. 2017). ................................................................18

*Florin v. Nationsbank of Ga., N.A.*,
  34 F.3d 560, 562 (7th Cir. 1994)......................................................................................11, 24

*Florin v. Nationsbank of Ga., N.A.*,
  60 F.3d 1245 (7th Cir. 1995) ...........................................................................................24, 25

*G.F. v. Contra Costa County*,
  No. 13-cv-03667-MEJ, 2015 WL 7571789 (N.D. Cal. 2015)................................................22

*Gastineau v. Wright*,
  592 F.3d 747 (7th Cir. 2010) ..........................................................................................21, 22

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ...................................................................................................25

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................22

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ..............................................passim

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ........................................................24, 27

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) ..............................................12, 13, 27

*In re Synthroid Mktg. Litig.*,
   325 F.3d 974 (7th Cir. 2003) ........................................................14, 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M-07-1827-SI, MDL No. 1827, 2013 WL 1365900 (N.D. Cal. 2013) ............................23

*Jeffboat LLC v. Director, Office of Workers' Comp. Programs*,
   553 F.3d 487 (7th Cir. 2009) ........................................................22

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015) .....................................................passim

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*,
   No. 16-cv-3571, 2016 WL 5109196 (N.D. Ill. 2016) ..................................30

*Martin v. Reid*,
   818 F.3d 302 (7th Cir. 2016) ........................................................30

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970) ....................................................................12

*Montanez v. Simon*,
   755 F.3d 547 (7th Cir. 2014) ........................................................22

*People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*,
   90 F.3d 1307 (7th Cir. 1996) ........................................................23

*Redman v. RadioShack Corp.*,
   768 F.3d 622 (7th Cir. 2014) ....................................................15, 17

*Reid v. Unilever U.S., Inc.*,
   No. 12 C 6058, 2015 WL 3653318 (N.D. Ill. 2015) ..................................22

*Roark v. Credit One Bank, N.A.*,
   No. 16-cv-173, 2018 WL 5921652 (D. Minn. 2018) ..................................17

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ..............................................29

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) ........................................................13

*Skelton v. Gen. Motors Corp.*,
   860 F.2d 250 (7th Cir. 1988) ........................................................12

*Spano v. Boeing Co.*,
No. 06-CV-743-NJR-DGW, 2016 WL 3791123 (S.D. Ill. 2016)....................................passim

*Spicer v. Chi. Bd. Options Exch., Inc.*,
844 F. Supp. 1226 (N.D. Ill. 1993) ...........................................................................27

*Standard Iron Works v. ArcelorMittal*,
No. 08 C 5214, 2014 WL 7781572 (N.D. Ill. 2014) .............................................26

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) ...................................................................................12

*Taubenfeld v. AON Corp.*,
415 F.3d 597 (7th Cir. 2005) ............................................................................13, 14

*Tomeo v. CitiGroup, Inc.*,
No. 13-cv-4046, 2018 WL 4627386 (N.D. Ill. 2018) ...........................................17

*Vergara et al. v. Uber Technologies, Inc.*,
No. 15-cv-6942, Dkt. 111 (N.D. Ill. 2018) ..............................................15, 16, 21

*Wilkins v. HSBC Bank of Nev., N.A.*,
No. 14-cv-190, 2015 WL 890566 (N.D. Ill. 2015) ...............................................15

*Williams v. Gen. Elec. Capital Auto Lease*,
No. 94 C 7410, 1995 WL 765266 (N.D. Ill. 1995) ...............................................12

*Williams v. Rohm and Haas Pens. Plan*,
658 F.3d 629 (7th Cir. 2011) ...................................................................................21

*Wright v. Nationstar Mortg. LLC*,
No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. 2016) ...........................................11

**Statutes**

47 U.S.C. § 227 *et seq.*........................................................................................passim

**Rules**

Fed. R. Civ. P. 23 ................................................................................................passim

## I.   INTRODUCTION

On July 8, 2019, this Court preliminarily approved the Parties' class action Settlement Agreement,[1] bringing to a close over two years of litigation spanning multiple federal courts. Notice has been distributed and Settlement Class Members have started to file claims. In advance of the Final Approval Hearing, Plaintiffs now move for approval of the agreed-upon Incentive Award and an award of attorneys' fees and expenses for Class Counsel.

The Class Action Settlement that Class Counsel achieved in this case is an exceptional result for the Settlement Class Members. Under the Settlement, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") has agreed to create a Settlement Fund of $17,850,000 that will be fully distributed to all of the Settlement Class Members, with each individual receiving a *pro rata* share following subtractions for the costs of notice and administration, court-awarded attorneys' fees and costs, and the Incentive Award to Plaintiffs.

To date, the Settlement has been met with overwhelming approval from Settlement Class Members. Notice of the Settlement commenced on September 30, 2019. Through a combination of direct notice by postcard, and publication notice through a press release and advertisements online and in USA Today, notice of the Settlement has successfully reached hundreds of thousands of potential Settlement Class Members. As of the filing of this Motion, and in only two weeks since notice commenced, over 12,800 claims have already been filed, and of the hundreds of thousands of potential Settlement Class Members who received notice, only 9 individuals have elected to opt out of the Settlement. There have been no objections.

With this Motion, Class Counsel request a fee award of $5,875,475.00—33% of the Settlement Fund. As explained in detail below, Class Counsel's requested fee award is justified

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as those terms are defined in the Parties' Settlement Agreement, attached hereto as Exhibit A.

given the exceptional monetary relief provided under the Settlement, is consistent with Seventh Circuit law and fee awards granted in similar TCPA class action settlements in the Northern District of Illinois, and is reasonable given the time and costs Class Counsel have committed to resolving this litigation for the benefit of the Settlement Class Members.

Both Class Counsel and the Class Representatives devoted significant time and effort to the prosecution of the Settlement Class Members' claims in the face of complex defenses and significant risks. Class Counsel's efforts have yielded an extraordinary benefit for hundreds of thousands of consumers nationwide. The requested attorneys' fees and costs and Incentive Award are amply justified in light of the investment, risks, and excellent results obtained for the Settlement Class Members. Plaintiffs and Class Counsel respectfully request that the Court approve their requested attorneys' fee of $5,875,475.00, plus litigation expenses incurred, and the agreed-upon Incentive Award of up to $70,000.00 total amongst the eight Class Representatives.

## II.  **BACKGROUND**

### A.    **History Of The Litigation And Class Counsel's Efforts During Negotiations.**

Wells Fargo is a national bank that provides a variety of financial services and products to millions of consumers and businesses throughout the country. (*See* Second Amended Class Action Complaint ("Complaint" or "SAC"), Dkt. 77, at ¶ 13.) As part of its banking operations, Wells Fargo offers its customers, among other things, consumer checking accounts, credit cards, student loans, automotive loans, and mortgage financing. (*Id.* at ¶ 16.) In providing these financial services, Wells Fargo collects the telephone numbers from its customers when such accounts are opened and throughout the servicing of the accounts. (*Id.* at ¶ 17.) These phone numbers are subsequently used to send automated text messages and phone calls related to the servicing of these accounts.  (*Id.*)

As Plaintiffs' alleged, many of the automated phone calls and text messages sent by Wells Fargo were received by individuals who were not Wells Fargo customers and thus did not provide their prior express consent to receive such messages. (SAC at ¶ 19.) Plaintiffs Dunn, Iehl, and Prather received such automated text messages on their cellular telephone that attempted to inform them about activity on a Wells Fargo account. (*Id.* at ¶¶ 21, 25, 95.) However, Plaintiffs Dunn, Iehl, and Prather were not Wells Fargo account holders and never gave consent to receive such text messages from Wells Fargo. (*Id.* at ¶¶ 22, 25, 99.) Similarly, Plaintiffs Pieterson, Hastings, Bishop, Barnes, and Garr received numerous automated debt collection calls from Wells Fargo even though they too were not Wells Fargo account holders. (*Id.* at ¶¶ 29, 31, 36, 46, 47, 51, 54, 71, 78, 83.) Plaintiffs have alleged that Wells Fargo fails to consistently verify that all of the phone numbers to which it places automated calls and sends text messages actually belong to Wells Fargo customers. (*Id.* at ¶ 18.) As discovery by Class Counsel demonstrated, hundreds of thousands of individuals received these misdirected calls.

