**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH DUNN, HELEN IEHL, ALBERT PIETERSON, JOHN HASTINGS, WINDIE BISHOP, LISA BARNES, ANGELA GARR and MYESHA PRATHER, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action File No. 17-cv-00481 |
| v. | ) ) | |
| WELLS FARGO BANK, N.A., | ) ) | |
| Defendant. | ) | |

## OBJECTION TO PROPOSED CLASS SETTLEMENT

Adam L. Hoipkemier objects to final approval of Plaintiffs' proposed class settlement with Wells Fargo Bank, N.A. [Dkt. 80-1] and to Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Incentive Awards [Dkt. 95], as follows:

1.  Hoipkemier's current address is 1086 Byrnwyck Trail, Brookhaven, Georgia 30319.

2.  The last four digits of the cell phone number at which Hoipkemier recalls receiving Calls from Wells Fargo is 9535. The full number has been previously provided to counsel.

3.  Kevin Epps, Esq. of Epps Holloway DeLoach & Hoipkemier LLC and Andrew Spangler of Chico & Nunes, P.C. are counsel for Hoipkemier as to this case.

4.  Hoipkemier intends to appear at the fairness hearing personally or through counsel.

5.  Witnesses that may be called at the fairness hearing: counsel of record.

6.  Exhibits that may be introduced at the fairness hearing: the exhibits to the Declaration of Kevin Epps; documents produced by counsel or the parties before the hearing.

## INTRODUCTION

The proposed settlement is a paradigm sell-out of absent class members. It is the byproduct of a reverse auction in which "disarmed" counsel from McGuire Law P.C. agreed to a global settlement releasing an estimated 440,000 consumers' TCPA claims for pennies on the dollar. Faced with the prospect of defending multiple TCPA class actions focused on *individual* business lines, Wells Fargo recognized McGuire Law lacked leverage to credibly threaten class certification or trial, reversed long-standing policy, and exploited the weakness for a settlement releasing TCPA claims against *all* business lines.

The class was not adequately represented in the global settlement negotiations. McGuire Law only took class discovery into "fraud" alert" messages involving Wells Fargo deposit accounts, did not take merits discovery into whether Wells Fargo's equipment qualified as an ATDS, served only a single set of interrogatories and document requests, and did not take Wells Fargo's 30(b)(6) deposition before settling at mediation in December 2018.

McGuire Law was not prepared to litigate class certification and could not have properly assessed the settlement value of TCPA claims relating to Wells Fargo business lines on which it took no class discovery before mediation. Even the other Plaintiffs' counsel admit that *Prather* was "in its nascency" compared to the *Pieterson-Hasting*s litigation pending against Wells Fargo in California. Dkt. 95-3 at 17. This is textbook inadequate representation that compels denial of final approval. *E.g. Reynolds v. Beneficial Nat. Bank*, 260 F. Supp. 2d 680, 687-88 (N.D. Ill. 2003) (declining to approve settlement on remand and disqualifying class counsel because they attempted to settle case without first undertaking sufficient discovery to estimate class damages).

But there are deeper issues with adequacy. Plaintiffs' counsel from Lieff Cabraser Heimann & Berstein LLP and Girard Sharp LLP ("California counsel") strongly opposed the concept of a global settlement when they learned of it. As California counsel put it, "[t]he facts here align with

those in cases where courts have determined that a 'reverse auction' may have occurred." *Pieterson v. Wells Fargo Bank, N.A.*, Case 3:17-cv-02306-EDL, Dkt. 189 ("*Pieterson-Hastings*"). California counsel went even further to convince the California court not to stay the California litigation:

> Now, the -- what they're effectively asking is that we abandon this case and go litigate in the Northern District of Illinois, and if you think about the -- the negotiating parameters here, [Wells Fargo] wouldn't have settled [*Prather*] and created this drama if it weren't for economic reasons, and so the settlement that they still insist on keeping secret from us will reflect the fact that the *Plaintiffs in [Prather] were in no position to obtain class certification. That's just pure economics. And so we will be before Judge Shah, and this is what I think he needs to understand.*

*Id.,* Dkt. 219, Tr. 6:9-17 (emphasis added.)[1] California counsel were exactly right.

The expected value of trying a thoroughly litigated TCPA case to judgment against Wells Fargo or re-negotiating with the benefit of leverage from a certified litigation class and full class discovery available exceeds the value of the proposed global settlement.[2] Again, California counsel said so themselves before their economic incentives changed: "the fact that Wells Fargo apparently agreed to a global settlement across business lines is strong indicia that the settlement primarily benefits Wells Fargo rather than class members." *Id.*, Dkt. 201 at 2.

The worst part is that Plaintiffs' counsel have manipulated the facts to disguise McGuire Law's singular role in the settlement, as they seek a fee from absent class members together. Previously, the parties represented that Plaintiff Prather and Wells Fargo reached a global settlement of TCPA claims at the December 20, 2018 mediation, executed a term sheet, and were

---

[1] *See also Pieterson-Hastings*, *supra*, Dkt. 182, Tr. 13:16-18 (arguing expansion of the class through settlement as "an issue [that] ought to be fleshed out with Judge Shah."); *id.*, Tr. 14:8-10 ("We think it's wrong for them to game the system by going to another case that's less advanced to settle out from under us").

[2] According to Wells Fargo's discovery responses in *Pieterson-Hastings*, there are 236,975 customers with TCPA claims related to Wells Fargo's credit card business line with a potential value of $355,462,500. Epps Declaration, Ex. A.

well along the way with preparing a motion for approval of the settlement.[3] The California court

expressly relied on these representations to stay the California cases.[4] And yet, Plaintiffs' counsel

describe the outcome of the mediation to this Court much differently:

> After a full day of negotiations, the Parties made extensive progress
> toward reaching a resolution. The Parties thereafter continued their
> settlement negotiations with Wells, and in an effort to reach a global
> resolution worked with [California] counsel.

