Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

JOSEPH DUNN, HELEN IEHL, ALBERT )
PIETERSON, JOHN HASTINGS, WINDIE )
BISHOP, LISA BARNES, ANGELA GARR, )     No. 17-cv-00481
and MYESHA PRATHER individually and on )
behalf of a class of similarly situated individuals, )
)
               *Plaintiffs*, )
)     Hon. Manish S. Shah
          v. )
)
WELLS FARGO BANK, N.A., )
)
               *Defendant*. )

## DECLARATION OF EVAN M. MEYERS

I, Evan M. Meyers, hereby aver, pursuant to 28 U.S.C. § 1746, that I am fully competent to make this Declaration, that I have personal knowledge of all matters set forth herein unless otherwise indicated, and that I would testify to all such matters if called as a witness in this matter.

1.     I am an adult over the age of 18 and a resident of the state of Illinois. I am an attorney with the law firm McGuire Law, P.C., I am licensed to practice law in the state of Illinois, and, along with my colleagues, Myles McGuire and Eugene Turin, and co-counsel, I have been preliminarily appointed as Class Counsel, representing Plaintiffs and the Class in this matter. I am fully competent to make this Declaration and make this Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement being submitted to this Court.

2.     McGuire Law, P.C. is a litigation firm based in Chicago, Illinois that focuses on class action litigation, representing clients in state and national class actions in both state and federal trial and appellate courts throughout the country.

3.     I and the other attorneys of McGuire Law have regularly engaged in complex litigation on behalf of consumers and have extensive experience in class action lawsuits similar in

size and complexity to the instant case. McGuire Law attorneys have been appointed as class counsel in numerous complex consumer class actions, including many similar class actions involving violations of the TCPA, in state and federal courts across the country. *See, e.g*, *McFerren et al., v. AT&T Mobility, LLC* (Sup. Ct. Fulton County, Ga. 2008); *Gray et al. v. Mobile Messenger Americas, Inc. et al.* (S.D. Fla. 2008); *Gresham et al. v. Keppler & Associates, LLC et al.* (Sup. Ct. Los Angeles County, Cal. 2008); *Sims et al. v. Cellco Partnership et al.* (N.D. Cal. 2009); *Van Dyke et al. v. Media Breakaway, LLC et al.* (S.D. Fla. 2009); *Paluzzi, et al. v. mBlox, Inc., et al*. (Cir. Ct. Cook County, Ill. 2009); *Valdez et al. v. Sprint Nextel Corp*. (N.D. Cal. 2009); *Ryan et al. v. Snackable Media, LLC* (Cir. Ct. Cook County, Ill. 2011); *Parone et al. v. m-Qube, Inc. et al.* (Cir. Ct. Cook County, Ill. 2010); *Williams et al. v. Motricity, Inc. et al.* (Cir. Ct. Cook County, Ill. 2011); *Walker et al. v. OpenMarket, Inc. et al.* (Cir. Ct. Cook County, Ill. 2011); *Schulken at al. v. Washington Mutual Bank, et al.* (N.D. Cal. 2011); *In re Citibank HELOC Reduction Litigation* (N.D. Cal 2012); *Murray et al. v. Bill Me Later, Inc.* (N.D. Ill. 2014); *Valladares v. Blackboard, Inc*., (Cir. Ct. Cook County, Ill. 2016); *Manouchehri, et al. v. Styles for Less, Inc., et al.* (S.D. Cal. 2016); *Hooker et al. v. Sirius XM Radio, Inc.* (E.D. Va. 2017); *Truong v. Peak Campus Management, Inc.* (Cir. Ct. Cook County, Ill. 2017); *Zeidel v. A&M (2015) LLC*, (N.D. Ill. 2017); *Vergara et al. v. Uber Technologies, Inc.* (N.D. Ill. 2018); *Oliver et al v. The Men's Wearhouse*, (C.D. Cal. 2019); *Zepeda et al v. International Hotels Group, Inc. et. al.* (Cir. Ct. Cook County, Ill 2019); *Kovach et al v. Compass Bank* (Cir. Ct. Jefferson County, AL 2019); *Svagdis et al v. Alro Steel Corp.* (Cir. Ct. Cook County, Ill. 2019); *Nelson et al v. Nissan North America, Inc.* (M.D. Tenn. 2019); *Zhirovetskiy v. Zayo Group, LLC,* (Cir. Ct. Cook County, Ill. 2019); *McGee v. LSC Communications, Inc. et al.*, (Cir. Ct. Cook Cunty, Ill. 2019).

