# Exhibit D

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JOSEPH DUNN, HELEN IEHL, ALBERT PIETERSON, JOHN HASTINGS, WINDIE BISHOP, LISA BARNES, ANGELA GARR, and MYESHA PRATHER individually and on behalf of a class of similarly situated individuals, | ) ) ) ) ) ) ) No. 17-cv-00481 |
| *Plaintiffs*, | ) ) |
| v. | ) Hon. Manish S. Shah ) ) |
| WELLS FARGO BANK, N.A., | ) ) |
| *Defendant*. | ) ) |

## DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

I, Daniel C. Girard, hereby declare as follows:

1. I am a partner with the law firm Girard Sharp LLP, one of the firms appointed to serve as Class Counsel in this action. I represent Plaintiffs Albert Pieterson and Angela Garr in the California litigation.

2. I submit this declaration in support of Plaintiffs' Motion for Final Approval. I make this declaration based on personal knowledge. If called to do so, I could and would testify to the matters stated herein.

3. My co-counsel in *Pieterson*, Jonathan Selbin, submits herewith a declaration on behalf of California counsel providing facts relating to the progress of the California actions and our negotiations with plaintiffs' counsel in *Prather*. I join in Mr. Selbin's declaration and submit this declaration to independently explain my support for the proposed settlement.

4. I have approximately 30 years of practice experience with class action settlement approval proceedings. In most cases, I have served as class counsel, but in some cases I have represented objecting parties, including in cases that involved claims of "collusion" and "reverse auction" tactics. In each of the following cases, I served as lead or co-lead attorney in

objecting to class actions settlements: *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) (court approved renegotiated class action settlement following successful objection to prior settlement proposal); *In re Hyundai & Kia Horsepower Litig.*, No. BS084308 (Cal. Super. Ct.) (Orange County, California Superior Court approved settlement valued at over $100 million after defendant attempted unsuccessful reverse-auction settlement in Texas state court); *In re Am. Online Spin-Off Accounts Litig.*, No. 03-cv-697, 2005 WL 5747463 (C.D. Cal. May 9, 2005) (court entered All Writs Act injunction prohibiting defendant from consummating state court settlement, and subsequently approved revised settlement); *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-02509, 2015 WL 12991307 (N.D. Cal. Mar. 3, 2015) (declining preliminary approval based on objections by class representative to $325 million class action settlement; court approved revised settlement for $415 million); *Ho by Ho v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021 (N.D. Cal. 1999) (in a section 1983 action on behalf of San Francisco schoolchildren of Chinese-American descent, the court rejected a collateral estoppel defense that invoked an earlier consent decree). So I have not hesitated to challenge class settlements or judgments that stood as an obstacle to my clients' legitimate interests.

5. I have also learned from hard-won experience, however, that recoveries that appear within reach can disappear with a single unfavorable decision, sometimes beyond the lawyer's control. In a major investment fraud case, the Apple REIT Securities Litigation, I rejected a substantial settlement offer in favor of continued litigation. The case was subsequently dismissed with prejudice, and the district court was affirmed on appeal. *Berger v. Apple REIT Ten, Inc.*, 563 F. App'x 81 (2d Cir. 2014). I also experienced disappointing results in such cases as *Freeman v. The Royal Bank of Scotland Group PLC*, 540 F. App'x 33 (2d Cir. 2013) (upholding dismissal of credit crisis securities action), and *California State Teachers' Retirement System v. Alvarez*, 179 A.3d 824 (Del. 2018) (application of issue preclusion as to demand futility based on decision in separate federal action comported with due process). In *Pete v GCI, Inc.*, No. 4BE-14-00134 CI, 2016 WL 2625398 (Alaska Super. May 05, 2016), I represented a class primarily composed of indigenous Alaskans residing in the Yukon-Kuskokwim Delta in a suit to recover for deficient wireless service. With a substantial

settlement offer pending, the trial court dismissed the claims with prejudice as preempted by federal telecommunications law. And just this month, after defeating a motion to compel arbitration, my firm was forced to dismiss a TCPA case despite seven months of litigation because the class representative chose for personal reasons to dismiss her claims. *See In re Uber Text Messaging*, No. 18-cv-02931-HSG, 2019 WL 2509337 (N.D. Cal. June 18, 2019). These experiences and many others reflect the reality that complex civil actions are lost for a range of often unpredictable reasons.

