# Exhibit E

Case: 1:17-cv-00481 Document #: 121-5 Filed: 11/26/19 Page 2 of 31 PageID #:
Case 4:17-cv-02092-HSG Document 80 Filed 06/28/18 Page 1 of 30
1862

ROBINS KAPLAN LLP
Michael F. Ram (SBN 104805)
mram@robinskaplan.com
Susan S. Brown (SBN #287986)
sbrown@robinskaplan.com
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: 650 784 4040
Facsimile: 650 784 4041

EPPS, HOLLOWAY, DELOACH &
HOIPKEMIER, LLC
Kevin E. Epps (admitted *pro hac vice*)
kevin@ehdhlaw.com
Adam L. Hoipkemier (admitted *pro hac vice*)
adam@ehdhlaw.com
1220 Langford Drive, Bldg. 200
Watkinsville, GA 30677

TURKE & STRAUSS LLP
Samuel Strauss (admitted *pro hac vice*)
sam@turkestrauss.com
613 Williamson Street, Suite 209
Madison, Wisconsin 53703-3515

*Attorneys for Plaintiff Vana Fowler*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

VANA FOWLER, individually and on
behalf of all others similarly situated

          Plaintiff,

v.

WELLS FARGO BANK, N.A.,

          Defendant.

Case No. 4:17-cv-02092-HSG

**PLAINTIFF'S NOTICE OF AMENDED
MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT**

HON. HAYWOOD S. GILLIAM

DATE: August 9, 2018
TIME: 2:00 p.m.
LOCATION: Courtroom 2

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

TO:    DEFENDANT Wells Fargo Bank, N.A. AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 9, 2018, at 2:00 p.m. in Courtroom 2, 4th Floor of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Plaintiffs Vana Fowler and Michael Peters will and do move the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order:

A.    Granting preliminary approval of the Proposed Class Action Settlement Agreement entered into by the parties;

B.    Certifying the Settlement Class as defined in the Settlement Agreement;

C.    Appointing Epps Holloway DeLoach & Hoipkemier LLC, Robins Kaplan LLP, and Turke & Strauss LLP as class counsel for the proposed Settlement Class;

D.    Staying all non-Settlement related proceedings pending final approval of the Settlement; and

E.    Scheduling a Fairness Hearing and certain other dates in connection with the final approval of the Settlement.

After intensive arm's-length negotiations overseen by the Hon. Daniel Weinstein (Ret.) of JAMS San Francisco, who made a mediator's proposal, Plaintiffs and Wells Fargo Bank, N.A. ("the Parties") have reached a final classwide resolution. Plaintiff thus respectfully requests that the Court grant their motion for preliminary approval of their settlement with Wells Fargo.

This motion is based on this notice of motion, the accompanying memorandum of points and authorities, the Settlement, including all exhibits, the Declarations of Hon. Daniel Weinstein, Adam Hoipkemier, Michael Ram, and Samuel Strauss, the argument of counsel, all papers and records on file in this matter, and such other matters as the Court may consider.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 2

    A.  Factual Allegations and Procedural History ................................................ 2

    B.  Overview of the Proposed Settlement.......................................................... 4

        1.  The Class ............................................................................................ 4

        2.  The Settlement Relief ....................................................................... 5

        3.  Class Release .................................................................................... 5

        4.  Plaintiffs' Incentive Awards............................................................. 6

        5.  Attorneys' Fees and Litigation Expenses ........................................ 6

        6.  Administration Costs ........................................................................ 6

        7.  The Notice Program .......................................................................... 7

III.  CONDITIONAL CLASS CERTIFICATION...................................................... 7

    A.  The Class Meets the Requirements of Rule 23(a). ...................................... 8

        1.  The Class Is Sufficiently Numerous.................................................. 8

        2.  There Are Common Questions of Law and Fact................................ 8

        3.  The Class Representatives' Claims Are Typical Of The Class.......... 9

        4.  The Class Representatives and Class Counsel Will Fairly and Adequately Protect the Interests of the Class.................................. 10

    B.  The Class Meets the Requirements of Rule 23(b). .................................... 10

        1.  Common questions predominate...................................................... 10

            a.  Multistate law analysis under *Hanlon v. Chrysler* and *Kia/Hyundai*................................................................. 11

            b.  A class action is a superior to individual suits...................... 13

IV.  PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT ...................... 14

    A.  The Settlement Approval Process ............................................................. 14

    B.  A. The proposed Settlement is the product of informed, arms' length negotiations ........................................................................................ 16

    C.  The proposed Settlement does not improperly grant preferential treatment to class representatives or segments of the Class.................................... 16

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

- i -

D.    The proposed Settlement falls within the range of possible approval. ...................... 16

V.   THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST PRACTICABLE NOTICE UNDER THE CIRCUMSTANCES .................................................................. 20

VI.   THE PROPOSED FINAL HEARING SCHEDULE .......................................................... 21

VII.   CONCLUSION ...................................................................................................................... 21

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF AUTHORITIES**

**Cases**

*Altamirano v. Shaw Indus., Inc.*,
    No. 13-CV-00939-HSG, 2015 WL 4512372 (N.D. Cal. July 24, 2015) ................................16

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ..............................................................................................................7

*American Airlines v. Wolens*,
    513 U.S. 219 (1995) ............................................................................................................12

*Balderas v. Massage Envy Franchising, LLC*,
    No. 12-cv-06327 NC, 2014 U.S. Dist. LEXIS 99966, 2014 WL 3610945
    (N.D. Cal. July 21, 2014) ....................................................................................................18

*Brown v. Consumer Law Assocs., LLC*,
    283 F.R.D. 602 (E.D. Wash. 2012) ......................................................................................9

*Castano v. Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) ................................................................................................13

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................................................14

*Deaver v. Compass Bank*,
    No. 13-cv-00222-JSC, 2015 U.S. Dist. LEXIS 166484 (N.D. Cal. Dec. 11, 2015) ...............18

*Deiter v. Microsoft Corp.*,
    436 F.3d 461 (4th Cir. 2006) ................................................................................................9

*DG ex rel. Strickland v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010) ............................................................................................9

*Dorado v. Bank of America, N.A.*,
    Case No. 1:16-cv-21147-UU, Dkt. 154 (S.D. Fla. 2017)....................................1, 7, 10, 12, 19