Class Counsel have devoted substantial time and resources to investigating, litigating, and resolving this case and the related actions. (*See* Declaration of Myles McGuire, attached hereto as Exhibit B, at ¶¶ 11–15, 22–24; Declaration of Daniel M. Hutchinson, attached hereto as Exhibit C, at ¶¶ 40–49; Declaration of Daniel C. Girard, attached hereto as Exhibit D, at ¶¶ 8–19, 25; Declaration of John Yanchunis, attached hereto as Exhibit E, at ¶¶ 4–13.) Counsel spent significant time communicating with Plaintiffs, investigating facts, researching the law, preparing well-pleaded complaints and amended complaints, engaging in discovery, working with expert witnesses, briefing and arguing discovery disputes, preparing for and briefing class certification, reviewing documents, taking and defending numerous depositions, negotiating the Settlement Agreement and preparing the settlement-related documents and filings, and supervising the

settlement claims administration process. (*Id.*)

This suit was originally filed against Wells Fargo in the Northern District of Illinois on January 20, 2017 (Dkt. 1) (the "Illinois Litigation"). In the original Class Action Complaint and in the First Amended Class Action Complaint, Plaintiff Myesha Prather alleged that she received numerous prerecorded messages and text messages from Wells Fargo regarding activity on a Wells Fargo account. (First Amended Complaint ("FAC"), Dkt. 19, ¶¶ 14–17.) On April 25, 2017, Plaintiff Albert Pieterson filed a putative class action lawsuit against Wells Fargo under the TCPA in the Northern District of California, captioned *Pieterson et al v. Wells Fargo Bank, N.A.*, No. 17-cv-02306. Shortly thereafter, on April 27, 2017, the action naming Plaintiff Windie Bishop was filed in the Northern District of Georgia, captioned *Bishop et al. v. Wells Fargo Bank, N.A.*, No. 17-cv-01505 (the "Georgia Litigation").[2] Similarly, on June 24, 2017, Plaintiff John Hastings filed a separate putative class action lawsuit against Wells Fargo under the TCPA, also in the Northern District of California, captioned *Hastings et al v. Wells Fargo Bank, N.A.*, No. 17-cv-03633. Subsequently, on November 7, 2017, the *Hastings* case was formally consolidated with the *Pieterson* matter as case No. 17-cv-02306 (Dkt. 64) (together the "California Litigation"). On November 19, 2018, Plaintiff Angela Garr also filed another class action complaint against Wells Fargo in the Northern District of California, captioned *Garr v. Wells Fargo Bank, N.A.*, No. 18-cv-06997.[3] In the above-named actions, spanning three different states and four different federal district courts across the country, Class Counsel developed complex claims and obtained an excellent recovery for consumers in the face of relentless opposition by Wells Fargo.

---

[2] After engaging in discovery efforts, including briefing and hearing on a motion to compel, the *Bishop* action was voluntarily dismissed without prejudice in October 2018.
[3] The *Garr* action was stayed pending approval of the Settlement before the Court here.

1.      **The Illinois Litigation.**

Wells Fargo filed its answer to Plaintiff Prather's First Amended Complaint on May 8, 2017. (Dkt. 26.) Subsequently, Plaintiff propounded numerous interrogatories and document requests on Wells Fargo regarding both Plaintiff's case on the merits – including what type of calling equipment was used by Wells Fargo to place the calls and send the text messages at issue and what efforts Wells Fargo took to avoid such unauthorized calls to non-customers – as well as class discovery regarding identifying other individuals who received such unauthorized calls and Wells Fargo's efforts to identify when it has placed an unauthorized call or text message.

On June 1, 2018, following extensive discovery efforts, including issuing multiple interrogatories and document requests, and receiving thousands of pages of documents, Plaintiff filed her Motion to Compel (Dkt. 39), seeking production of additional documents relating to identifying putative class members who received unauthorized automated calls and text messages from Wells Fargo. Soon thereafter, Wells Fargo filed its motion to stay the case pending issuance of a ruling by the D.C. Circuit in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). (Dkt. 41.) After briefing the matter, Plaintiff prevailed, with Defendant's Motion to Stay being denied, and Plaintiff's Motion to Compel being granted. (Dkt. 53.) Subsequently, Plaintiff proceeded with discovery, including obtaining detailed call data from Wells Fargo's calling database of potential class members who were identified through Wells Fargo's internal systems as having received automated "wrong number" calls. (McGuire Decl. ¶¶ 11, 14–15.) Obtaining this data allowed Plaintiff to hire an expert specializing in call data records and tracking historical cellular telephone ownership to determine the accuracy of Wells Fargo's account and calling records, and to provide an assessment of the potential class size. (*Id.* ¶¶ 14–15.) It was after obtaining such substantial discovery, and in advance of Plaintiff's deadline to file for class certification, that Plaintiff

conducted a deposition of Wells Fargo's corporate representative, where Class Counsel obtained critical information about the dialing equipment used by Wells Fargo to place the automated text messages and phone calls at issue, as well as the systems maintained by Wells Fargo to obtain consent to place such calls and text messages and how its customer's records are created, maintained, and stored. (McGuire Decl. ¶ 15.)

It was in light of Plaintiff's discovery efforts, the upcoming deadline for Plaintiff to file her motion for class certification, as well as the risk of further new litigation filed by multiple potential plaintiffs, that the Parties agreed to participate in a mediation in December 2018 before the Honorable James F. Holderman (Ret.) of JAMS, the former Chief Judge of the United States District Court for the Northern District of Illinois with expertise in complex litigation.

### 2. The California Litigation.

Class Counsel in the California Litigation similarly devoted significant time, resources and effort towards litigating the Class Members' claims against Wells Fargo. Following consolidation of the *Pieterson* and *Hastings* cases in the Northern District of California, Class Counsel proceeded with significant discovery efforts, including propounding written discovery and, more importantly, conducted depositions of Wells Fargo's corporate designees in preparation for filing their motion for class certification. (Hutchinson Decl. ¶¶ 40–41; Girard Decl. ¶¶ 10–12; Yanchunis Decl. ¶¶ 6–8.) Wells Fargo similarly opposed efforts by Class Counsel in the California Litigation to proceed to Class Certification, and sought to stay the case, which Class Counsel successfully defeated. (No. 17-cv-02306, Dkt. 109.) It was as a result of their success in defeating Wells Fargo's motion to stay that Class Counsel were able to move forward with filing their motion for class certification on November 16, 2018. (No. 17-cv-02306, Dkt. 153.) In connection with their efforts to move for class certification, Class Counsel in the California Litigation also worked with an expert to show

that the proposed Class could be sufficiently identified and warranted certification. Here, too, Wells Fargo opposed Class Counsel's efforts, necessitating briefing on Wells Fargo's motion to strike their expert. (No. 17-cv-02306, Dkt. 166.) With their motion for class certification on file, the *Pieterson-Hastings* Plaintiffs joined with Plaintiffs Prather, Dunn, and Iehl to engage in joint settlement negotiations in an effort to reach final resolution of the pending cases against Wells Fargo.