Dkt. 80-3 at ¶ 5 (Meyers Decl.). This was not an accidental shift. *See* Dkt. 80 at 7-8 ("After a full

day of negotiation, the Parties made extensive progress"); Dkt. 95 at 7 ("After a full day of arms-

length negotiations, the Parties reached a framework for settlement"). The implication that

mediation did not culminate in a settlement would cause a reader unfamiliar with the minutiae of

the California proceedings to mistakenly believe that Plaintiffs' counsel's collective knowledge

and efforts factored into the settlement negotiations.

Make no mistake, California counsel's change of heart about a global settlement and the

concerted effort to conceal that its genesis was the December mediation is "just pure economics."

*Pieterson*, *supra*, Dkt. 219, Tr. 6:9-17. The scenario where California counsel dropped their

objections to the reverse auction for a share of the fee is not just one reasonable inference from

these facts – it is the base case. Consider the counterfactual: if McGuire Law had *not* agreed to

split fees, California counsel would have objected to the settlement on these same grounds. They

---

[3] *E.g.* Dkt. 65 (representing to this Court that the parties "reached a settlement in principle"); *Pieterson-Hastings, supra*, Dkt. 190 at 1 (representing that the *Prather* settlement would "resolve the claims at issue in the *Prather*, *Pieterson*, *Hastings*, *Barnes*, and *Garr* cases."); *id.*, Dkt. 190-1 at ¶ 5 (Lonergan Decl.) ("[The December 20, 2018] mediation resulted in a settlement and a term sheet has been executed by the parties."); *id.*, Dkt. 211 at 24:1-22 (representing the "parties have exchanged drafts" of a preliminary approval motion as of February 6, 2019 hearing).

[4] *Id.*, Dkt. 218 at 2 ("The most relevant event for purposes of resolving this motion is that *on December 20, 2018, Defendant settled Prather*…during mediation with the Honorable James F. Holderman") (emphasis added); *see also id.* (finding "[t]he <u>Prather</u> parties have already agreed to the terms of a settlement, signed a settlement term sheet, and they face a March 15, 2019 deadline for filing the motion for preliminary approval.").

said so themselves.

This set of facts raises real concerns about whether Plaintiffs' counsel have served as faithful fiduciaries for the class. While further discovery and disclosures are needed, as detailed in Hoipkemier's motion to intervene, the conduct here may well rise to the level of disqualifying counsel from appointment as class counsel. *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011). Even based on the limited facts that Plaintiffs' counsel chose to publicly disclose so far, absent class members have not been adequately represented and the settlement consideration is not fair, reasonable or adequate. As a fiduciary for absent class members, the Court must deny final approval of the proposed settlement and deny the Plaintiffs' counsel's requested attorney fee and incentive awards, as detailed below.

## PROCEDURAL HISTORY

Plaintiffs' counsel have not been forthright with the Court regarding the relevant circumstances leading to the *Prather* settlement in their motion for preliminary approval of the settlement. A more accurate procedural history follows.

### A. This Action

Counsel from McGuire Law, P.C. filed this action on behalf of Plaintiff Prather on January 20, 2017. Dkt. 1. According to Plaintiffs' counsel, the class claims in *Prather* were limited to "Fraud Alert Calls." Dkt. 80 at 9. It is true that was the limited claim on which McGuire Law pursued class discovery, but the class definitions were pled more broadly. Dkt. 19 at 5. As pled, the class did not include customers that were contacted through use of an auto-dialer and McGuire Law did not take discovery on Wells Fargo's use of automated dialing technology.[5] Nevertheless,

---

[5] Dkt. 66, Tr. 6:1-3 ("with respect to the ATDS issue, plaintiffs are not conducting, and, frankly, have never attempted to conduct, discovery on the equipment use and whether it qualifies or not.").

the proposed settlement class includes customers contacted by auto-dialer. Dkt. 80-1 at 8.

### 1.    McGuire Law conducted limited pre-settlement discovery

The case was minimally litigated, despite the expansive settlement. Two substantive motions were filed: (1) a motion by Wells Fargo to stay the case pending FCC rule-making and (2) a motion by Plaintiff to compel Wells Fargo to produce sampling of class data regarding customers that received fraud alerts (which Wells Fargo agreed was discoverable).

As far as the record reflects, McGuire Law served **one** set of interrogatories and **one** set of document requests on Wells Fargo in June 2017. Dkt. 39-1; Dkt. 39-2. At the hearing on the motion to compel "fraud alert" class data a year later, McGuire Law represented that Wells Fargo's deposition was the only discovery left to accomplish once it received the data. D.E. 66, Tr. 3:6-18 ("we specifically wanted to delay taking the 30(b)(6) deposition of the defendant until after we got this" and "the only thing left is this class discovery and the deposition of the defendant."); Dkt. 56 ("the Parties now intend on completing the 30(b)(6) deposition(s) by the first week of October").

From a close reading of Plaintiffs' papers, it appears McGuire Law did not follow through with the deposition *prior* to the December mediation. Plaintiffs opaquely reference depositions without the context of dates or chronology with the settlement. *E.g.* Dkt. 80 at 12 ("Plaintiff Prather also proceeded with oral discovery and deposed Wells Fargo's corporate representatives"); Dkt. 95 at 5-6 ("It was after obtaining such substantial discovery, and in advance of Plaintiffs' deadline to file for class certification, that Plaintiff conducted a deposition of Wells Fargo's corporate representative…(McGuire Decl. ¶ 15)." However, the cited portion of the McGuire declaration refers to **confirmatory** – *i.e.* post-settlement – depositions of Wells Fargo. Dkt. 95-2 at ¶ 15 (McGuire Decl.) (chronological list of work completed by McGuire Law). Counsel do not testify, and there is no other evidence, that McGuire Law took Wells Fargo's deposition prior to the

settling. *E.g. id.*; Dkt. 80-3 at 3 (Meyers Decl.) ("my firm has engaged in extensive discovery in this case, including...**attending** multiple depositions").

### 2. McGuire Law focused class discovery on a "fraud alert" class of Wells Fargo deposit account holders

The pleadings and hearing related to McGuire Law's motion to compel class discovery establish the narrow scope of the discovery the firm pursued. Five days after the June 1, 2018 deadline to complete non-expert fact discovery, Dkt. 38, Plaintiff Prather moved to compel over what she described as "production of class discovery that it critical to...her ability to certify a class and meet all the requirements under Fed. R. Civ. P. 23." *Id.* at 2. With fact discovery closing, Wells Fargo had still "not provided any discovery identifying potential members of the classes." *Id.* at 5. The class data in question pertained fraud alert messages. *Id.* at 3.