4. The attorneys of McGuire Law have intimate knowledge of the law in the field of telecommunications and cellular telephony. Recognized as pioneers in the field of consumer class actions involving such claims brought under the TCPA, McGuire Law attorneys have served as counsel of record for groundbreaking TCPA rulings involving cellular telephony obtained at the federal district and appellate court levels, as well as at the U.S. Supreme Court. *See, e.g., Shen et al. v. Distributive Networks, Inc.* (N.D. Ill. 2007); *Weinstein et al. v. The Timberland Co., et al.* (N.D. Ill. 2008); *Satterfield et al. v. Simon & Schuster* (N.D. Cal. 2010); *Espinal et al. v. Burger King Corporation et al.* (S.D. Fla. 2010); *Lozano v. Twentieth Century Fox* (N.D. Ill. 2011); *Kramer et al. v. Autobytel et al.* (N.D. Cal. 2011); *Rojas et al. v. Career Education Co.* (N.D. Ill. 2012); *Ellison et al. v. Steven Madden, Ltd.* (C.D. Cal. 2013); *Robles et al. v. Lucky Brand Dungarees, Inc. et al.* (N.D. Cal. 2013); *Pimental et al. v. Google, Inc. et al.* (N.D. Cal. 2013); *In re Jiffy Lube Spam Text Litigation* (S.D. Cal. 2013); *Lee et al. v. Stonebridge Life Ins. Co. et al.* (N.D. Cal. 2013); *Valladares et al v. Blackboard, Inc.* (N.D. Ill. 2015); *Campbell-Ewald Co. v. Jose Gomez*, 136 S. Ct. 663 (2016); *Hooker et al. v. Sirius XM Radio, Inc.* (E.D. Va. 2017); *Vergara et al. v. Uber Technologies, Inc.* (N.D. Ill. 2018).

5. I received my B.A. from the University of Michigan, and I graduated from the University of Illinois College of Law in 2002. In addition to my class action experience, where I have been appointed as class counsel in numerous TCPA class action settlements, including in multiple TCPA class actions in the Northern District of Illinois, I have extensive experience in complex commercial litigation and have regularly litigated cases in state and federal trial and appellate courts across the nation, including in the U.S. District Court for the Northern District of Illinois, the Ninth Circuit Court of Appeals, the Judicial Panel on Multidistrict Litigation, and the U.S. Supreme Court. *See, e.g., Campbell-Ewald Co. v. Jose Gomez*, 136 S. Ct. 663 (2016).

6.      Myles McGuire is the Managing Partner of McGuire Law. Mr. McGuire has been recognized as a leader in class actions and technology law by his peers and courts around the country and has been appointed class counsel in numerous state and federal class actions, including many TCPA class actions. Mr. McGuire has successfully prosecuted claims on behalf of his clients in numerous trial and appellate courts at both the state and federal levels throughout the country involving consumer fraud, unfair competition, invasion of privacy, false advertising and breach of contract, among others. Mr. McGuire is a graduate of Marquette University and Marquette University Law School and is admitted to practice in the Northern District of Illinois, the U.S. Supreme Court, and in other federal courts around the country. Prior to founding McGuire Law, P.C. in 2013, Mr. McGuire was a managing member of Edelson McGuire, LLC.

7.      My colleague Eugene Y. Turin also has extensive experience in litigating class action cases in state and federal courts, and has been significantly involved, if not the primary lead attorney, in dozens of class action suits across the country, including many that are currently pending in the Northern District of Illinois. Mr. Turin received his B.A. from Loyola University Chicago, graduated from the Loyola University Chicago School of Law in 2014 and has been appointed as class counsel in numerous TCPA class actions in the Northern District of Illinois and in courts throughout the country.