7. I played an active role in litigating the class certification and *Daubert* challenges in *Pieterson* and argued most of the discovery hearings and other matters before the California Court. I am familiar with the arguments surrounding class certification in this wrong-number litigation and assessed the California Court's reaction at various points during the litigation. While I believe Plaintiffs had an excellent chance of prevailing on class certification in *Pieterson* had the *Prather* settlement not intervened, my co-counsel and I also recognized that class certification presented appreciable risks, in addition to the risks posed by the shifting jurisprudential and regulatory landscape relating to TCPA claims.

8. As detailed in class counsel's submission in support of the settlement and in the Selbin Declaration, numerous courts have approved settlements at or below the dollar range provided to class members here. As dissatisfied as we were with Wells Fargo's decision to enter into a settlement in *Prather* that would bar the claims in *Pieterson*, we recognized that our clients' interest in a certain, immediate, and adequate recovery took precedence over our interest in attempting to recover control of the *Pieterson* litigation at the risk of a protracted dispute between lawyers.

9. From my standpoint, for class counsel in the California actions to have refused to join in supporting an objectively reasonable settlement would have been difficult to justify. By negotiating an improved agreement and supporting an immediate resolution, we secured a global settlement that will deliver substantial monetary recoveries to over 21,000 class members, none of whom have objected to the settlement. The case belongs to those class members, not the lawyers, much less objecting counsel, and their choice to accept the relief

being provided should weigh heavily in the Court's decision on settlement approval. I strongly believe that the results of the notice and claims process confirm that the settlement serves the best interest of class members and respectfully request that the Court approve it.

10. My firm devoted approximately $58,000 worth of time (76 hours) to this litigation after April 22, 2019, when the parties reached agreement on a global settlement in the *Prather* case. The time devoted to this matter by my firm post-settlement is accordingly a minor portion of the total time my firm expended.

11. While objecting counsel asserts that no discovery had been taken in *Garr* when the parties settled (*see* ECF No. 113 at 20), *Garr* was only filed in November 2018. Thus, when settlement proceedings in *Prather* intervened, *Garr* was in its incipiency. Even so, by the time that case was stayed, my firm had prepared a case management conference statement, proposed a protective order and ESI protocol, served early Rule 34 requests, conducted a Rule 26(f) conference, obtained records reflecting the calls Wells Fargo made to Ms. Garr, and exchanged Rule 26(a)(1) disclosures with Wells Fargo.

12. At a hearing in *Pieterson*, Wells Fargo complained to the court about California counsel's efforts to advance *Garr* and the related *Barnes* case that counsel were simultaneously prosecuting against Wells Fargo: "Plaintiffs' counsel have already served discovery in *Garr* and *Barnes*, and plaintiffs in both cases have informed Wells Fargo that they intend to seek accelerated schedules for discovery, class certification and trial. These attorneys also want to proceed with a hotly contested class certification motion in *Pieterson/Hastings*." *Garr*, No. 18-6997 (N.D. Cal.), ECF No. 14.

13. Angela Garr agreed to come forward to serve in a representative capacity and cooperated with counsel in the preparation of the complaint, in early discovery proceedings and in evaluating the proposed settlement. She has been responsive and cooperative. Her participation, like that of the other Plaintiffs, contributed to the resolution of this matter. Therefore, I respectfully request that the Court award Ms. Garr an incentive payment in the amount requested, recognizing that the amount of any incentive award is a matter committed to the Court's sound discretion.

\* \* \*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 26th day of November 2019 at San Francisco, California.

/s/ *Daniel C. Girard*
Daniel C. Girard