*Dupler v. Costco Wholesale Corp.*,
    249 F.R.D. 29 (E.D.N.Y. 2008) ............................................................................................8

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980),
    *aff'd*, 661 F.2d 939 (9th Cir. 1981) ....................................................................................15

*Ellsworth v. U.S. Bank, N.A.*,
    No. 12-02506 LB, 2014 U.S. Dist. LEXIS 81646 (N.D. Cal. June 13, 2014) ...................11, 12

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,
    881 F.3d 679 (9th Cir. 2018) ........................................................................................11, 12

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

*Felix v. SunTrust Mortgage Company, Inc.*,
  Case No. 2:16-cv-66-RWS, Dkt. 47 (N.D. Ga. 2017) .......................................1, 7, 10

*Flanagan v. Allstate Ins. Co.*,
  242 F.R.D. 421 (N.D. Ill. 2007) ...................................................................................8

*Fraley v. Facebook, Inc.*,
  966 F. Supp. 2d 939 (N.D. Cal. 2013),
  *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. Jan. 6, 2016) ............18

*G. F. v. Contra Costa Cty.*,
  No. 13-CV-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015).....................16

*Gutierrez v. Wells Fargo Bank*,
  No. C 07-5923 WHA, 2008 U.S. Dist. LEXIS 70124, 2008 WL 427999550
  (N.D. Cal. Sept. 11, 2008)...........................................................................................11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)........................................................................7, 8, 11, 15

*In re Arthur Treacher's Franchise Litig.*,
  93 F.R.D. 590 (E.D. Pa. 1982) .....................................................................................9

*In re Dynamic Random Access Memory Antitrust Litig.*,
  No. 02-1486, 2013 U.S. Dist. LEXIS 188116 (N.D. Cal. Jan. 7, 2013) ....................13

*In Re Med. Capital Secs. Litig.*,
  No. SAML 10-2145 DOC (RNBx), 2011 U.S. Dist. LEXIS 126659, 2011 WL
  5067208 (C.D. Cal. Jul. 26, 2011) ..............................................................................12

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000).................................................................................14, 18

*In re Netflix Privacy Litig.*,
  No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013).................14

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................................18

*In re Quick Cash, Inc.*,
  541 B.R. 526 (Bankr. D.N.M. 2015)............................................................................9

*In re Rambus Inc. Deriv. Litig.*,
  No. C-06-3515 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ...................14

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008)......................................................................................14

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 14, 15

*In re Toys R Us-Delaware, Inc. FACTA Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) ........................................................................... 18

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ................................................................................ 11

*Kornberg v. Carnival Cruise Lines, Inc.*,
741 F.2d 1332 (11th Cir. 1984) ............................................................................... 9

*Ma v. Covidien Holding, Inc.*,
No. 12-02161, 2014 U.S. Dist. LEXIS 13296, 2014 WL 360196 (C.D. Cal.
Jan. 31, 2014) ......................................................................................................... 18

*Med. Protective Co. v. Center for Advanced Spine Tech.*,
No. 1:14-cv:5, 2015 WL 4653220 (S.D. Ohio Aug. 5, 2015) ................................ 9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ............................................................................................... 20

*Nat'l Rural Telcoms Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................... 19

*Nobles v. MBNA Corp.*,
No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ..................... 15

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) .................................................................................. 14

*Rannis v. Recchia*,
380 F. App'x. 646 (9th Cir. 2010) .......................................................................... 20

*Reynoso v. South County Concepts*,
2007 WL 4592119 (C.D. Cal. Oct. 15, 2007) ........................................................ 13

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .................................................................................. 15

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
No. Civ. A. 03-4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005) ....................... 18

*Stovall-Gusman v. W.W. Granger, Inc.*,
No. 13-CV-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ............... 18

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011) ................................................................................... 13

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) .............................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ...............................................................................8

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ....................................................................8

**Rules**

Fed. R. Civ. P. 23 ......................................................................................2, 11

Fed. R. Civ. P. 23(a) .......................................................................................7

Fed. R. Civ. P. 23(b) ....................................................................................10

Fed. R. Civ. P. 23(b)(3) ..............................................................7, 10, 11, 13, 19

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................................19

Fed. R. Civ. P. 23(e) ....................................................................................14

**Other Authorities**

24 C.F.R. § 203.558 ..............................................................................1, 8, 17

24 C.F.R. § 203.558(c) ................................................................................1, 2

*Manual for Complex Litigation* (Fourth) (2004), § 21.312....................19, 20

*Manual for Complex Litigation* (Fourth) (2004), § 21.632.........................7, 14

*Manual for Complex Litigation* (Fourth) (2004), § 21.633.........................7, 14

2 William B. Rubenstein, et al., *Newberg on Class Actions* § 4:49 (5th ed. 2012) ........................10

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

- vi -

## I.      INTRODUCTION

Plaintiffs Vana Fowler and Michael Peters submit for the Court's preliminary approval a proposed Class Action Settlement Agreement resolving claims that Wells Fargo Bank, N.A. allegedly collected post-payment interest, *i.e.* interest from the date of prepayment through the end of the month, in violation of 24 C.F.R. § 203.558, and in breach of the uniform Housing and Urban Development (HUD) note.  Plaintiffs allege that Wells Fargo was not entitled to collect post-payment interest because it failed adequately to disclose the charges "in a form approved by the Commissioner."  24 C.F.R. § 203.558(c) (2014).

The proposed Settlement creates a $30,000,000 (thirty million dollar) fund from which every class member who does not opt out will automatically be mailed a check for a pro rata share of the net proceeds. Ex. 1.  Class members will not need to file claims or do anything else to receive compensation.  While the actual payout will vary by borrower, the average recovery before costs and fees is about $27.00 per borrower.

The settlement calls for direct notice by U.S. mail to all 1,113,094 class members.  If approved, the settlement will bring significant recovery to class members and a sure end to what has been and would continue to be contentious litigation centered on the unsettled factual and legal questions concerning Wells Fargo's liability under Section 203.558.  The Settlement was reached after months of discovery, arm's-length negotiations, and a mediator's proposal, and enjoys the support of a neutral mediator who had an integral part in the settlement negotiations.  Consequently, the Settlement satisfies the criteria for preliminary approval.