### 3. Mediation and Settlement Negotiations.

Having conducted significant discovery, in September 2018, the Parties in the California Litigation participated in a mediation with mediator Hunter Hughes. Subsequently, with the Parties in the California Litigation not having reached a resolution on a class-basis, and having taken extensive written and oral discovery on Wells Fargo's calling practices, in December 2018, the Parties in the Illinois Litigation attended a mediation in Chicago with Judge James Holderman, the former Chief Judge of the Northern District of Illinois. After a full day of arms-length negotiations, the Parties reached a framework for settlement. In the more than five months following the formal mediation session, counsel for the Parties in the Illinois Litigation engaged in extensive negotiations to come to terms as to the key elements of the settlement, including a subsequent mediation in April 2019 with counsel for the Parties in the California and Georgia Litigations to determine the appropriate relief to be provided to the Class Members, as well as the scope of the release, and details about the notice to be provided to the Settlement Class Members. (McGuire Decl. ¶¶ 14–15; Hutchinson Decl. ¶¶ 42–45; Girard Decl. ¶ 12.) Importantly, Class Counsel engaged in significant confirmatory discovery efforts, including confirming and ultimately obtaining Wells Fargo's entire database of "wrong number" calls that would be used to identify the potential class members, as well as conducting several depositions of Wells Fargo's corporate

representatives regarding the contents of the database and how it was ultimately compiled. (McGuire Decl. ¶ 15.) It was only following these extensive confirmatory discovery efforts that Class Counsel, working with Wells Fargo's counsel, finalized the terms of the Settlement Agreement that was executed by the Parties, including preparing the proposed Notices and publication plan. (McGuire Decl. ¶¶ 14–15; Hutchinson Decl. ¶ 42; Girard Decl. ¶ 16.) Finally, after preparing and filing the Second Amended Class Action Complaint that formally consolidated the Illinois and California Litigations and resolved the claims brought in the Georgia Litigation (Dkt. 77), Class Counsel prepared and filed their motion for preliminary approval of the Settlement (Dkt. 80), which was granted by the Court on July 8, 2019. (Dkt. 82.)

### B. Class Counsel's Continuing Efforts Since Preliminary Approval.

Class Counsel has continued to invest significant time and effort in this action following preliminary approval. (McGuire Decl. ¶¶ 15, 23.) The Parties selected Epiq Systems Class Action and Claims Solutions ("Epiq") as the Settlement Administrator, and Class Counsel have been actively involved in supervising and managing all aspects of Epiq's administration of the notice program and claims process. (McGuire Decl. ¶ 15; Settlement Agreement, ¶ 42.) Class Counsel have regularly communicated with the Settlement Administrator to ensure a smooth notice process following preliminary approval and to ensure that the appropriate notice has been sent to the maximum number of potential class members. (McGuire Decl. ¶ 15.) To that end, Class Counsel have reviewed the language and content of the settlement website and final versions of the direct notice and online publication banner ads, reviewed and edited scripts for the automated telephone hotline, responded to Settlement Class Members who contacted Class Counsel directly, communicated with the named Plaintiffs regarding the notice and claims process, communicated with opposing counsel regarding notice issues, and prepared the present motion. (*Id.*) Class

Counsel will continue to devote their time and effort as the claims process continues, as well as appear at the final approval hearing, respond to ongoing inquiries from Settlement Class Members, and monitor the distribution of settlement payments by the Settlement Administrator. (McGuire Decl. ¶ 23.)

In total, Class Counsel have dedicated 4,904.1 combined hours to this case to date. (McGuire Decl. ¶ 22; Hutchinson Decl. ¶ 49; Girard Decl. ¶ 8; Yanchunis Decl. ¶ 10.) Class Counsel also conservatively estimate that they will expend at least an additional 80-160 hours in connection with final approval, responding to objectors, and effectuating the Settlement, resulting in a total lodestar of at least $3,118,206.40. (McGuire Decl. ¶¶ 22, 23; Hutchinson Decl. ¶ 49; Girard Decl. ¶ 8; Yanchunis Decl. ¶ 10.) Class counsel also incurred $291,785.63 in case-related expenses, including expert witness fees, court reporting fees, and travel-related expenses. (McGuire Decl. ¶ 24; Hutchinson Decl. ¶ 62; Girard Decl. ¶ 25; Yanchunis Decl. ¶ 13.) Class Counsel's combined efforts amply support the requested fee award and demonstrate that the fees to be paid to Class Counsel under the Settlement Agreement are both reasonable and well-earned.

## III.  RELIEF FOR THE SETTLEMENT CLASS MEMBERS

### A.  The Settlement's Notice Plan Has Succeeded In Notifying Hundreds of Thousands Of Potential Settlement Class Members.

Under the Settlement Agreement's Notice Plan, which has already gone into effect, Direct Notice has been provided by U.S. Mail to more than 1.1 million individuals. (*See* McGuire Decl. ¶ 25.) In addition, the Publication Notice has appeared in a press release and advertisements online and in *USA Today*, reaching many more individuals across the United States. (*Id.*) The Settlement Website is online, and in just the first two weeks since the website became active, there have already been more than 149,000 page hits, with over 12,800 claims filed. (*Id.*) To date, of the hundreds of thousands of individuals who have received notice through Direct Notice or

Publication Notice, none have filed an objection and there have been only 9 individuals who have elected to opt out of the Settlement. (McGuire Decl. ¶ 25.)

### B. Monetary Relief.

As detailed in Plaintiffs' preliminary approval filings, Class Counsel's prosecution of Plaintiffs' claims and of this litigation has culminated in a Settlement that provides substantial monetary relief to the Settlement Class Members. As a result of Class Counsel's efforts, Wells Fargo has agreed to establish a $17,850,000 cash Settlement Fund. (Settlement Agreement, ¶ 43.) Following subtractions for the costs of notice and administration, court awarded attorneys' fees and costs, and Incentive Award to Plaintiffs, the Settlement Fund will be distributed in full to Settlement Class Members whose claims are approved. (*Id.* ¶ 51.)

The Settlement Fund is to be distributed to Settlement Class Members *pro rata*. (*Id.*) As such, there is no cap on the total amount that each Settlement Class Member can receive, and the amount of each Settlement Class Member's payment will ultimately depend on the total number of approved claims. (*Id.*) Based on the number of claims filed to date, and based on discussions with the Settlement Administrator, Plaintiffs anticipate a payment per Settlement Class Member of between $120 and $250, which is well within the range of previously-approved TCPA settlements. (*See infra* Section IV.A.4; *see also* McGuire Decl. ¶ 25.)

### C. The Settlement Class Members' Response To The Settlement Has Been Overwhelmingly Positive.

The Settlement Class Members' positive response to this Settlement strongly supports a finding that Class Counsel's requested fee award is justified. As described in Plaintiffs' Motion for Preliminary Approval and explained in more detail below, the Settlement provides exceptional relief when compared with similar TCPA settlements approved in cases in this District and throughout the country. To date, the Settlement has received a high level of participation by the

Settlement Class Members, with over 12,800 claims having been filed in just the 14 days since the notice plan was executed—with *70 days still remaining* before the Claims Deadline. (McGuire Decl. ¶ 25.) Although the claims deadline is not until December 23, 2019, the strong support and participation from the Settlement Class Members at this very early stage of the claims process is a testament to the fairness and reasonableness of the Settlement and of the relief provided to the Settlement Class Members.