At the hearing on Plaintiff Prather's motion to compel, the Court noted fact discovery had been extended to June 1, 2018 and was "a little surprise[] that this issue is coming up so late that the parties are still having a dispute over important class discovery." Dkt. 66, Tr. 2:12-16. Plaintiff Prather's counsel represented that "the only thing left is this class discovery issue and then the deposition of the defendant. Plaintiffs' deposition has been completed and we believe written discovery is complete." *Id.*, Tr. 3:18-32.

The Court inquired whether McGuire Law had "discovered what you need to know about the underlying technology used by the defense on the ATDS issue?" *Id.*, Tr. 4:21-23. Plaintiffs' counsel answered affirmatively. *Id.*, Tr. 4:24-5:3. Counsel for Wells Fargo then confirmed that "with respect to the ATDS issue, plaintiffs are not conducting, and, frankly, have never attempted to conduct, discovery on the equipment use and whether it qualifies or not." *Id.*, Tr. 6:1-3.

The motion for preliminary approval does not reference any other class data or information on the ATDS issue or *other Wells Fargo business lines* that Wells Fargo informally provided to

McGuire Law before mediation. Nor do the declarations submitted by counsel from McGuire Law describe any other Wells Fargo class data available to them at mediation. Dkt. 80-3 at 3. After reaching the mediated settlement, Plaintiffs' counsel conducted "confirmatory discovery" including depositions of Wells Fargo. Dkt. 95-2 at 8. Presumably, Plaintiffs' counsel will clarify in their final approval papers if McGuire Law had class data available for any other Wells Fargo business lines for use at the December mediation.

### 3.    The December 20, 2018 Settlement

Plaintiff Prather and Wells Fargo attended mediation on December 20, 2018, which culminated in an executed term sheet. Dkt. 65; *Pieterson-Hastings*, *supra*, Dkt. 189-1 at 4. According to Wells Fargo, the settlement was global. *Pieterson*, *supra*, Dkt. 190 at 2. The *Pieterson-Hastings* court relied on the parties' representations that they had settled *Prather* in the order staying *Pieterson-Hastings*. *Id.*, Dkt. 218 at 2.

As noted above, Plaintiffs' moving papers and a declaration from Plaintiffs' counsel describe the outcome of the December mediation differently:

> After a full day of negotiations, the Parties made extensive progress towards reaching a resolution. The Parties thereafter continued their settlement negotiations with Wells Fargo, and in an effort to reach a global resolution worked with counsel in the concurrently pending [California] actions.

Dkt. 80-3 at ¶ 5 (Declaration of Evan Meyers); *see also* Dkt. 80 at 7 ("After a full day of negotiations, the Parties made extensive progress."). There are three apparent misrepresentations of fact in this paragraph: (1) use of the defined term "Parties" to describe the mediation participants;[6] (2) the characterization that Plaintiff Prather and Wells Fargo only made "extensive

---

[6] "Parties" is defined to mean "the Wells Fargo Plaintiffs." Dkt. 80 at 7 fn. 1; Dkt. 80-1 at 6. Plaintiffs' counsel know how to correctly use capitalized and uncapitalized versions of "Parties" and did so in the preceding paragraph. Dkt. 80 at 7 ("On September 13, 2018, the parties in the *Pieterson-Hastings* matter participated in a mediation with mediator Hunter Hughes.").

progress" instead of reaching a settlement at mediation; and (3) the implication that the mediated settlement agreement was not global. *E.g. Pieterson-Hastings, supra*, Dkt. 190 at 1; *id.*, Dkt. 182; *id.*, Tr. 10:12-14; *id.*, Dkt. 218 at 2. Given these inconsistencies in material facts represented to this Court and the California district court, the Court should permit Hoipkemier to conduct discovery, or, if it does not, at least order the parties to produce relevant documents and make specific and complete disclosures about the December mediation and subsequent settlement negotiations before evaluating the fairness of the settlement to class members.

### 4. The post-December mediation settlement process

California counsel filed appearances in this case on December 27, 2018 and February 15, 2019. Dkt. 63; Dkt. 64; Dkt. 68. Plaintiff Prather and Wells Fargo filed a Stipulation and Notice of Settlement on January 10, 2019, informing the Court that they had "reached a settlement in principle" and requesting that the Court vacate the deadlines in the scheduling order. Dkt. 65.

On February 5, 2019, the Court entered an Order setting a deadline of March 15, 2019 for Plaintiff to file her motion for preliminary approval of the settlement. Dkt. 67. According to representations at a hearing in *Pieterson-Hastings* the next day, the "parties [had] exchanged drafts" of Ms. Prather's motion for preliminary approval of the settlement and Wells Fargo's counsel expected the motion to be filed "before March 15, probably substantially before," *i.e.* "in another couple of weeks, or end of the month." *Pieterson-Hastings*, *supra*, Dkt. 211 at 24:1-22.

For reasons that are unclear from the record, that deadline slipped. At the parties' request, the Court extended the deadline for Plaintiff Prather to move for preliminary approval twice, first to April 5, 2019 and then April 26, 2019. Dkt. 70; Dkt. 72. Each time, the parties represented that they did not anticipate the need for a further extension. Dkt. 69; Dkt. 71. On April 26, 2019, the parties requested a third "extension to complete the settlement papers due in part to the preparation

of an amended complaint to join additional parties." Dkt. 73. All of the Plaintiffs jointly moved for preliminary agreement of a settlement agreement with Wells Fargo on July 2, 2019. Dkt. 80.