8.      My firm commenced this litigation in January 2017 on behalf of Plaintiff Myesha Prather alleging that Plaintiff Prather received unauthorized automated text messages and telephone calls on her cellular telephone regarding activity on a deposit account associated with someone entirely unrelated.

9.      Since the filing of the Prather action, my firm has engaged in extensive discovery in this case, including exchanging document requests, interrogatories and requests for admission,

as well as attending multiple depositions. Specifically, prior to the mediation that occurred on December 20, 2018, my firm received thousands of pages of documents regarding Wells Fargo's dialing practices, the equipment used by Wells Fargo to place text message and voice calls for servicing of deposit accounts, and Wells Fargo's procedures to avoiding calls to misdirected phone numbers. On July 16, 2018, Judge Shah entered an Order granting Plaintiff Prather's motion to compel production of class discovery relevant to identifying other individuals who had received automated calls and text messages that were alleged to have been unauthorized. As a result of my firm's efforts in compelling production of such documents, we received detailed call records for misdirected calls placed by Wells Fargo regarding servicing of deposit accounts that we then provided to our expert for analysis.

10.     My firm also conducted a 30(b)(6) deposition of Wells Fargo's corporate representative on October 2, 2018 regarding Wells Fargo's calling practices, dialer equipment, and identification of misdirected phone calls.

11.     It was as a result of Plaintiff Prather's discovery efforts, the then-upcoming filing of Plaintiff's motion for class certification, as well as, importantly, the efforts taken by co-Class Counsel in *Pieterson v. Wells Fargo Bank, N.A.*, No. 17-cv-2306 (N.D. Cal.), in litigating their claims for misdirected automated calls and moving for class certification, that the Parties agreed to participate in a mediation on December 20, 2018 before the Honorable James F. Holderman (Ret.) of JAMS, the former Chief Judge of the United States District Court for the Northern District of Illinois with expertise in complex litigation. In anticipation of the mediation, my firm sought and obtained significant additional discovery from Wells Fargo regarding the potential class size for all of the misdirected calls that Wells Fargo had potentially placed and the relevant time periods when such calls may have occurred.

12.     After a full day of negotiations, the Parties reached a settlement in principle based on the then-estimated 750,000 telephone numbers that Well Fargo had records of being coded as wrong numbers. The proposed settlement at that time, which was subject to confirmatory discovery, provided for the establishment of a $15 million settlement fund, or recovery of $20 per telephone number identified by Wells Fargo as having potentially been called in error.

13.     Following the December 20, 2018 mediation, on February 26, 2019, Prather Counsel met with counsel for Plaintiffs in the then-pending actions: *Pieterson v. Wells Fargo Bank, N.A.*, No. 17-cv-2306 (N.D. Cal.), *Hastings v. Wells Fargo Bank, N.A.*, No. 17-cv-3633 (N.D. Cal.), *Garr v. Wells Fargo Bank, N.A.*, No. 18-cv-06997, *Bishop v. Wells Fargo Bank, N.A.*, Case No. 17-cv-01505 (N.D. Ga.), *Garr v. Wells Fargo Bank, N.A.*, Case No. 18-cv-06997 (N.D. Cal.), and *Barnes v. Wells Fargo Bank, N.A.*, Case No. 18-cv-06520 (N.D. Cal.). The purpose of that meeting was to disclose the details of the settlement and attempt to reach a global resolution of the pending TCPA misdirected call cases against Wells Fargo.

14.     For the following five months my firm worked with counsel for *Pieterson-Hastings*, *Bishop*, *Barnes*, and *Garr* ("Pieterson Counsel") and engaged in contentious negotiations with Wells Fargo to reach a final settlement agreement. These negotiations brought to bear the discovery conducted by my firm ahead of the December 20, 2018 mediation, as well as confirmatory discovery conducted by my firm, including 30(b)(6) depositions of Wells Fargo's corporate representatives on February 25, 2019 and March 8, 2019, and the extensive discovery, including depositions and expert discovery conducted by Pieterson Counsel. In addition, Wells Fargo produced thousands of pages of additional documents for Class Counsel's review during these negotiations.

15.     The confirmatory discovery conducted by Class Counsel revealed that the updated estimate of telephone numbers that Wells Fargo had identified as potential wrong numbers was actually closer to 850,000. Accordingly, Class Counsel sought to re-negotiate the terms of the settlement reached by my firm, and the settlement fund was increased to $17.85 million.