Notably, similar classes have been certified for settlement purposes in two other cases alleging similar misconduct: *Felix v. SunTrust Mortgage Company, Inc.*, Case No. 2:16-cv-66-RWS, Dkt. 47 (N.D. Ga. 2017); *Dorado v. Bank of America, N.A.*, Case No. 1:16-cv-21147-UU, Dkt. 154 (S.D. Fla. 2017). Plaintiffs therefore request that the Court (1) provisionally certify the proposed Class; (2) grant preliminary approval of the settlement; (3) appoint Epps, Holloway, Deloach, and Hoipkemier LLP (EHDH), Robins Kaplan LLP, and Turke & Strauss LLP as class counsel; (4) appoint Plaintiffs as class representatives; (5) approve the proposed notice plan; (6) appoint Garden City Group, LLC to serve as claims administrator; and (7) schedule the final

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Case 4:17-cv-02092-HSG Document 80 Filed 06/28/18 Page 11 of 30

fairness hearing and related dates the parties have proposed. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the reasons set forth below, this Court should enter the Parties' proposed Preliminary Approval Order.

## II. BACKGROUND

### A. Factual Allegations and Procedural History

Wells Fargo is one of the largest servicers of Federal Housing Administration-backed mortgage loans in the country. Plaintiffs' claims center around the allegation that Wells Fargo has a systematic practice of collecting "post-payment" interest on loans insured by the Federal Housing Administration without strictly complying with the uniform provisions of the promissory notes and the regulations governing these loans. Post-payment interest is, as the name suggests, interest charged *after* the loan has been paid in full.

During the relevant time period, the HUD-approved form of note provided that the lender may collect post-payment interest for the remainder of the month in which full payment is made, but only "**to the extent . . . permitted by [FHA] regulations**." HUD regulations prohibit lenders from collecting post-payment interest unless two strict conditions are met: (a) the borrower makes payment of the full unpaid principal on a day "**other than** [the first of the month]" and (b) the lender must provide the borrower with "**a form approved by the [FHA]**." 24 C.F.R. § 203.558 (c) (2014) (emphasis added). Effective January 20, 2015, lenders are no longer permitted to charge post-payment interest on FHA-backed mortgages originated after that date.

Plaintiffs allege that Wells Fargo did not strictly comply with this regulation because the disclosures it provided to Plaintiffs and the putative class in response to prepayment inquiries, requests for payoff figures or tenders of prepayment were not in the form approved by the HUD/FHA Commissioner. In short, Plaintiffs contend that Wells Fargo did not strictly comply with HUD regulations incorporated into the uniform note, and thus was not permitted to collect post-payment interest and breached the note by doing so.

This is the second major litigation between consumers and Wells Fargo seeking recovery of post-payment interest. The first case, styled *Miller v. Wells Fargo Bank, N.A.* (*"Miller"*) was filed in 2016 in the Southern District of Florida.[1] *Miller* proceeded through discovery, expert depositions, cross-motions for

---

[1] EHDH was plaintiff's counsel in *Miller*.

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

summary judgment, and pre-trial motions. Hoipkemier Decl., Ex. 2 (Dkt. Sheet). The parties were preparing for trial when the district court denied the plaintiff's motion for class certification. The case subsequently settled on an individual basis. *Id.*

To secure relief for consumers nationwide following the denial of class certification in *Miller*, counsel filed this case and the case styled *Peters v. Wells Fargo Bank, N.A.* (which was transferred from the Northern District of California to the Southern District of Texas where Mr. Peters resides). Mr. Peters voluntarily dismissed the Texas litigation and was added as a plaintiff in this case by stipulation solely for the purpose of this settlement.

Prior to the filing of this case, Plaintiff's counsel conducted hundreds of hours of legal research and factual investigation into the HUD regulations and procedures, served FOIA requests on HUD, and reviewed more than 35,000 documents produced by Wells Fargo in this case and *Miller*. Counsel on both sides are intimately familiar with the facts, relevant law, and the strengths and weaknesses of the claims and defenses as a result of discovery in this case and litigating the *Miller* action to the eve of trial.

Wells Fargo moved to dismiss this case. D.E. 15. The Court heard oral argument on Defendant's motion and denied the motion in part and granted it in part on September 11, 2017. D.E. 45. Between September 2017 and December 2017, the parties engaged in discovery. During this time, the Parties met and conferred regarding the scope of discovery and Wells Fargo's objections to Plaintiff Fowler's discovery requests and prepared letters to Magistrate Judge LaPorte to assist with the resolution of the Parties' various discovery disputes.

On January 15, 2018, the parties voluntarily participated in a full-day in-person settlement conference with Hon. Daniel Weinstein (Ret.), a preeminent mediator of complex civil disputes and a retired California judge and founder of JAMS. Weinstein Decl. ¶ 1-2. Prior to mediation, the parties submitted detailed briefs to Judge Weinstein. *Id.*, ¶ 4. During a full day of mediation attended by Plaintiff Fowler, the parties discussed their relative views of the law, the facts, and potential relief for the proposed classes. *Id*, ¶ 5. Defendant Wells Fargo argued that there was no required HUD disclosure language. Moreover, even if there were required language, Wells Fargo argued that it had substantially complied with the HUD disclosure requirements even if it had not

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

used the form published in the handbook. Wells Fargo also argued that Plaintiff and the class members' claims faced numerous legal obstacles to both class certification and judgment, particularly those relating to Federal Rule 23(b)(3)'s predominance requirement. *Id.*

The parties made significant progress toward resolution during the mediation, but they did not reach an agreement that day. Hoipkemier Decl. ¶ 5. Near the conclusion of the mediation, Judge Weinstein made a mediator's proposal for a nationwide settlement. Weinstein Decl. ¶ 5. After considering the proposal over the ensuing weeks, the parties each accepted the mediator's proposal. *Id.* Thereafter, the parties continued diligently to negotiate other key settlement terms with the mediator's guidance over the following weeks, including the settlement structure and notice plan. *Id.* The results of that negotiation are the Settlement and Release Agreement attached to the Hoipkemier Declaration at Exhibit 1. By any measure, this Settlement is an excellent result for the Settlement Class in the face of Wells Fargo's defenses on the merits and to class certification.