## IV. <u>DISCUSSION</u>

Federal Rule of Civil Procedure 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Seventh Circuit recognizes "two approaches used to calculate attorneys' fees: the lodestar method . . . and the percentage-of-recovery method . . . ." *Wright v. Nationstar Mortg. LLC*, No. 14-cv-10457, 2016 WL 4505169, at *14 (N.D. Ill. Aug. 29, 2016) (citing *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 562 (7th Cir. 1994) (hereinafter "*Florin I*")). Generally, "a district judge has discretion to use either method, depending on the particular circumstances of the case." *Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998).

In TCPA class actions like this one, where the defendant creates a common fund that is distributed in full, the percentage-of-the-fund method is "the normal practice," because "such an approach is more efficient for the court and more likely to yield an accurate approximation of the market rate." *In re Capital One Telephone Consumer Protection Act Litig.*, 80 F. Supp. 3d 781, 794–95 (N.D. Ill. 2015); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500–01 (N.D. Ill. 2015) ("The Court agrees with [class] counsel that the fee award in this case should be calculated based on a percentage-of-the-fund method . . . because fee arrangements based on the lodestar method require

plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of [many] million lightly-injured plaintiffs likely would not be interested in doing."); *Williams v. Gen. Elec. Capital Auto Lease*, No. 94-cv-7410, 1995 WL 765266, *9 (N.D. Ill. Dec. 6, 1995) ("The approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class") (collecting cases). Moreover, the percentage-of-the-fund method is the best method for recreating the market for TCPA attorneys, because TCPA attorneys generally work on contingency and are not paid by lodestar.

Here, Class Counsel's requested fee award is $5,875,475, which represents 33% of the Settlement Fund. As explained in detail below, this fee award is within the market rate for settlements of this size (as determined using the formula this District has adopted), is within the range of fees approved in other similar TCPA class actions, and is fair and reasonable in light of the work performed and the recovery secured on behalf of the Settlement Class Members.

### A. Under The Percentage-Of-The-Fund Method For Calculating Attorneys' Fees—The Preferred Method In TCPA Class Actions—Class Counsel's Requested Fees Are Reasonable And Within The Market Rate.

When a representative party has created a "common fund" for, or has conferred a "substantial benefit" upon, an identifiable class, counsel for that party is entitled to an award of attorneys' fees from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund . . . is entitled to a reasonable attorneys' fee from the fund as a whole."); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 717 (7th Cir. 2001) (hereinafter "*Synthroid I*"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007). This rule "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton*, 504 F.3d at 691–92 (citing *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)).

In determining an appropriate award in a common fund case, a court must endeavor to award "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Synthroid I*, 264 F.3d at 718. In other words, the percentage awarded should "approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (citations omitted); *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (holding that a court should attempt to "recreate the market" and determine what the parties would have agreed to *ex ante* (citation omitted)).

The Seventh Circuit has articulated three factors to help District Courts estimate the appropriate market fee: "(1) actual fee contracts between plaintiffs and their attorneys; (2) data from similar cases where fees were privately negotiated; and (3) information from class-counsel auctions." *Capital One*, 80 F. Supp. 3d at 796 (citing *Synthroid I*, 264 F.3d at 719); *see Taubenfeld*, 415 F.3d at 599. An application of these factors in this case shows that Class Counsel's requested fees are reasonable and well-earned.

### 1. Class Counsel's retainer agreements with Plaintiffs contemplate the requested fee award.

The first factor courts consider in determining the percentage of the fund that the class and class counsel would have agreed to *ex ante* is the actual agreed-upon amount in class counsel's retainer agreement. *Capital One*, 80 F. Supp. 3d at 796 (citing *Synthroid I*, 264 F.3d at 719). Here, Class Counsel's retainer agreements with Plaintiffs provide for a contingency fee of 33.33% of all monies recovered in addition to the costs of notice and administration. (McGuire Decl. ¶ 19; Yanchunis Decl. ¶ 3.) Given the $17,850,000 Settlement Fund here, Plaintiffs' agreements with Class Counsel contemplate a fee award of at least $5.95 million, in addition to the recovery of all costs and expenses. Here, the fee percentage requested, 33% of the Settlement Fund, is within the

range of fees previously awarded in the Seventh Circuit. *See, e.g., Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("The typical contingent fee is between 33 and 40 percent"). And the agreements' percentage is in line with what Class Counsel are actually seeking, as Class Counsel's requested fee award amounts to 33% of the Settlement Fund. Accordingly, the retainer agreements with Plaintiffs support a finding that the Settlement Class Members would have agreed to Class Counsel's requested fee in an *ex ante* negotiation. *See Capital One*, 80 F. Supp. 3d at 796; *see also Kolinek*, 311 F.R.D. at 500.

### 2. Class Counsel's requested fee was calculated using the sliding-scale formula this District has adopted.

The second and third *Synthroid I* factors direct courts to examine empirical evidence of fees determined during pre-suit negotiations and court-conducted class counsel auctions. However, in the TCPA context, such data is "non-existent." *Capital One*, 80 F. Supp. 3d at 796. Accordingly, courts reviewing TCPA class action settlements have established the market by looking at how fees were awarded at the end of other, similar class actions. *Kolinek*, 31 F.R.D. at 501 ("As the Seventh Circuit has held, attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases.") (citing *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 600 (7th Cir. 2005)).

To determine the appropriate market rate in TCPA cases like this one that involve large classes, judges in this District have examined data compiled from other common fund TCPA class action settlements. *Capital One*, 80 F. Supp. 3d at 798–804. Based on this data, courts in this District have adopted a "sliding scale" approach, under which the common fund is separated into tranches and class counsel is awarded a percentage of each tranche, with the percentage awarded decreasing as the size of the common fund increases. *Id.* at 804 n.16; *see also In re: Synthroid Mktg. Litig.*, 325 F.3d 974, 979 (7th Cir. 2003) (hereinafter "*Synthroid II*"). The sliding scale for

the award of fees in TCPA class actions, prior to accounting for the risks associated with a particular case, is as follows:

| Size of Recovery | Percentage Awarded as Fees (not including adjustment for risk) |
|---|---|
| First $10 million | 30% |
| Next $10 million | 25% |
| $20 - 45 million | 20% |
| Excess above $45 million | 15% |

*Capital One*, 80 F. Supp. 3d at 804 n.13 (citing *Synthroid II*, 325 F.3d at 979). Judge Holderman's analysis in *Capital One* has since been adopted and applied by numerous other courts in this District, including in TCPA settlements similar to this one in terms of size and structure. *See, e.g.*, *Vergara et al. v. Uber Technologies, Inc.*, No. 15-cv-6942, Dkt. 111 (N.D. Ill. 2018); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12-cv-4069, 2017 WL 1369741, at *9 (N.D. Ill. Apr. 10, 2017) (*affirmed by Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018), *cert. denied sub nom. McCabe v. Aranda*, 139 S. Ct. 923 (2019)); *Wilkins v. HSBC Bank of Nev., N.A.*, No. 14-cv-190, 2015 WL 890566, at *10 (N.D. Ill. Feb. 27, 2015); *Kolinek*, 311 F.R.D. at 501–02; *Craftwood Lumber Co. v. Interline Brands*, No. 11-cv-4462, 2015 WL 2147679, at *4 (N.D. Ill. May 6, 2015).