These extensions may be partially related to the fact that "counsel for the Parties in the Illinois Litigation" and "counsel for the Parties in the California and Georgia Litigations" participated in a **third mediation** in "April 2019." Dkt. 95 at 7. This third mediation was not disclosed in Plaintiffs' preliminary approval papers. Dkt. 80 at 7 ("After more than two years of litigation across six class action lawsuits…including **two full-day mediations**"); *see also id.* ("the **two mediations**…") (emphasis added). Nor was the April 2019 mediation discussed in Plaintiffs' counsel's filings or declarations summarizing their work for the class, though they discussed the failed September 2018 mediation in *Pieterson-Hastings*. *E.g.* Dkt. 95-2 at 7; Dkt. 95-3 at 15-16; Dkt. 95-4 at 5-6; *compare* Dkt. 80 at 7 (discussing failed mediation in *Pieterson-Hastings*); Dkt. 95 at 7 (same); Dkt. 95-4 at ¶ 14 (referencing participation in "a mediation session held on September 13, 2018, before Hunter Hughes"); Dkt. 95-5 at ¶ 9 (describing September 13 mediation in *Pieterson-Hastings* "which ultimately proved to be unsuccessful").

### B.  The California and Georgia Actions

#### 1.    Case timeline

*Pieterson* was filed April 2017 and consolidated with *Hastings.* According to California counsel, Plaintiffs Pieterson and Hastings mediated unsuccessfully with Wells Fargo in September 2018 and had another mediation scheduled for January 2019 (which was cancelled once Wells Fargo settled *Prather*).

*Garr* was filed November 18, 2019 in the Northern District of California and never advanced beyond the pleading stage. It does not appear any discovery was taken in *Garr*. Ms. Garr did not oppose Wells Fargo's motion to stay, which was granted February 11, 2019. *See* Epps

Decl., Ex. L (Docket Sheet). *Barnes* was filed October 25, 2018 and also never advanced beyond the pleading stage. It does not appear any discovery was taken in *Barnes. See* Epps Decl., Ex. M (Docket Sheet). *Bishop* was filed April 27, 2017 in the Northern District of Georgia. The parties engaged in some written discovery, including Wells Fargo producing policy and procedure documents for its student loan, auto loan, home loan, and deposit account business lines. Ms. Bishop voluntarily dismissed her claims against Wells Fargo without prejudice on October 22, 2018. *See* Epps Decl., Ex. N (Docket Sheet).

### 2. California counsel's shifting position on the merits of a global settlement

California counsel first learned of the *Prather* settlement the same day it settled – December 20, 2018 – and received confirmation that the settlement encompassed the class claims in *Pieterson-Hastings* on December 27, 2018. *Pieterson-Hastings, supra*, Dkt. 189-1 at ¶¶ 20-21 (Girard Decl.). In response, California counsel moved to coordinate *Pieterson-Hastings* and *Prather. Id.*, Dkt. 189. Wells Fargo then filed a motion to stay *Pieterson-Hastings* pending this Court's consideration of the *Prather* settlement. In response to the motion to stay, California counsel pointed to "indicia of a reverse auction" and extensively detailed "Wells Fargo's unwavering position for years" that "its different debt collection business units operate independently, and that it is not practical to resolve TCPA claims against multiple business lines in one settlement." *Id.*, Dkt. 201 at 2; *Id.*, Dkt. 201-1 at ¶ 5 (Selbin Decl.). The Selbin declaration identified instances of Wells Fargo successfully taking the position to federal courts that its different business lines operate independently and provided examples of multiple TCPA cases that Wells Fargo insisted on resolving business line by business line. *Id.*, Dkt. 201-1 at ¶¶ 5-9.

On January 7, 2019, the *Pieterson-Hastings* court convened a status conference on "what's going on in this case and how that is affected by another case that has apparently settled."

*Pieterson-Hastings*, *supra*, Dkt. 182, Tr. 3:21-25. Even though Wells Fargo "[hadn't] formally notified the Court in the *Prather* case that they have settled," *Id.*, Dkt. 182, Tr. 9:10-11, the parties understood Wells Fargo had entered into a settlement in *Prather* that would "foreclose the claims" in *Pieterson-Hastings*. *Id.*, Dkt. 182, Tr. 4:7-11; *see also id.*, Dkt. 182, Tr. 10:12-14 (representation by counsel for Wells Fargo that the *Pieterson-Hastings* claims "will be mooted if the settlement is approved."); *id.*, Dkt. 182, Tr. 11:25-12:1 ("There's a mediation agreement and there's all of that.").

In California counsel's view, the *Prather* settlement was "an attempt to game the system." *Id.*, Dkt. 182, Tr. 13:9; *see also id.*, Dkt. 182, Tr. 14:8-10. Counsel and the California court engaged in a lengthy discussion regarding potential jurisdictional or other issues raised by the *Prather* settlement. California counsel's "understanding [was] they're going to file papers [in *Prather*] sometime in the middle of this month seeking preliminary approval." *Id.*, Dkt. 182, Tr. 10:5-7.

About a month later, on February 5, 2019, the parties had a second hearing regarding the impact of the *Prather* settlement. By this time, McGuire Law and Wells Fargo had "exchanged drafts" of a preliminary approval motion. *Id.*, Dkt. 211 at 24:1-22. The California judge began by informing the parties that she intended to get "in touch with the judge in Chicago, let[] him about this case, find[] out what his thoughts are." *Id.*, Dkt. 211, Tr. 4:16-18. The California court noted, "I think that the class definition that was proposed in that other case, which nobody really brought up with me, seems rather broad, although the actual allegations do seem to relate to -- not to what happened here, but to customers. **But the class definition, as I see it there, is very broad**." *Id.*, Dkt. 211, Tr. 5:21-6:1 (emphasis added). In response, California counsel represented that "the *Prather* class encompasses this one...[i]t's a class that according to the way Wells has defended this case and other cases could never be certified for litigation purposes that they've agreed to certify for settlement purposes." *Id.*, Dkt. 211, Tr. 7:20-23.