16.     Expert analysis conducted by my firm prior to December 2018 revealed that Wells Fargo's wrong number codes did not necessarily indicate that a non-customer was reached by Wells Fargo's calls. Accordingly, my firm was aware that the total number of actual class members was considerably less than the total number of wrong number-coded telephone numbers provided by Wells Fargo. Based on the expert analysis in the *Prather* case, as well as the expert analysis conducted in *Pieterson-Hastings* and by Wells Fargo's own analysis, Class Counsel estimated that the class size, as reported in the motion for preliminary approval, was no more than 440,000 individuals.

17.     In August 2019, following this Court granting preliminary approval on July 10, 2019, Wells Fargo provided to the Settlement Administrator, Epiq Systems, Inc., as well as Class Counsel, the final notice database containing the wrong number records that would be used by Epiq to conduct a reverse lookup and provide direct notice to potential class members. The database disclosed that the final wrong number record count was 931,412. Given the very conservative nature of the estimated actual class size based on the expert analysis conducted, Class Counsel maintained that the true class size would not exceed 440,000 individuals.

18.     My firm has at all relevant times been in possession of relevant discovery and information necessary to adequately represent the Settlement Class Members—both prior to and after the December 20, 2018 mediation. At no point did my firm engage or participate in a "reverse auction," as evidenced by the substantial relief being made available to the class members, as well

as the fact that my firm took every measure possible to involve Pieterson Counsel in reaching a final Settlement Agreement that *all* Class Counsel found fair, reasonable, and adequate.

19.     I, along with the other attorneys of my firm, have concluded that the Settlement Agreement reached in this matter is fair, reasonable and adequate in light of the attendant risks of protracted litigation, and warrants final approval. While I believe that the merit of Plaintiffs' claims could and would be proven at trial, I recognize the substantial risk and inherent uncertainty which continued litigation imposes on Plaintiffs and the absent Class Members. Specifically, wrong number cases such as the one brought by Plaintiffs here face significant challenges at the class certification stage, with class certification often denied in similar cases with identical fact patterns as here. Further, given recent decisions regarding the definition of an ATDS and several summary judgment rulings that have dismissed similar TCPA suits, Plaintiffs faced significant risks of moving forward to dispositive motion briefing—not to mention the risks inherent to going forward with trial.

20.     In light of these risks, my colleagues and I strongly believe that the result achieved for the Settlement Class of a $17.85 million non-reversionary Settlement Fund is an extraordinary result, especially given that at the current estimated claims rate, claimants will receive over $400— close to full statutory damages available under the TCPA per violation.

21.     My opinion that the Settlement Agreement should be finally approved is also based on the overwhelming support for the Settlement Agreement expressed by the Settlement Class Members themselves. To date, only a single objection has been filed, and that objection is completely invalid and without merit. Additionally, only 45 individuals have opted out of the Settlement, which together with the more than 22,150 cash claims already filed by the Settlement

Class (with four weeks remaining before the Claims Deadline), strongly demonstrates that final approval of the Settlement Agreement is appropriate.

22.     Class Representatives Myesha Prather, Joseph Dunn, and Helen Iehl have been instrumental to securing the Settlement achieved by Class Counsel and they have willingly contributed their own time and expended efforts toward this litigation. Plaintiff Prather sat for a deposition and produced responsive documents and answered interrogatories, and Plaintiffs Dunn and Iehl have always been available and willing to do the same as necessary. In addition, Plaintiffs Prather, Dunn, and Iehl all took time to provide their personal records and review draft pleadings, and most importantly, participated in the Settlement discussions and negotiations, reviewed settlement documents, and consulted with Class Counsel about the merits of the Settlement and the relief being provided. Had it not been for the efforts of Plaintiffs Prather, Dunn, and Iehl in this action, the substantial benefit to the Settlement Class Members afforded under this Settlement Agreement would not have resulted and they are thus deserving of the proposed Incentive Award.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 26, 2019 in Chicago, Illinois.

/s/ Evan M. Meyers
Evan M. Meyers