### B. Overview of the Proposed Settlement

The terms of the parties' proposed settlement are set forth in detail in the Settlement Agreement. Ex. 1. For the purposes of preliminary approval, here are the key terms.

#### 1. The Class

The Class is defined as "the collective group of all persons nationwide who had an FHA-Insured Loan that was originated beginning June 1, 1996 and ending January 20, 2015, where (i) Wells Fargo, its agent, or its predecessor was the mortgagee or servicer as of the date the total amount due on the FHA-Insured Loan was brought to zero, (ii) Wells Fargo collected Post-Payment Interest on the FHA-Insured Loan during the applicable Limitations Period,[2] and (iii) the borrower made a prepayment inquiry, request for payoff figures, or tender of prepayment but did not receive a Payoff Statement containing the verbatim Post-Payment Interest disclosure language in Housing Handbook, 4330.1 REV-5 Appendix 8(c) or the verbatim language contained in the "Payoff Disclosure" referenced in the Housing Handbook 4000.1. Excluded from the Class are Wells

---

[2] A chart containing the applicable limitations for each state is included as Exhibit 2 to this motion.

Fargo, all officers, directors, and employees of Wells Fargo, and their legal representatives, heirs, or assigns, and any Judges to whom the Action is assigned, their staffs, and their immediate families."

### 2. The Settlement Relief

Wells Fargo has agreed to make a guaranteed lump-sum payment of $30,000,000 (thirty million dollars) inclusive of costs of notice and administration and any attorney's fees that might be awarded by the Court. The settlement fund will be distributed to class members by check mailed to their best-known addresses. The residual from uncashed checks will be distributed through a second round of checks to class members that cashed the first check. Each class member will receive a refund of a percentage of the amount of post-payment interest collected in connection with his or her paid-off FHA-insured mortgage loan, calculated as follows.

First, the Settlement Administrator will sum the total amount of Post-Payment Interest Wells Fargo collected from all Settlement Class Members. Second, the Settlement Administrator will divide each Settlement Class Member's individual Post-Payment Interest by the total amount of Post-Payment Interest Wells Fargo collected from all Settlement Class Members. Third, the Settlement Administrator will multiply the resulting percentage by the Net Settlement Fund, with the result constituting the distribution to be paid to each Settlement Class Member.

### 3. Class Release

In exchange for the benefits under the proposed Settlement, Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release "any and all claims, defenses, demands, objections, actions, causes of action, rights, offsets, setoffs, suits, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever, in law or in equity, for any relief whatsoever, including monetary, sanctions or damage for contempt, injunctive, or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, penalties, interest, attorneys' fees, costs, or expenses, whether a known or Unknown Claim, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, arise out

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

of, or relate to allegations that were or could have been asserted in the Class Action Complaint related to Post-Payment Interest on each Class Member's FHA-Insured Loan. "

### 4. Plaintiffs' Incentive Awards

Counsel will seek a $7,500 incentive award for Ms. Fowler and $5,000 for Mr. Peters to be paid out of any attorney's fees awarded to counsel. This award will compensate Ms. Fowler and Mr. Peters for their time and effort in serving as class representatives, for the risks they undertook in prosecuting the case, and the substantial time they spent working with counsel. See Settlement Agreement ¶ 15.3. The discrepancy in payment amounts reflects the fact that the Fowler action is further advanced than the Peters action; Ms. Fowler engaged in additional activities such as responding to discovery, traveling to and participating in mediation, and staying abreast of more extensive motion practice.

### 5. Attorneys' Fees and Litigation Expenses

The Settlement Agreement provides that in connection with obtaining preliminary and final approval of the Proposed Settlement, Plaintiff's counsel will request that the Court approve an award of up to 25% of the common fund plus up to $70,000 for out-of-pocket litigation costs to compensate and reimburse Plaintiff's counsel for the work already performed on this case and the work to be performed in connection with the settlement. See Settlement Agreement ¶ 15.2. The enforceability of the settlement is not contingent on Court approval of the award of attorney fees and costs. *Id.* There is no "clear sailing" provision and the parties did not discuss attorneys' fees and costs prior to agreement on all material terms of the Settlement. Hoipkemier Decl. ¶ 5.

### 6. Administration Costs

All costs of notice and administration will be paid from the Settlement Fund. After obtaining multiple bids from reputable, experienced claims administrators, the parties have retained experienced claims administrator Garden City Group to administer the settlement and process claims. Garden City Group has submitted a bid for $1,563,600 to issue notice, administer the settlement, process claims, and issue two rounds of checks to all members of the Class who file claims. This bid was only $15,000 higher than the lowest bid received, which Class Counsel deem to be a reasonable price for an administrator of Garden City Group's caliber.

### 7. The Notice Program

The proposed Notice Program requires the Settlement Administrator to send direct notice to all class members via U.S. mail. The proposed form of notice will advise Settlement Class Members of the terms of the settlement, the deadline to opt out or object, and the option to appear and be heard at the final fairness hearing. Settlement Agreement, Ex. 2.

## III. CONDITIONAL CLASS CERTIFICATION

Plaintiffs respectfully request that the Court certify the Class defined in paragraph 1.5 of the Settlement Agreement for settlement purposes, and order that notice of the Settlement be issued to inform Settlement Class Members of: (1) the existence and terms of the Settlement; (2) how to obtain benefits under the Settlement; (3) their right to be heard on its fairness; (4) their right to opt out; and (5) the date, time, and place of the fairness hearing. *Manual* §§ 21.632, 21.633.

Class certification is appropriate where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Certification of a class seeking monetary compensation also requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Importantly, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, the Court has a roadmap for class certification from prior, similar cases: district courts in the Northern District of Georgia and the Southern District of Florida have previously certified nationwide settlement classes of FHA-backed mortgage borrowers seeking recovery of post-payment interest. *Felix v. SunTrust Mortgage Company, Inc.*, Case No. 2:16-cv-66-RWS, Dkt. 47

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

(N.D. Ga. 2017); *Dorado v. Bank of America, N.A.*, Case No. 1:16-cv-21147-UU, Dkt. 154 (S.D. Fla. 2017).

### A. The Class Meets the Requirements of Rule 23(a).

#### 1. The Class Is Sufficiently Numerous

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Wells Fargo's business records reflect that there are about 1,000,000 Settlement Class Members. Accordingly, the proposed Class is so numerous that joinder of all claims is impracticable.