Once the appropriate market-based percentages are determined using the chart, the Seventh Circuit instructs District Courts to calculate the base attorneys' fee amount by multiplying the percentages by the amount of money actually paid to the class from the fund—excluding notice and administration costs, and incentive awards. *Pearson*, 772 F.3d at 781; *Redman*, 768 F.3d at 630; *Capital One*, 80 F. Supp. 3d at 795 (quoting *Redman*, 768 F.3d at 630). Here, Plaintiffs anticipate that the costs of notice and administration will not exceed $715,000 (and may be lower).

After subtracting these costs and the Incentive Award pursuant to *Pearson* and *Redman*, the Settlement Fund provides direct relief to the Class in the amount of $17,065,000. Applying this District's established formula from *Capital One* to this amount results in a reasonable attorneys' fees award—prior to any risk adjustment—of $4,766,250 (30% of the first $10 million plus 25% of the remaining $7,065,000).

### 3. The risks associated with this litigation justify an upward adjustment to the base fee award under this District's sliding-scale formula.

Given the substantial risk of non-payment that Class Counsel undertook in prosecuting this litigation against a defendant with substantial resources, strong legal defenses, and a willingness to litigate, Plaintiffs request a 6.5% upward adjustment to the first two tranches, justifying a risk-adjusted fee award of $5,875,475.00 (36.5% of the first $10 million plus 31.5% of the remaining $7,065,000). A 6.5% upward risk adjustment to the base percentages of the first two tranches is both reasonable and justified given the substantial risks Class Counsel assumed in prosecuting this litigation. *See, e.g., Vergara*, No. 15-cv-06942, Dkt. 111 (Feb 2, 2018) (applying a risk premium of 6% to the first tranche and 5% to the second tranche); *Birchmeier*, 896 F.3d at 798 (affirming the court's application of a risk premium of 6% to the first tranche and 5% to the second); *Capital One*, 80 F. Supp. 3d at 806 (finding that a 6% increase—equating to 36% of the first $10 million in the fund—was justified in a TCPA case that was only "slightly riskier" than a typical TCPA case); *Kolinek*, 311 F.R.D. at 502–03 (relying on *Captial One* and granting a 30% fee award with a 6% upward risk adjustment).

For example, in *Aranda*, also a large TCPA class action, the court applied this District's sliding scale formula and increased the benchmark percentages of each tranche to account for the risk factors in the case. 2017 WL 1369741, at **6–9. The *Aranda* court found that "difficult legal and factual issues [] pose[d] potential obstacles to plaintiffs' success at the case's outset," including

"[t]he difficulty in identifying class members" and that such risks, amongst other factors, supported its award of a risk premium. *Aranda*, 2017 WL 1369741, at \*7–8. The *Aranda* court ultimately calculated the fee as follows:

> Taking the award structure in *Gehrich*, *Wilkins*, *Craftwood*, and *Capital One* as a guide (30% for the first band, 25% for the second band, 20% for the third band, 15% for the fourth band), the Court applies a six-point premium to the first band, a five-point premium to the second band, a four-point premium to the third band, and a three-point premium to the fourth band. Thus, the Court awards class counsel 36% of the first $10 million ($3.6 million), 30% of the second $10 million ($3 million), 24% of the band from $20 million to $56 million ($8.64 million), and 18% of the remainder.

*Id.* at \*9. Importantly, the *Aranda* court's rationale and fee award was affirmed by the Seventh Circuit in *Birchmeier*, where the Seventh Circuit specifically affirmed a fee award of 36% of the first $10 million, and 30% of the second $10 million. 896 F.3d 797–98. Here, the facts of this case not only posed hurdles to class certification, they also presented strong defenses on the merits of Plaintiffs' claims. Throughout the litigation, Wells Fargo denied Plaintiffs' allegations and raised several legal defenses, any of which, if successful, would have resulted in the Plaintiffs and the proposed Settlement Class Members receiving no payment whatsoever. As reflected in the docket in the California Litigation, Wells Fargo vigorously opposed Plaintiffs' efforts to certify the class, including even filing a motion to strike the expert used to support Plaintiffs' arguments that a class of individuals who received the misdirected calls could be accurately identified. Wells Fargo made it clear that it would similarly oppose any efforts in the Illinois Litigation to certify any class of individuals. Further, even leaving aside Wells Fargo's efforts to oppose any attempts at certification, certification in either case would have been challenging given the nature of the putative class members' claims – i.e., a "wrong number" class – and the difficulty of identifying the individuals who received misdirected calls. Indeed, courts often deny class certification in similar such cases. *See, e.g.*, *Tomeo v. CitiGroup, Inc.*, No. 13-cv-4046, 2018 WL 4627386 (N.D.

Ill. Sept. 27, 2018); *Davis v. AT&T Corp.*, No. 15-cv-2342, 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017); *see also Roark v. Credit One Bank, N.A.*, No. 16-cv-173, 2018 WL 5921652 (D. Minn. Nov. 13, 2018) (finding that a creditor's reliance on the consent of the customer it was intending to reach was sufficient to confer consent even after the number was reassigned).

In addition, given that the majority of the calls and text messages at issue were placed using automated dialing equipment, there is no question that Wells Fargo would have also proceeded with filing dispositive motions for summary judgment on the issue of whether the calls were placed using an ATDS as required to state a claim under the TCPA. Based on a similar argument, this Court recently granted Yahoo! summary judgment in a putative TCPA class action. *See Johnson v. Yahoo!, Inc*., 346 F. Supp. 3d 1159, 1162 (N.D. Ill. 2018) (holding the system there at issue was not an ATDS as it "did not have the capacity to generate random or sequential numbers to be dialed—it dialed numbers from a stored list"). A similar holding here – that Wells Fargo's equipment is not an ATDS – would similarly dispose of the case with the Class Members receiving no recovery whatsoever.

In sum, although Plaintiffs believe their TCPA claims against Wells Fargo are strong, they recognize that Wells Fargo's liability was far from certain. (McGuire Decl. ¶¶ 10–14, 18; Hutchinson Decl. ¶¶ 58–59, 61.) Class Counsel undertook their representation of the Plaintiffs in the Illinois Litigation and California Litigation knowing that they would face strong opposition from a defendant with such substantial financial resources. (*Id.*) Class Counsel nonetheless worked tirelessly to obtain a large, non-reversionary settlement fund in the face of numerous significant defenses raised by Wells Fargo. Had Wells Fargo prevailed either on the merits or in defeating class certification, the Settlement Class Members would have received *nothing*. However, Class Counsel achieved an excellent result in obtaining a $17,850,000 Settlement Fund to be distributed

as compensation to Settlement Class Members with valid claims. Class Counsel achieved these results solely due to their extensive class action experience and significant efforts in prosecuting this litigation, including investigating and analyzing novel issues relating to Wells Fargo's account database and customer consent records and how Wells Fargo dealt with attempts at revoking consent; conducting extensive discovery on Wells Fargo's calling systems and business practices; identifying potential Settlement Class Members; and productively mediating this case and negotiating the final Settlement Agreement. Given the significant efforts needed to secure the Settlement in this litigation, and the risks inherent in this type of class action, an upward risk adjustment to Class Counsel's base is reasonable and justified.