At that point, California counsel suggested that the parties in *Prather* "can carve this case out" and suggested that if they did not, California counsel would object to the *Prather* settlement based on (1) "the selection of counsel in a case that is less advanced" (2) representing a "class they couldn't certify" (3) because "they haven't developed the record." *Id.*, Dkt. 211, Tr. 8:24-10:12. California counsel also made the important point that the *Prather* class as pled did not subsume the *Pieterson-Hastings* class; the parties in this case expanded the proposed class in the settlement. *Id.*, Dkt. 211, Tr. 12:21-14:10. As evidence, California counsel pointed back to the representation by Wells Fargo during the hearing on the motion to compel in this Court that "they didn't even try, the Plaintiffs' lawyers, to establish that an auto-dialer was used." *Id.*, Dkt. 211, Tr. 14:3-6. California counsel viewed the expansion of the class through settlement as "an issue [that] ought to be fleshed out with Judge Shah." *Id.*, Dkt. 211, Tr. 13:16-18.

### 3. Plaintiffs' deficient Rule 23(e)(3) disclosures.

As discussed above, McGuire Law and Wells Fargo executed a settlement term sheet on or around December 20, 2018 commemorating a global settlement resolving all pending TCPA class actions. *Piederson*, *supra*, Dkt. 190 at 1. Subsequently, Plaintiffs' counsel attest that McGuire Law "coordinat[ed] and conduct[ed] extensive discussions with co-counsel who brought actions against Wells Fargo in California and Georgia egarding consolidation and global resolution of all litigation." Dkt. 95-2 at 8. Rule 23(e)(3) requires the disclosure of the terms of the agreements reached among Plaintiffs and their counsel to consolidate the cases and share in the fees generated by the *Prather* settlement. *See* Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.").

Plaintiffs have not done so. Instead, Plaintiffs misrepresent that they have "identified all agreements made in connection with the Settlement, which are solely limited to the terms

contained in the Settlement Agreement filed herewith as Exhibit A." Dkt. 80 at 19. That is not true. At a minimum, the "extensive discussions" among Plaintiffs' counsel resulted in agreements that the California plaintiffs and other clients of Plaintiffs' counsel would be added as plaintiffs to this action and California counsel would participate in the fee application related to the *Prather* settlement instead.

The terms of *those* agreements are not "contained in the Settlement Agreement" and must be disclosed. Under the circumstances, it is unlikely that counsel will disclose a quid pro quo. This is why the Court should order full disclosure, *plus* production of documents responsive to Hoipkemier's proposed subpoenas or documents the Court finds relevant on its own motion.

## LEGAL ARGUMENT

### A. The Heightened Final Approval Standard For Settlement-Only Classes

The district court may only approve a class action settlement if it finds the settlement to "be fair, adequate, and reasonable," Fed. R. Civ. P. 23(e)(2), *and* meets the requirements of Federal Rule 23(a) and (b). *Smith v. Sprint Communs. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004). The recent amendment to Rule 23 requires the district court to consider if: (A) the class representatives and Plaintiffs' counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. *Id.*

The Seventh Circuit has characterized the district court's role as "akin to the high duty of care that the law requires of fiduciaries." *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652-53 (7th Cir. 2006). Discharging this duty "requires district judges to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions, due to the risk that attorneys for the class will place their pecuniary self-interest ahead of that of the class." *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 283 (7th Cir. 2017); *see also Amchem*, 521 U.S. 591, 620 (1997) (requiring the district court to exercise "[u]ndiluted, even heightened, attention" with settlement-only classes).

## B. The Court Should Deny Final Approval of the Proposed Global Settlement

The Court should decline final approval of the proposed global settlement because it fails to satisfy the Rule 23(e)(2) factors. First, Plaintiffs' counsel are not adequate representatives of the proposed settlement-only class. Wells Fargo choose to settle globally with counsel from McGuire Law who had not worked-up a global class for class certification, settlement, or trial. This is per se inadequate representation that *independently* requires denial of final approval. *Reynolds v. Ben. Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("[Counsel's] representation of the class was almost certainly inadequate, an independent reason for disapproving a settlement."); *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1125 n.24 (7th Cir. 1979) ("No one can tell whether a compromise found to be 'fair' might not have been 'fairer' had the negotiating party possessed better information…"); *see also Smith v. Sprint Commc'n. Co.*, 387 F.3d 612, 614 (7th Cir. 2004) (settlement cannot be approved if representative is inadequate). In fact, these were the circumstances, along with Wells Fargo's abrupt reversal of its policy regarding the resolution of TCPA class actions, that California counsel wanted to be sure this Court understood was evidence

of a reverse auction.[7] More than that, Plaintiffs' counsel's less than candid presentation to the Court of this background and the other circumstances of the settlement reflects a disqualifying lack of candor. *Creative Montessori*, *supra*, 662 F.3d 913, 917.

Second, Plaintiffs' counsel do not attempt show that the relief provided by the global settlement is adequate by "quantify[ing] the net expected value of continued litigation to the class."[8] Nor could they do so in light of California counsel's previous representations to the California court. Although Plaintiffs' counsel do not provide the information needed for the Court to undertake this analysis, the expected value of continued litigation surely exceeds the most conservative estimate of the settlement recovery under *Reynolds*.

Third, Plaintiffs' counsel fail to disclose their agreements related to the consolidation of the California cases and their joint fee application, in violation of Rule 23(e)(3). This precludes the Court from weighing the impact of those agreements on the fairness of the settlement as required by Rule 23(e)(2)(c)(iv). In conjunction with the other irregular circumstances surrounding the settlement, including a third mediation in April 2019 (the details of which have not been disclosed to the Court), the importance of the Rule 23(e)(3) violation is substantially elevated.

## 1. McGuire Law did not adequately represent the class in negotiating a global settlement at the December mediation

The first two factors under Rule 23(e)(2) "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement. Attention to these matters is an important foundation for scrutinizing the substance of the proposed settlement." Fed. R. Civ. P. 23(3) (A) &

---

[7] *Pieterson-Hastings*, *supra*, Dkt. 219, Tr. 6:9-17 ("Plaintiffs in [Prather] were in no position to obtain class certification. That's just pure economics. And so we will be before Judge Shah, and this is what I think he needs to understand.").

[8] *Reynolds*, *supra*, 288 F.3d at 284-85 ("in the suspicious circumstances that we have recited the judge should have made a greater effort (he made none) to quantify the net expected value of continued litigation to the class").