#### 2. There Are Common Questions of Law and Fact

The commonality requirement demands only that class members "share a common issue of law or fact, and [be] sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). "Commonality may be demonstrated when the claims of all class members "depend upon a common contention" and "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011); *see also Hanlon*, 150 F.3d at 1019 ("[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class").

The commonality requirement is met here, as there are several material common questions of law and fact. For example, the common questions include, but are not limited to:

* Plaintiffs' contention that the promissory notes for Plaintiffs and the Settlement Class, which are uniform pursuant to HUD regulations, prohibit the collection of post-payment interest unless such interest is collected as "permitted by regulations of the [HUD] Secretary";

* Plaintiffs' contention that the HUD regulations incorporated into the uniform note require Wells Fargo to provide borrowers who have made a prepayment inquiry, request for payoff figures, or tender of prepayment, certain disclosures relating to post-payment interest "in a form approved by the Commissioner";

* Wells Fargo's contention that the form documents discussing post-payment interest that Wells Fargo provided to Settlement Class Members who have made a prepayment inquiry, request for payoff figures, or tender of prepayment, complied with 24 C.F.R. § 203.558; and

* Plaintiffs' contention that a class member can prove his/her claim by showing that Wells Fargo collected interest in breach of the contract or Wells Fargo's contention

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

that the class member is also required to show he/she would have moved the closing date if the proper form was provided.

Commonality is further established because Plaintiff's and the Class's claims arise out of a form contract, and "the alleged breach of standard-form contracts are particularly appropriate for class action." *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 46 (E.D.N.Y. 2008); *see also Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 428 (N.D. Ill. 2007) ("Claims arising out of form contracts are particularly appropriate for class action treatment").

### 3. The Class Representatives' Claims Are Typical Of The Class

Typicality is satisfied when the Plaintiffs' claims and the Settlement Class Members' claims "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). To satisfy this standard, the Plaintiffs' "interest in prosecuting [her] own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). However, "[t]he interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality." *DG ex rel. Strickland v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010). Rather, "[w]hen the class representative's claim and the claims of the other 'class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat 'typicality'." *In re Quick Cash, Inc.*, 541 B.R. 526, 534 (Bankr. D.N.M. 2015) (*quoting DG ex rel. Strickland*, 594 F.3d at 1198.

The typicality requirement is satisfied here. Plaintiffs' claims and each Settlement Class Members' claim arise from the same practice; i.e., Wells Fargo's alleged failure to provide a HUD-approved form to borrowers who have made a prepayment inquiry, request for payoff figures, or tender of pre-payment. Further, Plaintiffs' interest in prosecuting their own cases simultaneously advances the interests of the absent Settlement Class Members because the evidence relevant to Plaintiffs' claim that the forms they were sent was not approved by the FHA or HUD is the same evidence that is relevant to the absent Settlement Class Members' claims.

Further, like commonality, typicality is satisfied because this case involves a form contract. "[C]ourts have found typicality where there is a common contract at issue, reasoning that 'the

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

similiarity of the contractual forms . . . is, in the Court's view, a significant factor favoring a finding of typicality.'" *Med. Protective Co. v. Center for Advanced Spine Tech.*, No. 1:14-cv:5, 2015 WL 4653220, at *9 (S.D. Ohio Aug. 5, 2015) (quoting *In re Arthur Treacher's Franchise Litig.*, 93 F.R.D. 590, 596–97 (E.D. Pa. 1982)). *See also Brown v. Consumer Law Assocs., LLC*, 283 F.R.D. 602, 613 (E.D. Wash. 2012) (typicality satisfied in case involving a form contract because plaintiff and the class "will be asserting identical claims involving a similar injury and arising from a same course of conduct").

> **4.  The Class Representatives and Class Counsel Will Fairly and Adequately Protect the Interests of the Class.**

Here, both Plaintiffs and the Class share the same factual and legal positions because Plaintiffs and the Class all are subject to, and assert a breach of, the same provisions of the uniform note.  Further, both Plaintiffs and the Class share the common objective of recovering the post-payment interest Wells Fargo collected in breach of the uniform note. Plaintiffs have no conflict with the Class. And both Plaintiffs have also demonstrated that they are committed to representing the interests of the class.  Ram Declaration ¶ 4.

Class Counsel also satisfy the adequacy requirement.  Class Counsel have extensive experience handling class actions on behalf of plaintiffs. *See* Hoipkemier Declaration ¶ 9-10; Ram Declaration ¶ 5.  Further, Class Counsel have personally litigated numerous class actions of similar size and complexity to this case, including Adam Hoipkemier and Kevin Epps being appointed class counsel in two post-payment interest cases. *See Dorado v. Bank of America, N.A.*, No. 1:16-cv-21147-UU (S.D. Fla.) ($29 million settlement); *Felix, et al. v. SunTrust Bank, N.A.*, No. 2:16-cv-66-RWS (N.D. Ga.) ($3.5 million settlement).  Michael Ram has devoted his practice to representing plaintiffs in class actions for a quarter of a century.  Ram Declaration ¶ 5.  A representative sample of the cases where he has served as lead counsel and class counsel is at http://www.robinskaplan.com/lawyers/michael-ram.

> **B.  The Class Meets the Requirements of Rule 23(b).**

> **1.  Common questions predominate.**

Rule 23(b)(3) requires that "the questions of law or fact common to the class members

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

- 10 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

predominate over any questions affecting individual members, and that a class action is superior to other available methods to fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 William B. Rubenstein, et al., *Newberg on Class Actions* § 4:49, at 195-96 (5th ed. 2012)).

"When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* Thus, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. Here, the common questions predominate as the case involves "form contracts and standardized policies and practices applied on a routine basis to all customers by a bank." *Ellsworth*, *supra*; *see also Gutierrez v. Wells Fargo Bank*, No. C 07-5923 WHA, 2008 U.S. Dist. LEXIS 70124, 2008 WL 427999550, at *17 (N.D. Cal. Sept. 11, 2008).

Plaintiff's individual claim, and each Class member's claim, stand or fall on the common question of whether Wells Fargo collected post-payment interest without first disclosing the charge in a form that was approved by the FHA or HUD. That common question overwhelms any individualized issues that might arise as part of the settlement.