        **4.**     **An upward adjustment to Class Counsel's base fee is also justified by the substantial benefits Class Counsel achieved for the Settlement Class Members.**

The requested risk enhancements are also justified due to the benefit this Settlement provides to the Settlement Class Members compared against the benefits of comparable TCPA settlements. As described in Plaintiffs' Motion for Preliminary Approval (Dkt. 84), the monetary relief provided under the Settlement is an exceptional result for the Settlement Class, both in terms of what the Settlement Class Members could have hoped to recover at trial, and in relation to other similar TCPA class action settlements.

In most TCPA cases, class members recover less than $200. *See, e.g.*, *Kramer v. Autobytel, Inc.*, No. 10-cv- 2722, Dkt. 148 (N.D. Cal. Jan. 27, 2012) (providing for a cash payment of $100 to each class member); *Weinstein v. The Timberland Co.*, No. 06-cv-00484, Dkt. 93 (N.D. Ill. Dec. 18, 2008) (providing for a cash payment of $150 to each class member); *Satterfield v. Simon & Schuster, Inc.*, No. 06-cv-2893, Dkt. 132 (N.D. Cal. Aug. 6, 2010) (providing for a cash payment of $175 to each class member); *Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-6344,

Dkt. 65 (N.D. Ill. Apr. 15, 2011) (providing for a cash payment of $200 to each class member).

In some cases, such as those involving the risks and strong legal defenses present here, the recovery is often far less. *See, e.g., Capital One*, 80 F. Supp. 3d at 790 (providing a $34.60 recovery per claiming class member); *Arthur v. Sallie Mae, Inc.*, No. 10-cv-0198, 2012 WL 90101, at *3 (W.D. Wash. Jan. 10, 2012) (approving a settlement where class members were due to receive between $20 and $40); *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-05142, Dkt. 94 (N.D. Cal. Apr. 2, 2012) (providing a $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-MD-02261, Dkt. 97 (S.D. Cal. Feb. 20, 2013) (providing a $20 voucher, which could be redeemed for $15 cash after expiration of nine-month waiting period).

Here, although the individual *pro rata* payments that will be made to Settlement Class Members who submit valid claims will ultimately depend on the number of claims filed, the monetary relief will still be fair and reasonable and at least in the range of the other similar settlements cited above. Even assuming that the current claims rate of approximately 6,200 claims per week continues and that at least 68,000 Settlement Class Members file valid claims (a very ambitious assumption), the payout to Settlement Class Members would still be more than $160.00 per Class Member, and is in reality likely to be much higher. This is an outstanding result in light of the challenges and risks overcome in this hard-fought litigation.[4]

Ultimately, taken as a whole, this Settlement represents a strong result for the Settlement Class Members. Given the heightened risks and strong legal defenses present here, and compared to awards in similar TCPA actions, the requested risk enhancement of 6.5% per tranche, bringing

---

[4] Even if large participation may ultimately lower the originally-anticipated amount of individual payments, a high claims rate will nonetheless demonstrate that the Settlement Class Members have a positive view of the Settlement. *See, e.g., Cruz v. Sky Chefs, Inc.*, No. 12-cv-02705, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (noting that a "robust" claims rate and a low number of opt-outs show a positive reaction on the part of the class).

the adjusted fee award to $5,875,475, is reasonable and fair in this instance. *See, e.g., Vergara*, No. 15-cv-06942, Dkt. 111 (Feb. 2, 2018); *Aranda*, 2017 WL 1369741, at *9; *Capital One*, 80 F. Supp. 3d at 806; *Kolinek*, 311 F.R.D. at 502–03. Accordingly, the market rate and risk factors in this litigation confirm that the requested fee award is both reasonable and justified.

**B.      Class Counsel's Requested Fee Award Is Also Appropriate Under The Lodestar Method.**

Although "consideration of a lodestar check is not an issue of required methodology," *Williams v. Rohm and Haas Pens. Plan*, 658 F.3d 629, 636 (7th Cir. 2011), and the weight of authority supports using the percentage-of-the-fund method for awarding attorneys' fees in large consumer cases involving a common fund, *Spano v. Boeing Co.*, No. 06-cv-743, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016) ("The use of a lodestar cross-check is no longer recommended in the Seventh Circuit"), the fees sought here are also fair and reasonable under the lodestar method. Class Counsel's fee request reflects an appropriate multiplier to their base lodestar of just 1.88. Given the high risk of taking on this litigation, the excellent result for the Settlement Class Members, and Class Counsel's experience, expertise, and time spent prosecuting this litigation and obtaining resolution of what is ultimately six separate lawsuits, the modest 1.88 multiplier is not only justified, but well-supported by numerous court decisions awarding attorneys' fees with a much higher lodestar. Accordingly, a lodestar cross-check confirms the reasonableness of Class Counsel's fee request and fairly compensates them for obtaining an exceptional result in the face of significant risks.

**1.      The requested fee award reflects a reasonable rate under the lodestar method, because it comports with the prevailing market value of the time and resources that Class Counsel invested in this litigation.**

Under the lodestar method, courts consider the number of hours expended by class counsel, class counsel's hourly rate, and the level of risk taken on by class counsel. *See Gastineau v. Wright*,

592 F.3d 747, 748 (7th Cir. 2010). The first step in determining the amount of attorneys' fees to award is to calculate the base rate by "multiplying a reasonable hourly rate by the number of hours reasonably expended." *Gastineau*, 592 F.3d at 748 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–37 (1983)). The best evidence of a reasonable hourly rate is "the amount the attorney actually bills for similar work," or "if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014); *see also Jeffboat LLC v. Director, Office of Workers' Comp. Programs*, 553 F.3d 487, 489 (7th Cir. 2009) (holding that reasonable hourly rate should be in line with the prevailing rate in the "community for similar services by lawyers of reasonably comparable skill, experience and reputation") (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

Here, as detailed in the attached Declarations, Class Counsel's rates are comparable to those charged by attorneys with similar backgrounds and experience and are commensurate with judicially-approved rates in class actions in this District and in the Northern District of California. (McGuire Decl. ¶ 21; Hutchinson Decl. ¶¶ 54–55; Girard Decl. ¶¶ 21–22; Yanchunis Decl. ¶ 11); *Spano*, 2016 WL 3791123, at *4 (approving class counsel's rates of $850 per hour for attorneys with 15–24 years of experience; $612 per hour for attorneys with 5–14 years of experience; and $460 per hour for attorneys with 2–4 years of experience); *Abbott v. Lockheed Martin Corp.*, No. 06-cv-701, 2015 WL 4398475, at *3 (S.D. Ill. July 17, 2015) (approving similar rates); *Reid v. Unilever U.S., Inc.*, No. 12 C 6058, 2015 WL 3653318, at *16 (N.D. Ill. June 10, 2015) (approving $650 per hour for a partner representing plaintiffs in consumer class actions); *see also Civil Rights Educ. and Enf't Ctr. v. Ashford Hosp. Trust, Inc.*, No. 15-cv-00216, 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016) (requested hourly rates of $900, $750, $550, $500, $430, and $360 for

attorneys and $225 for paralegals were "in line with the market rates charged by attorneys and paralegals of similar experience, skill, and expertise practicing in the Northern District of California."); *G.F. v. Contra Costa County*, No. 13-cv-03667, 2015 WL 7571789, at *14 (N.D. Cal. Nov. 25, 2015) (hourly rates between $175 per hour and $975 per hour, which included "an hourly rate of $845–$975 for two of the most senior and experienced litigators," were "in line with the overall range of market rates for attorneys and for litigation support staff of similar abilities and experience" in the Northern District of California between 2013 and 2014); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-M-1827, MDL No. 1827, 2013 WL 1365900, at *9 (N.D. Cal. Apr. 3 2013) (finding individual billing rates up to $1,000 per hour reasonable for the lead class counsel in an antitrust case).