(B) Advisory Committee's Note. Plaintiffs' counsel suggest their representation of the class was adequate because the "negotiations that led to the Settlement followed an extended period of contentious discovery that has taken place in the *Prather* Action, *Pieterson-Hastings* Action, and *Bishop* Action," and this discovery "provided Plaintiffs' counsel with a comprehensive understanding of the calling practices in *every* Wells Fargo line of business." Dkt. 80 at 15.

From this, Plaintiffs' counsel surmise that "Plaintiffs and their counsel had sufficient information about the facts of the allegedly unauthorized calls at issue to fairly weigh their prospects of success at trial versus the negotiated outcome provided by the Settlement." *Id.* at 16. A careful examination of the record in the context of the information available to counsel from McGuire Law *as of December 20, 2018* leads to precisely the opposite conclusion.

> *i. Plaintiffs' counsel admit this case "was in its nascency" when settlement was reached*

In considering the negotiations leading up to a class settlement, the proper focus is on counsel who actually negotiated the settlement. *In re Gen. Motors Engine Interchange Litig.*, 594 F.2d 1106, 1126 (7th Cir. 1979) (key question is who negotiated the agreement). In this case, that was Plaintiff Prather's attorneys from McGuire Law. *Cf. Eubank v. Pella Corp.*, 753 F.3d 718, 719 (7th Cir. 2014) (noting that class counsel "as a practical matter control the litigation by the class").

McGuire Law did not adequately the represent the proposed class because it did not have sufficient information available to adequately inform the global settlement that it agreed to at mediation on December 20, 2018. McGuire Law apparently only served one set of interrogatories and one set of document requests. Dkt. 39-1; Dkt. 39-2. McGuire Law indicated the importance of Wells Fargo's 30(b)(6) deposition to the Court but did not follow through before settling. *See* Dkt. 95-2 at ¶ 15 (chronological list of work completed by McGuire Law attorneys only references depositions of Wells Fargo in the context of "confirmatory discovery").

McGuire Law's pre-mediation class discovery efforts were limited to data regarding "fraud alerts" on deposit accounts. Nothing in the record indicates that McGuire Law conducted *any* other class discovery regarding Wells Fargo's numerous other business lines before agreeing to settle those claims. McGuire Law attorney describe their discovery efforts in the vague and general terms in their declarations.[9] They do not explain what class discovery they took prior to mediation. The record reflects that the discovery they conducted was insufficient to inform the settlement of a global TCPA class covering Wells Fargo's sweeping business interests.

Because McGuire Law was not in position to litigate the class' claims through class certification and trial or weigh the risks of litigation against the benefits of settlement, the firm was inadequate to represent the class' interests during settlement negotiations. *See Reynolds*, 288 F.3d at 282-84 (finding that lawyer's representation of class was "almost certainly inadequate" in part because he agreed, with little due diligence, to a settlement that would cut off a separate lawsuit that was much further along in discovery), and its remand, 260 F. Supp. 2d 680, 694-95 (N.D. Ill. 2003) (definitively holding counsel inadequate because they attempted to settle case without first undertaking sufficient discovery to estimate class damages); *Smith*, 387 F.3d at 614 (rejecting settlement because attorneys for class had negotiated a settlement in "disarmed" state since they represented a national class that could never be certified).

Plaintiffs' counsel can hardly dispute that McGuire Law did not litigate the case to the degree necessary to protect the interests of class members in a global settlement when counsel from Lieff Cabreser admit as much under oath. Dkt. 95-3 at 17 (Declaration of Daniel Hutchinson).

---

[9] *E.g.* Dkt. 80-3 at 2-3 ("Since the filing of the Prather action, my firm has engaged in extensive discovery in this case, including exchanging document requests, interrogatories and requests for admission; reviewing thousands of pages of documents produced by Defendant Wells Fargo; engaging in expert discovery; and attending multiple depositions…"); Dkt. 95-2 at 7 ("Among other things, the attorneys of McGuire Law:…propounded discovery requests on Wells Fargo").

A case of this scale that is "in its nascency" is not one that should be settled. The Court should deny final approval based on the undisputed evidence that absent class members were not adequately represented.

> ### ii. Discovery in California or post-settlement "confirmatory" discovery does not rectify the uninformed settlement decision.

Hoipkemier expects Plaintiffs' counsel to argue that even if the settlement was uninformed, subsequent disclosures by Wells Fargo in "confirmatory" discovery revealed it to be fair. That is not a basis to approve a settlement negotiated by counsel with inadequate information. *In re General Motors Corp.*, *supra*, 594 F.2d 1106, 1125 n.24 ("No one can tell whether a compromise found to be 'fair' might not have been 'fairer' had the negotiating party possessed better information"). It is also another reason that additional discovery and disclosures are needed about the settlement negotiations. "As a practical matter, confirmatory discovery is often used to negate the impression that a class action was quickly settled with little discovery or investigation to generate the substantial legal fees often awarded in class actions." *Alves v. Main*, No. 01-789 (DMC), 2012 U.S. Dist. LEXIS 84761, at *15 (D.N.J. June 19, 2012. The concern in *Alves* is relevant here. There is no evidence that Plaintiffs successfully leveraged any material concessions from Wells Fargo through the use of confirmatory discovery.

Similarly, discovery efforts in the California cases are irrelevant to the Court's analysis of the first two factors under Rule 23(e)(2). California counsel were not involved in reaching the settlement.  McGuire Law unilaterally negotiated the proposed global settlement with Wells Fargo. Prior to the *Prather* mediation, California counsel and McGuire Law were not sharing information or working together; as noted, California counsel opposed the concept of a global settlement when they learned of it. Thus, the question is whether McGuire Law attorneys had a "comprehensive

understanding of the calling practices in *every* Wells Fargo line of business" when they agreed to settle at the December mediation. They did not.

Moreover, California counsel had only taken discovery into Wells Fargo's credit card line of business in *Pieterson-Hastings*. California counsel also took some discovery in *Bishop*; it is not clear how much class data they received. Discovery in the *Garr* (home loan calls) and *Barnes* actions (auto loan calls) had not begun when the case settled. Absent informal discovery that Plaintiffs' counsel have not shared with the Court, Plaintiffs' counsel were in the dark about the value and merits of many of the proposed class' claims well past the point that the case settled.