### a. Multistate law analysis under *Hanlon v Chrysler* and *Kia/Hyundai*.

The Court is likely familiar with the Ninth Circuit's recent opinion in *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 881 F.3d 679 (9th Cir. 2018) ("*Hyundai*") which addresses predominance in the context of a multistate settlement class where the trial court made no choice of law analysis. The Ninth Circuit held that the district court erred by failing to "rigorously analyze potential differences in state consumer protection laws before certifying a single nationwide settlement class under Rule 23(b)(3)." *Id.* at 701-702. Specifically, the Ninth Circuit stated that

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the "district court's reasoning that the settlement context relieved it of its obligation to undertake a choice of law analysis and to ensure that a class meets all of the prerequisites of Rule 23, is wrong as a matter of law." *Id.* The Ninth Circuit reiterated that a court considering a nationwide class "must consider the impact of potentially varying state laws," but, following long-standing Ninth Circuit precedent, "'[v]ariations in state law do not necessarily preclude a 23(b)(3) action.'" *Id.* at 691 (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)); *see also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1122 (9th Cir. 2017).

A petition for en banc review was filed on March 8, 2018, and is presently pending before the 9th Circuit. Regardless of the outcome of the petition, *Hyundai* is no obstacle to the Court finding that common issues predominate for the purpose of certifying the proposed settlement class for three reasons.

First, *Hyundai* is distinguishable on its facts. The main issue on appeal in *Hyundai* was whether the district court erred by failing to perform a choice of law analysis before applying California consumer protection law to a nationwide settlement class. *Id.* at 691. Here Plaintiffs do not seek to apply California law extra-territorially. Instead, Plaintiffs seek to apply the separate laws of breach of contract of the fifty states. "Courts routinely certify class actions regarding breaches of form contracts." *Ellsworth*, *supra*, 2014 U.S. Dist. LEXIS 81646, at *65; *see also In Re Med. Capital Secs. Litig.*, No. SAML 10-2145 DOC (RNBx), 2011 U.S. Dist. LEXIS 126659, 2011 WL 5067208, at *3 (C.D. Cal. Jul. 26, 2011) (collecting cases); *Dorado*, *supra* (certifying nationwide breach of contract settlement class); *cf. American Airlines v. Wolens*, 513 U.S. 219, 233 n.8 (1995) ("Because contract law is not at its core 'diverse, nonuniform, and confusing,' we see no large risk of nonuniform adjudication…").

Second, Plaintiffs have provided the Court with the multistate analysis that the *Kia/Hyundai* plaintiffs did not. The error in *Hyundai* was the district court's failure to analyze *at all* whether applicable state laws materially differed or to consider those differences for purposes of predominance. *Id.* A 50-state survey of the elements of breach of contract reflects that there is no relevant material difference in the state laws of breach of contract. *See* Ex. 2. Every state employs some close variation of the same three elements: (i) a valid contract; (ii) breach; and (iii) damages.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*Id.* Additionally, as a general rule, every state permits a claim for breach of regulations incorporated as a term of a contract. *See* Ex. 3. That is, borrowers' claims would come out the same way regardless of any minor differences in the intricacies of how different states express or apply the elements of breach of contract, such that any such differences do not predominate over the common issues arising from the form contract, form disclosure, and Wells Fargo's common practice of collecting post-payment interest from borrowers at closing.

Third, any differences in state law or among individual borrowers with respect to causation/reliance go to the manageability of the case at trial and are not relevant to a settlement class. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 304 (3d Cir. 2011) (settlement "obviates the difficulties inherent in proving the elements of varied claims at trial"). The *Miller* court found that causation was a predominating individualized issue because the determination of whether a borrower changed (or did not change) his closing date based on the content of Wells Fargo's disclosure would require separate mini trials. The court did not consider the argument made in this litigation that Plaintiffs and class members relied on the stated payoff amounts as being accurate and that suffices for causation. Nevertheless, it is well-settled that common questions of fact and law may predominate with regard to a settlement class, while separate individual questions might prevent certification of a litigation class. *See In re Dynamic Random Access Memory Antitrust Litig.*, No. 02-1486, 2013 U.S. Dist. LEXIS 188116, at *254 (N.D. Cal. Jan. 7, 2013) (nothing in prior ruling denying class certification as to a proposed litigation class prevented the court from subsequently granting certification for settlement purposes) (citing *Sullivan*, 667 F.3d at 306).

### b. A class action is a superior to individual suits.

Further, class treatment is superior because the average class member's damages are modest. "A class action is the superior method for managing litigation if no realistic alternative exists." *Reynoso v. South County Concepts*, 2007 WL 4592119, at *4 (C.D. Cal. Oct. 15, 2007). This case presents no realistic alternative to a class action because it is a "negative value suit" with more than 1,100,000 class members; *i.e.*, a case where an individual suit will cost a Class member more than he or she could recover. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996). That is because where, as here, the costs of litigating exceed the potential recovery, there is no

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   alternative to class actions for "fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

2   23(b)(3). Further, even if the cost of individual lawsuits did not exceed the potential recovery, the

3   sheer number of separate trials that would otherwise be required also weighs in favor of

4   certification. It would be a waste of the parties' and this Court's time and resources to conduct

5   discovery and separately try the claims of any class members that sought to individually recover

6   post-payment interest from Wells Fargo.

7   **IV.    PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT**

8         **A.    The Settlement Approval Process**

9         Pursuant to Rule 23(e), class actions "may be settled, voluntarily dismissed, or

10  compromised only with the court's approval." Federal courts favor and encourage settlements,

11  particularly in class actions, where the costs, delays, and risks of continued litigation might

12  otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v.*

13  *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors

14  settlements, particularly where complex class action litigation is concerned"); *In re Syncor ERISA*

15  *Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same).

16        The *Manual for Complex Litigation* (Fourth) (2004) ("Manual") describes the three-step

17  procedure for approving class action settlements: (1) preliminary approval of the proposed

18  settlement; (2) notice of the settlement to class members providing the opportunity to opt-out or

19  object to the reasonableness of the settlement; and (3) a formal fairness and final settlement

20  approval hearing. Id. at § 21.633. The Manual characterizes the preliminary approval stage as a

21  court's "initial evaluation" of the fairness of the proposed settlement on the basis of written

22  submissions and informal presentation from the settlement parties. *Id.* at § 21.632.