Class Counsel's rates are also justified by their experience and expertise in litigating class actions, including many cases involving consumer protection, consumer privacy, and TCPA violations. (McGuire Decl. ¶¶ 5–9; Hutchinson Decl. ¶¶ 5–39; Girard Decl. ¶¶ 5–7.) Further, numerous state and federal courts, including courts in this District, have previously and recently approved Class Counsel's then-current hourly rates as reasonable. (McGuire Decl. ¶ 21; Hutchinson Decl. ¶¶ 54–55; Girard Decl. ¶¶ 21–22; Yanchunis Decl. ¶ 11.) The fact that many other courts have approved Class Counsel's hourly rates further supports the rates' reasonableness in this market. *See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1312 (7th Cir. 1996) ("[R]ates awarded in similar cases are clearly evidence of an attorney's market rate").

The number of hours Class Counsel worked is also reasonable given the length of the litigation, the complexity of the Illinois and California Litigations, and the size of the Settlement Fund recovered for the Settlement Class Members. As stated in Class Counsel's Declarations,

Class Counsel have logged a total of 4,904.1 hours in uncompensated time in order to achieve the Settlement in this case, accounting for $3,066,874.40 in attorneys' fees. (McGuire Decl. ¶ 22; Hutchinson Decl. ¶ 49; Girard Decl. ¶ 8; Yanchunis Decl. ¶ 10.) Further, Class Counsel anticipate expending additional time and effort through final approval to respond to inquiries from Settlement Class Members, respond to any potential objectors, prepare final approval papers, review claims, and advocate on behalf of the Settlement Class Members in the event a claim is wrongfully denied. (McGuire Decl. ¶ 23.) Class Counsel conservatively estimate that the lodestar for these additional efforts will be approximately $45,000–$90,000, resulting in a total base lodestar of at least $3,118,206.40. (McGuire Decl. ¶¶ 22, 23; Hutchinson Decl. ¶ 49; Girard Decl. ¶ 8; Yanchunis Decl. ¶ 10.)[5]

### 2. The risks of this litigation and the exceptional relief obtained on behalf of the Settlement Class Members justify a multiplier of 1.88.

The second step of the lodestar analysis is the application of a risk multiplier to the base amount. If a court decides to apply the lodestar method in a contingency fee case, then "a risk multiplier is not merely available . . . but mandated," because "counsel had no sure source of compensation for their services." *Florin I*, 34 F.3d at 565 (internal quotation omitted). "The need for [a risk multiplier] adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent." *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, (7th Cir. 1992). The amount of the multiplier is, like the percentage of the fund, "an effort to mimic market forces." *Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995) (hereinafter "*Florin II*").

To set the multiplier, "[a] court must assess the riskiness of the litigation by measuring the

---

[5] Critically, the submitted lodestar is not the full lodestar expended in prosecuting the Georgia and California Litigations, with several of the firms identified as Additional Class Counsel in the Settlement Agreement having incurred an additional $421,970.50 in lodestar. (Hutchinson Decl. ¶ 60.)

probability of success of this type of case at the outset of the litigation." *Florin I*, 34 F.3d at 565 (emphasis in original). Although coming up with the exact number of a multiplier "is inevitably somewhat subjective," *id.*, the Seventh Circuit has held that "[t]he multiplier is determined by dividing 1 by the probability of success," *Florin II*, 60 F.3d at 1248 n.3. The probability of success depends on a number of factors. For example, some cases are less risky because they come on the heels of a government investigation or criminal prosecution.

Class Counsel's current lodestar of $3,118,206.40 requires a multiplier of just 1.88 to reach the $5,875,475 in attorneys' fees requested. Using the *Florin II* formula, a multiplier of 1.88 implies a 53% chance of success at the outset of the litigation (1/1.88=.53). At the beginning of this litigation, estimating a 53% chance of success would have been reasonable – even conservative – due to the risks inherent in this case and strength of Wells Fargo's defenses.

First, Class Counsel and the named Plaintiffs investigated and prosecuted this case on their own. Second, as explained above, Wells Fargo opposed certification on multiple grounds, including whether certification would be manageable, whether individualized issues would predominate over common questions, and whether class members would be sufficiently identified, and also sought to strike Plaintiffs' expert witness. Wells Fargo also disputed whether the calls and text messages at issue were sent with an ATDS.

The requested multiplier is not only necessary to appropriately compensate Class Counsel for the risk involved in this litigation; it is also in line with multipliers in other cases in the Seventh Circuit. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) ("Multipliers anywhere between one and four have been approved") (internal citation omitted); *Spano*, 2016 WL 3791123, at *3 ("In risky litigation such as this, lodestar multipliers can be reasonable in a range between 2 and 5") (collecting cases). This is especially true when compared to settlements with a similar

recovery. Courts regularly approve settlements with higher multipliers than Class Counsel's request here, even for cases that are not as risky. Given the high risk involved in this case, a multiplier of 1.88 is consistent with the market rate and well within the range of attorneys' fees awarded by numerous other courts.

The exceptional relief obtained on behalf of the Settlement Class Members also warrants Class Counsel's requested multiplier. Given the risks inherent in this litigation and the many hurdles Class Counsel have overcome, including the numerous competing cases throughout the country that were resolved through this Settlement, this Settlement is an outstanding result in terms of the total monetary compensation made available to the Settlement Class Members and the anticipated amount of per-Class Member payments. *See Standard Iron Works v. ArcelorMittal*, No. 08-cv-5214, 2014 WL 7781572, at *2 (N.D. Ill. Oct. 22, 2014) ("Having shouldered these risks, and having achieved outstanding results for the Class, Class Counsel have earned their requested multiplier").

In sum, although the lodestar method is not particularly well-suited to evaluating fee requests in a common fund case like this one, Class Counsel's requested fee is reasonable even if the Court were to use the lodestar method. Class Counsel's base lodestar is appropriate and reasonable given the efforts expended, the results obtained, and the relief made available to the Settlement Class Members. Further, the risks taken in prosecuting this case coupled with the success obtained for the Settlement Class Members amply justify the modest multiplier requested. As such, regardless of whether this Court uses the percentage-of-the-fund method or the lodestar method, the requested attorneys' fee award is fair, reasonable, and justified.

C. **The Court Should Also Award Class Counsel's Reasonable Litigation Expenses Incurred In Prosecuting This Litigation.**

It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses. *Beesley v. Int'l Paper Co.*, 06-cv-703, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014) (citing Fed. R. Civ. P. 23; *Boeing*, 444 U.S. at 478). The Seventh Circuit has held that costs and expenses should be awarded based on the types of "expenses private clients in large class actions (auctions and otherwise) pay." *Synthroid I*, 264 F.3d at 722; *see also Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993) (noting that courts regularly award reimbursement of those expenses that are reasonable and necessarily incurred in the course of litigation). Reimbursable expenses include expert fees; travel; long distance and conference telephone; postage; delivery services; and computerized legal research. *See*, *e.g.*, *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 570 ("clear error" to deny reimbursement of Lexis and Westlaw expenses because "the arms' length market reimburses" such expenses); *Beesley*, 2014 WL 375432, *3 (granting reimbursement from common fund for litigation expenses including "expert witness costs; computerized research; court reports; travel expense; copy, phone and facsimile expenses and mediation."); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 910 (S.D. Ill. 2012) (granting reimbursement of expenses including "experts' fees, other consulting fees, deposition expenses, travel, and photocopying costs").