### iii. Plaintiffs' counsels' failure to make full disclosure under Rule 23(e)(3) further calls their adequacy into question

Plaintiffs' counsel fail to comply with the requirement of amended Rule 23 that "the parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Plaintiffs' counsel addressed this obligation in a single sentence in the preliminary approval motion, stating that the agreements "are solely limited to the terms contained in the Settlement Agreement filed herewith as Exhibit A." Dkt. 80 at 19.

Plaintiffs' counsel fail to disclose the agreements reached between Plaintiffs (or their counsel) that led to the "consolidation" of the California cases with *Prather*. According to the declaration of Eugene McGuire, attorneys from McGuire Law engaged in "extensive discussions with co-counsel who brought actions against Wells Fargo in California and Georgia regarding consolidation and global resolution of all litigation. Dkt. 95-2 at 6; *see also* Girard Decl., Dkt. 80-2 at 5 ("Following the Court's order, *Pieterson* Plaintiffs' counsel met in person with counsel in *Prather* and worked with them to reach a global settlement"). While this testimony is not necessarily consistent with Wells Fargo's prior representations that the settlement agreed to by McGuire Law before California counsel became involved, it does lead to the conclusion that *some*

agreement(s) were reached between McGuire Law, Girard Sharp, and Lieff Cabraser (and potentially Wells Fargo). Consolidation of six nationwide class actions does not occur without complex agreements and is a distinct issue from the terms of the settlement with Wells Fargo.

In other words, the settlement agreement does not itself reflect the terms under which (1) Plaintiffs' counsel and/or Wells Fargo agreed to coordinate with the California litigation with this case; (2) the California plaintiffs were permitted to participate in the settlement agreement reached by Plaintiff Prather and Wells Fargo at mediation on December 20, 2018 and seek incentive awards; (3) California counsel were permitted to jointly participate in the fee application; or (4) any agreement to divide or allocate a potential fee award to Plaintiffs' counsel or any them.

These undisclosed agreements are particularly relevant under the circumstances here, where California counsel objected in the strongest terms to the concept of a global settlement, changed their mind for unexplained reasons, and would be entitled to a multi-million dollar fee if the proposed settlement is approved. The circumstances suggest that McGuire Law may have bought peace with California counsel by agreeing to split fees, which would be an egregious breach of duty. The failure to fully disclose the agreements among counsel, in violation of Rule 23(e)(3) further underscores Plaintiffs' counsel's inadequacy to represent the proposed class.

### 2. The settlement consideration is presumptively inadequate given the indicia of a reverse auction and Plaintiffs' failure to provide damages data

The proposed settlement has the hallmarks of a "reverse auction": (1) uninformed counsel that were not in position to certify a litigation class; (2) expansion of the class through a settlement-only class; and (3) a more advanced proceeding pending in another court.[10] As noted above,

---

[10] *E.g Reynolds*, *supra*, 288 F.3d 277, 282 (defining "reverse auction" as "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant").

California counsel believed it essential that "Judge Shah needs to understand" that Plaintiff Prather "was in no position to obtain class certification" and the global settlement was "just pure economics," as it "primarily benefits Wells Fargo rather than class members."[11] Any resolutions of those concerns were not mentioned in Plaintiffs' papers.

The advisory notes to Rule 23(3) state, "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." Fed. R. Civ. P. 23(3) (C) & (D) Advisory Committee's Note. Similarly, the Seventh Circuit has expressly directed district courts to "quantify the net expected value of continued litigation to the class." *Reynolds*, *supra*, 288 F.3d at 284-85. This involves "estimating the range of possible outcomes and ascribing a probability to each point on the range" and then discounting those outcomes to the present using a reasonable interest rate. *Id.*; *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (the court should "insist that the parties present evidence that would enable possible outcomes to be estimated, so that the court can at least come up with a ballpark valuation."). Plaintiffs' counsel are experienced class action lawyers that know these rules.

The Court might reasonably have expected Plaintiffs' counsel to go out of their way to justify the fairness of a global settlement, considering their representations to the California district court against it. Any yet, Plaintiffs do not provide even an estimated value of the class claims. Absent this basic information, the Court should presume the low consideration offered in settlement (on a percentage basis) is inadequate compared to the value of continuing to litigate.

---

[11] *Pieterson-Hastings, supra*, Dkt. 201 at 2; *id.*, Dkt. 219, Tr. 6:9-17; *id.*, Dkt. 182, Tr. 13:16-18; *Id.*, Dkt. 211, Tr. 8:24-10:12

What can be gathered from Plaintiffs' disclosures is that the settlement consideration is somewhere well below 3% and 8% of the potential recovery. That is plainly not an amount that the Court could find to be objectively fair to the class, so as to justify final approval regardless of the deficiencies in representation identified above.

### C. The Court should deny or reduce the requested fee and incentive awards

#### 1. The requested fee is excessive under the circumstances of the case

If the Court grants final approval, it should deny Plaintiffs' counsel's request for a fee under the equitable common fund doctrine or award a reduced fee because the quality of performance, quantity of work, and stakes of the case *as litigated* do not justify the nearly $6 million fee requested by Plaintiffs' counsel. *Synthroid I*, 264 F.3d at 721 (the "market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case."). The standard fee analysis is complicated by the improper conduct that may have occurred related to Plaintiffs' counsel's agreement to split the fee.

First, if McGuire Law agreed to share fees with California counsel to avoid California counsel objecting to the settlement as a reverse auction, that is a serious breach of fiduciary duty. Class counsel cannot sacrifice the interests of absent class members for their own benefit, and then receive a fee under the equitable common fund doctrine. In the event the Court finds a breach of duty, the Court has discretion to determine the extent to which fees should be forfeited. *In re Taxman Clothing Co.*, 49 F.3d 310, 316 (7th Cir. 1995) ("Fees obtained as a consequence of a breach of fiduciary obligation, even a nonwillful breach…may be retained only if, by analogy to claims for quantum meruit, the fiduciary, notwithstanding his breach, conferred a benefit on his principal."); *Johnson v. Gudmundsson*, 35 F.3d 1104, 1116 (7th Cir. 1994) (citing to Illinois law

that "[w]hen one breaches a fiduciary duty to a principal the appropriate remedy is within the equitable discretion of the court.").