23        Rule 23(e) governs a district court's analysis of the fairness of a settlement of a class action.

24  To approve a class action settlement, the Court must determine whether the settlement is

25  "fundamentally fair, adequate and reasonable." *In re Rambus Inc. Deriv. Litig.*, No. C-06-3515 JF

26  (HRL), 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (citing Fed. R. Civ. P. 23(e)); *see also In*

27  *re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Officers for Justice v. Civil Serv.*

28  *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). Preliminary approval of a proposed settlement is the

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

first step in making this determination.

If "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *see also In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (applying at preliminary approval a "presumption" of fairness to settlement that was "the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"). "The preliminary determination establishes an initial presumption of fairness." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079-80.

When class counsel is experienced and supports the settlement, and the agreement was reached after arm's-length negotiations, courts give a presumption of fairness to the settlement. *See Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *6 (N.D. Cal. June 29, 2009); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981). Additionally, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The Ninth Circuit has identified "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement" as factors for determining if a settlement is, in the final analysis, fair, reasonable, and adequate. *See Hanlon*, 150 F.3d at 1026.

This Settlement is at the first stage described above, in which the Court conducts a preliminary examination to determine whether the settlement appears to be fair, reasonable and adequate and that there is good reason to give notice to the Class. The proposed Settlement meets all of the factors relevant to final approval, and thus the proposed Settlement should be preliminarily

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

- 15 -

approved.

**B.** ~~A.~~ **The proposed Settlement is the product of informed, arms' length negotiations**

Here, the Settlement was the result of hard-fought negotiations, which required the assistance of an independent third-party mediator, the Hon. Daniel Weinstein (Ret), who has expressed his support of the settlement. Weinstein Declaration ¶ 9. Courts have consistently held that the presence of an independent mediator belies any suggestion of fraud or collusion.

**C.** **The proposed Settlement does not improperly grant preferential treatment to class representatives or segments of the Class.**

Next, the Court should examine whether the settlement agreement provides preferential treatment to any settlement class member. This analysis turns, among other things, on whether there is any disparity among what class members are poised to receive and, if so, whether the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct." *Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment); *accord G. F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *13-14 (N.D. Cal. July 30, 2015) (analyzing whether the settlement singles out particular class members or whether it instead "appears uniform"). Here, Plaintiffs are seeking certification of a single class of borrowers, and all class members are entitled to a proportional share of the settlement fund based on their damages.

**D.** **The proposed Settlement falls within the range of possible approval.**

"The extent of discovery completed and the stage of the proceedings" – As stated above, the Settlement was achieved in the middle of discovery. This fact militates in favor of approving the Settlement for at least two reasons. First, by settling the litigation now, the Class avoids the risk of losing summary judgment or having Plaintiff's motion for class certification denied. Second, a settlement allows Settlement Class Members to obtain recovery several years faster than they would have if this case proceeded through trial and appeal.

With respect to the amount of discovery completed, Plaintiff and Class Counsel were able to make an informed decision regarding the settlement amount. For one, Plaintiff obtained in

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

discovery Wells Fargo's mortgagee data, which identified, among other things, each borrower who paid post-payment interest and provided data that allowed for the calculation of the amount of post-payment interest paid. Plaintiff's counsel have previously deposed Wells Fargo's fact and expert witnesses in the *Miller* action. Thus, Plaintiffs had more than sufficient information upon which to evaluate the strength of their claims and negotiate a fair and reasonable settlement.

In addition, through discovery, Plaintiff obtained a copy of each form and payoff statement that Wells Fargo used during the applicable statutes of limitations periods, and information as to whom each form was sent. Through that discovery, Plaintiff was able to evaluate the strengths and weaknesses of Wells Fargo's claims relating to each of the forms, and was able to apply that evaluation to the damages.

"The strength of plaintiffs' case" – Although Plaintiffs strongly believe in the strength of their claims, Plaintiffs nonetheless face hurdles before obtaining a final judgment. Indeed, among other things, Plaintiffs would still have to obtain class certification, defeat summary judgment (and any associated 23(f) appeal) and then succeed at trial.

In addition, while Plaintiffs believe that resolution of this case involves a straightforward question of whether the form documents that Wells Fargo sent Plaintiffs and the Settlement Class Members in response to a prepayment inquiry, request for payoff figures, and tender of prepayment were approved by the FHA or HUD, Wells Fargo has raised defenses that make this matter more complicated, including, but not limited to, claiming (i) substantial compliance with Section 203.558 based on testimony from the former FHA Commissioner and other former HUD employees; (ii) the HUD regulations are not incorporated into the uniform note; and (iii) Plaintiffs and each Settlement Class Member must show that he or she would have changed the closing date if an approved form were provided.

As Wells Fargo highlighted in its motion to dismiss and would surely emphasize in opposition to class certification, the district court in *Miller* found that the issue of whether the deficiencies in Wells Fargo's form caused borrowers to close their loan on a date other than the first of the month (and thereby incur post-payment interest) was an individualized issue that would require thousands of mini-trials. *Miller*, Case No. 1:16-cv-21145-UU, Dkt. 265 (S.D. Fla. February

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

22, 2017). Plaintiffs firmly believe that the causation analysis in *Miller* is incorrect, in that it was objectively reasonable for consumers to rely on the lender's payoff statement containing the improper charges, but cannot discount the risk that this Court would have come to the same conclusion as *Miller* if the case were litigated instead of settled.