Here, Class Counsel have incurred $291,785.63 in reimbursable expenses related to filing, appearances, discovery, subpoenas, expert fees, travel, copying, case administration, postage, delivery services, computerized legal research, and transcripts. (McGuire Decl. ¶ 24; Hutchinson Decl. ¶ 62; Girard Decl. ¶ 25; Yanchunis Decl. ¶ 13.) Class Counsel's expenses here all fall into the categories outlined above and were all reasonably incurred in pursuing this litigation. (*Id.*) Class Counsel have reviewed the expense records carefully and determined that the expenses were

necessary to the successful prosecution of this case. (*Id.*) These expenses were necessary to prosecute litigation of this size and complexity on behalf of the Settlement Class, and they are typical of expenses regularly awarded in large-scale class actions. Accordingly, Class Counsel request that the Court approve an award of expenses in the amount of $291,785.63.

### D. The Agreed-Upon Incentive Award Is Warranted And Is In Line With Other Incentive Awards Approved By Other Courts In This District.

The requested Incentive Award of $70,000 combined for Class Representatives Joseph Dunn, Helen Iehl, Windie Bishop, Lisa Barnes, Angela Garr, Albert Pieterson, John Hastings, and Myesha Prather, for their service to the Settlement Class Members is also fair and reasonable and warrants approval. Because "a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook*, 142 F.3d at 1016; *Spano*, 2016 WL 3791123, at *4. In deciding whether an incentive award is reasonable, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook*, 142 F.3d at 1016.

The factors warranting incentive awards are satisfied here. Each Plaintiff has worked alongside Class Counsel and remained actively engaged through every stage of this litigation— from assisting with the initial investigation of their claims, reviewing the complaint and other filings, consulting with Class Counsel on numerous occasions and providing Class Counsel with the documents and information needed to pursue their and the Settlement Class Members' claims, and responding to requests for additional information throughout the settlement process. (McGuire Decl. ¶¶ 26–27; Hutchinson Decl. ¶ 63; Girard Decl. ¶¶ 27–28; Yanchunis Decl. ¶¶ 5, 7.) The Plaintiffs in the California Litigation specifically reviewed pleadings before they were filed, located and produced documents supporting their claims and responsive to requests for production;

responded to written discovery, took time off from work to travel to and prepare and sit for their depositions, kept apprised of the status of their respective cases throughout litigation and settlement, participated in settlement discussions, and were in constant communication with their counsel. (Hutchinson Decl. ¶¶ 52, 63; Girard Decl. ¶¶ 27–28; Yanchunis Decl. ¶ 5; ) Similarly, the Plaintiffs in the Illinois litigation reviewed all pleadings, produced records and responded to written discovery where requested, consulted with Class Counsel regarding the terms of the Settlement, and were prepared to devote time to attend hearings and depositions, with Plaintiff Prather sitting for a deposition. (McGuire Decl. ¶¶ 26–27.)

Although no award was promised to Plaintiffs prior to or during the litigation, Plaintiffs nonetheless contributed their time and effort in pursuing their own TCPA claims and serving as representatives on behalf of the Settlement Class Members—exhibiting a willingness to participate and undertake the responsibilities and risks attendant with bringing a representative action. (McGuire Decl. ¶¶ 26–27; Hutchinson Decl. ¶¶ 52, 63; Girard Decl. ¶¶ 27–28; Yanchunis Decl. ¶ 5.) Moreover, agreeing to serve as class representatives meant that Plaintiffs publicly put their names on this litigation, subjecting them to "scrutiny and attention," which by itself "is certainly worthy of some type of remuneration." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 600–01 (N.D. Ill. 2011). Were it not for Plaintiffs' willingness to pursue their claims on a class-wide basis and their efforts and contributions to the litigation, including participating in and monitoring the cases through settlement and approval, the substantial benefits to the Settlement Class Members afforded under the Settlement Agreement would not exist.

The proposed Incentive Award collectively amounts to $70,000—an amount split among *eight* individuals, given that this Settlement constitutes a global resolution of many lawsuits filed throughout the country. The proposed Incentive Award collectively amounts to less than 0.4% of

the total Settlement Fund and is well within the range of awards approved in similar class action settlements. *See, e.g., Craftwood*, 2015 WL 1399367, at *6 (finding that $25,000 incentive award was reasonable and "in line with incentive fees awarded by other courts in this district"); *Aranda*, 2017 WL 1369741, at *10 (awarding $10,000 incentive awards to each of the class representatives); *see Martin v. Reid*, 818 F.3d 302, 306 (7th Cir. 2016) (affirming approval of settlement agreement with $10,000 incentive award); *Spano*, 2016 WL 3791123, at *4 (approving $10,000 incentive awards); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16-cv-3571, 2016 WL 5109196, at *3 (N.D. Ill. Sept. 16, 2016) (awarding incentive awards of $70,000 total for seven class representatives); *Murray et al v. Bill Me Later, Inc.*, No. 12-cv-04789, Dkt. 78 (N.D. Ill. 2014) (awarding $60,000 incentive award to two class representatives).

Compensating Plaintiffs for the risks and efforts they undertook on behalf of the Settlement Class Members is especially appropriate given the exceptional results obtained. There have been no objections to the requested Incentive Award to date. Accordingly, an Incentive Award collectively of $70,000 to Plaintiffs Joseph Dunn, Helen Iehl, Windie Bishop, Lisa Barnes, Angela Garr, Albert Pieterson, John Hastings and Myesha Prather, is reasonable, justified by Plaintiffs' time and effort in this case, and should be approved.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the requested fee award of $5,875,475,000; award Class Counsel their reasonable litigation expenses of $291,785.63; approve the requested Incentive Award collectively of $70,000 to Plaintiffs Joseph Dunn, Helen Iehl, Windie Bishop, Lisa Barnes, Angela Garr, Albert Pieterson, John Hastings, and Myesha Prather; and award such other and further relief the Court deems equitable and just.

Dated:  October 14, 2019

Respectfully submitted,

JOSEPH DUNN, HELEN IEHL, ALBERT
PIETERSON, JOHN HASTINGS, WINDIE
BISHOP, LISA BARNES, ANGELA GARR, and
MYESHA PRATHER individually and on behalf of
a class of similarly situated individuals

By: /s/ Evan M. Meyers
        One of Plaintiffs' Attorneys

Myles McGuire
Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

Jonathan D. Selbin
Daniel M. Hutchinson
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: (212) 355-9000
Fax: (212) 355-9592
jselbin@lchb.com
dhutchinson@lchb.com

Daniel C. Girard
Angelica M. Ornelas
GIRARD SHARP, LLP
601 California St., 14th Fl.
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dgirard@girardsharp.com
aornelas@girardsharp.com

*Counsel for Plaintiffs*
*and Class Counsel*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 14, 2019, I electronically filed the foregoing *Plaintiffs'*
*Unopposed Motion for Preliminary Approval of Attorneys' Fees, Expenses, and Incentive Award*
with the Clerk of the Court using the CM/ECF system. A copy of said document will be
electronically transmitted to all counsel of record.


/s/ Evan M. Meyers