Second, no upward risk adjustment is warranted to the fee award the Court determines is reasonable under these facts. Plaintiffs' counsel elected to settle before obtaining a ruling on class certification and did not face any dispositive motions. There is no evidence this case was riskier than any other TCPA case. *Compare Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 797 (7th Cir. 2018) (noting reliance on theory of vicarious liability created additional legal and factual complications). It seems McGuire Law always intended to settle prior to class certification since it did not prepare the case to litigate class certification.

Fourth, Plaintiffs' counsel collective lodestar is overstated. Plaintiffs' counsel include substantial time from other litigation and post-settlement work that did not benefit the class. Counsel have included work from multiple different class actions around the country without breaking their time records out by case to allow the Court to evaluate the extent to which work in other cases "benefitted the fund." *E.g. Chem. Bank v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) ("It is well established that an award of attorneys' fees from a common fund depends on whether the attorneys' 'specific services benefited the fund - whether they tended to create, increase, protect or preserve the fund.'"). Like in *Chem. Bank*, the work in the California cases "was not waged on behalf of the entire Class, and entire Class would not have shared all potentially attainable benefits…Thus, while the cases may have been 'related,' the relationship was attenuated." *Id.* at 1308. The Court should order Plaintiffs' counsel to provide a breakdown of their lodestar by case or reduce the fee award to account for the presence of duplicative work.

Along the same lines, the limited history of the settlement negotiations available in the public record strong suggests that Plaintiffs' counsel built much of their lodestar after the case was

settled through their "extensive" internal discussions hashing out their own agreement to include California counsel in the *Prather* settlement. Dkt. 95-2 at ¶ 15. These negotiations to protect their own financial interests did not benefit the class and should not be on the class' dime. The same is true with respect to "confirmatory discovery." *E.g. In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 235 (S.D.N.Y. 2005) ("Lead Counsel have not satisfied their burden of persuading me that confirmatory discovery in this case was not make-work."). The Court should require Plaintiffs' counsel to resubmit their lodestar after excising the time spent on the "extensive discussions" regarding consolidation and "confirmatory discovery."

**2. The requested $15,000 incentive awards are excessive.**

Plaintiffs' counsel request $15,000 incentive awards for each the eight named plaintiffs – 3,750 times the average class member payout of $40. To determine if an incentive award is warranted, a district court evaluates "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). The requested incentive awards are out of line with the named Plaintiffs' actions, the benefit conferred on the class, and the actual time and effort expended by the named plaintiffs.

Two of the named plaintiffs (Joseph Dunn and Helen Iehl) do not appear as parties in any previous TCPA class action against Wells Fargo based on a PACER search of their names. Mr. Dunn and Ms. Iehl did not make any contribution to the recovery of the common fund; the settlement would have been (and, in fact, was) obtained without them. Mr. Dunn or Ms. Iehl have not earned incentive awards.

Ms. Garr and Ms. Barnes filed putative TCPA class actions against Wells Fargo in the Northern District of California in the two months preceding the *Prather* settlement. Both cases were stayed shorty after filing and did not advance beyond the pleading stage. Nothing that Ms.

Garr or Ms. Barr did pre-suit conferred a tangible benefit on this class or could remotely justify a $15,000 award. Ms. Bishop's case in the Northern District of Georgia advanced slightly further – the parties exchanged written discovery – but Ms. Bishop voluntarily dismissed her claims without any recovery for the class and did not re-file. The voluntary dismissal did not benefit the class. None of these named Plaintiffs did anything to earn a service award; they were just in the right place at the right time when California counsel negotiated a share of the settlement agreement.

Hoipkemier takes no position on whether Plaintiff Prather, Plaintiff Pieterson, and Plaintiff Hastings might have earned a *reasonable* incentive award if the Court finds no impropriety with the proposed settlement is approved. In all events, it would be unfair for the named plaintiffs to receive $15,000 when absent class members would recover a tiny fraction of their damages under the proposed settlement. *E.g. Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 463 (E.D. Cal. 2013) (reducing incentive award given disparity between the award to class members when there was "no evidence that plaintiff spent more time assisting counsel than occurs in the average case."); *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 834 (7th Cir. 2018).

## CONCLUSION

Final approval should be denied, and the preliminary approval order vacated, because it appears that Plaintiffs' counsel elevated their own financial interests over those of absent class members and because the settlement consideration is inadequate compared to the expected value of continued litigation. If the Court approves the settlement over these objections, it should decline to award the requested fee or incentive awards based on the facts detailed herein.

This 11th day of November, 2019.

Respectfully submitted,

/s/ Adam L. Hoipkemier                         /s/ Kevin E. Epps

Adam L. Hoipkemier                                    Kevin E. Epps

Georgia Bar No. 755811

Epps  Holloway DeLoach &
Hoipkemier, LLC

1220 Langford Drive

Building 200-101

Watkinsville, GA 30677

Tel: (706) 508-4000

kevin@ehdhlaw.com

(admitted *pro hac vice*)

Andrew M. Spangler, Jr.

Illinois Bar No. 6210136

CHICO & NUNES, P.C.

333 West Wacker Drive, Suite 1420

Chicago, Illinois 60606

Tel:  (312) 463-1000

Fax:  (312) 463-1001

aspangler@chiconunes.com

*Counsel for Adam Hoipkemier*

## CERTIFICATE OF SERVICE

I certify that, on this date, I caused the foregoing document to be filed with the CM/ECF system for the United States District Court for the Northern District of Illinois which will deliver electronic service of process to counsel of record.

Dated: November 11, 2019.                   Respectfully submitted,

/s/ Kevin E. Epps
Kevin E. Epps
Georgia Bar No. 755811
Epps  Holloway DeLoach &
Hoipkemier, LLC
1220 Langford Drive
Building 200-101
Watkinsville, GA 30677
kevin@ehdhlaw.com
P: (706) 508-4000
(admitted *pro hac vice*)

*Counsel for Adam Hoipkemier*