"The amount offered in settlement" – The proposed Settlement constitutes roughly 11.2% of the recovery that Settlement Class Members could have received if this case was litigated through trial and appeal. *See* Hoipkemier Decl. ¶ 4. This percentage recovery is within the range of reasonableness of class settlements approved in this and other Circuits. *See, e.g.*, *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 U.S. Dist. LEXIS 166484, at *22 (N.D. Cal. Dec. 11, 2015) (approving **10.7%** settlement); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (concluding that a settlement which provided **10%** of the potential recovery was "within the range of reasonableness in light of the risks and costs of litigation"); *Ma v. Covidien Holding, Inc.*, No. 12-02161, 2014 U.S. Dist. LEXIS 13296, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (finding a settlement worth **9.1%** of the total value of the action "within the range of reasonableness"); *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327 NC, 2014 U.S. Dist. LEXIS 99966, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (granting preliminary approval of a net settlement amount representing **5%** of the projected maximum recovery at trial); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. Civ. A. 03-4578, 2005 WL 1213926, at *9 (E.D. Pa. May 19, 2005) (recovery of **11.4%** of estimated single damages "compares favorably with the settlements reached in other complex class action lawsuits"). *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of 16% of the potential recovery to be fair under the circumstances). *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving **settlement** in which **class** received payments totaling 6% of potential damages) As a non-disclosure case, the alleged conduct here bears some similarity to claims for violations of the FDCA. *See In re Toys R Us-Delaware, Inc. FACTA Litig.*, 295 F.R.D. 438, 454 (C.D. Cal. 2014) (recognizing as reasonable a $5 to $30 award); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 943-44 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. Jan. 6, 2016) (granting final approval to a

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

class action settlement awarding $15 to each claiming class member despite statutory damages ranging up to $750).

More particularly, the settlement is in line with the approximately 19% blended settlement in a post-payment interest case approved by the Southern District of Florida with respect to Bank of America borrowers. Hoipkemier Decl. ¶ 10. Compared to *Dorado*, the Settlement Class Members faced increased litigation risk in that the *Dorado* settlement was reached *prior* to the district court's denial of class certification in *Miller*. *Id*. In addition, the Bank of America settlement was fully reversionary, while the proposed settlement provides for a second distribution of the residual from uncashed checks to class members.

These increased risks are reflected in another recent settlement involving post-payment interest claims against JP Morgan Chase in the Southern District of Iowa in *Audino v. JP Morgan Chase, N.A.*, 4:16-cv-00631-SMR-HCA, D.E. 83-1 (S.D. Iowa). According to the *Audino* plaintiffs' motion for preliminary approval, the proposed settlement is for $11.22 million, which is approximately 13% of the potential damages. *Id.* at p. 23.

"The experience and views of counsel" – Class Counsel strongly endorse the proposed Settlement. As stated above, Class Counsel have extensive experience litigating class actions and are fully informed of the strengths and weaknesses of the case after litigating the related *Miller* case with Wells Fargo to the brink of trial. Class Counsel would not have agreed to the settlement, and would not request approval from this Court, if they did not believe that this settlement was fair, reasonable and adequate under the particular circumstances presented by Wells Fargo's form of disclosure and the claims and defenses in the case.

Indeed, it is Class Counsel's opinion that the Class members' ability to recover 11.2% of their damages (before reduction for fees and expenses) provides the Class with a substantial benefit given the risks and delays that the settlement avoids. *Nat'l Rural Telcoms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.").

# V. THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST PRACTICABLE NOTICE UNDER THE CIRCUMSTANCES

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.*, *supra*, at § 21.312. Where the settlement class is certified pursuant to Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the *Manual*, *supra*, at § 21.312, the settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Provide information regarding attorneys' fees;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed forms of Notice, attached as Exhibits 1, and 2 to the Settlement Agreement, satisfy all of the criteria above. The parties have agreed on a notice plan that provides individual notice by U.S. Mail. Settlement Agreement, § 2.5. For all returned mail, the Settlement Administrator will perform data searches and other reasonable steps to attempt to obtain better contact information. *Id.* The notice will direct class members to an information website with additional details about the settlement.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Plaintiffs request that the Court approve this method of notice as the best practicable under the circumstances. *See, e.g., Rannis v. Recchia*, 380 F. App'x. 646, 650 (9th Cir. 2010) (finding mailed notice to be the best notice practicable where reasonable efforts were taken to ascertain class members addresses).

## VI.    THE PROPOSED FINAL HEARING SCHEDULE

The last step in the settlement approval process is the final approval hearing, at which the Court may hear any evidence and argument necessary to evaluate the Settlement.  At that hearing, Plaintiffs may explain and describe its terms and conditions, and Class Members, or their counsel, may be heard in support of or in opposition to the Settlement.  Plaintiffs propose the following schedule for final approval of the Settlement and implementation of the Settlement Program:

| Date | Event |
|------|-------|
| August 9, 2018 | Preliminary Approval Hearing |
| 45 days after entry of order | Class Notice Program beings |
| 30 days prior to Final Approval hearing | Deadline for class members to object or opt-out |
| 14 days prior to Final Approval hearing | Deadline to file motion for Final Approval and Attorneys' Fees |
| 7 days prior to Final Approval hearing | Deadline to respond to motion for Final Approval and Attorneys' Fees |
| TBD by Court | Final Approval Hearing |

## VII.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Order attached hereto as Exhibit 4, which preliminarily approves the Settlement, provisionally certifies the Settlement Class, conditionally appoints the undersigned as Class Counsel and the Plaintiffs as Class Representatives, orders dissemination of notice to Settlement

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  Class Members, and sets a date for the final fairness hearing.

2      Respectfully submitted this 28th day of June, 2018.

3                  By: */s/ Adam L. Hoipkemier*

4                  Adam L. Hoipkemier (Ga. Bar No. 745811)
                Epps Holloway DeLoach & Hoipkemier LLC

5                  Kevin E. Epps (Ga. Bar No. 785511)
                kevin@ehdhlaw.com

6                  1220 Langford Drive, Bldg. 200
                Watkinsville, GA 30677

7                  Telephone: 706 508 4000
                Facsimile: 706 842 6750

8                  (appearing *pro hac vice*)

9                  Robins Kaplan LLP
                Michael F. Ram (SBN 104805)

10                 mram@robinskaplan.com
                Susan S. Brown (SBN #287986)

11                 sbrown@robinskaplan.com
                2440 West El Camino Real, Suite 100

12                 Mountain View, CA 94040
                Telephone: 650 784 4040

13                 Facsimile: 650 784 4041

14                 Turke & Strauss LLP
                Sam Strauss (WIBN 46971)

15                 613 Williamson Street, Suite 209
                Madison, Wisconsin 53703-3515

16                 Telephone: 608 237 1774
                Facsimile: 608 509 4423

17                 Email: sam@turkestrauss.com
                (appearing *pro hac vice*)

18                 *Attorneys for Plaintiff and Proposed Class*

19

20

21

22

23

24

25

26

27

28