IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JOSEPH DUNN, HELEN IEHL, ALBERT PIETERSON, JOHN HASTINGS, WINDIE BISHOP, LISA BARNES, ANGELA GARR, and MYESHA PRATHER, individually and on behalf of a class of similarly situated individuals,<br><br>*Plaintiffs,*<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>*Defendant*. | No. 17-cv-00481<br><br>Hon. Manish S. Shah |

**JOINT AGREED MOTION FOR ORDER AUTHORIZING**
**FURTHER AND FINAL DISTRIBUTION OF CLASS SETTLEMENT FUND**

Plaintiffs, Joseph Dunn, Helen Iehl, Albert Pieterson, John Hastings, Windie Bishop, Lisa Barnes, Angela Garr, and Myesha Prather ("Plaintiffs"), and Defendant, Wells Fargo Bank, N.A. (together, the "Parties"), by and through their attorneys, pursuant to Fed. R. Civ. P. 23 and the Court's December 10, 2019 Final Approval Order and Final Judgment (Dkts. 129, 130), hereby jointly move for entry of an Order authorizing the further and final distribution of class settlement funds to non-profit entities. In support of this Motion, the Parties state as follows:

**I.   INTRODUCTION**

After the Court approved the Parties' $17,850,000 settlement and entered judgment in December 2019, the Settlement Administrator, Epiq, distributed the Settlement Fund (net of Court-approved deductions) to approximately 24,603 eligible claimants, and then, pursuant to the terms of the Settlement Agreement, completed a second, *pro rata* distribution of the funds that remained as a result of uncashed checks. (*See* Declaration of Eamon Mason, attached hereto as Exhibit A, ¶¶ 5-12). Due to uncashed

1

checks remaining from that second distribution, the Settlement Fund still contains $87,084.77. (*Id.*, ¶ 13). This sum is inadequate to fund a third distribution to class members. (*Id.*, ¶ 15). The Settlement provides that, in these circumstances, the residual amount is to be distributed to charitable organizations according to Court order. (Settlement Agreement, Dkt. 80-1, § V.53(n)). Accordingly, the Parties respectfully request that the Court enter an Order authorizing Epiq to distribute the remaining funds equally to the two charities selected and agreed to by the Parties – the American Law Institute ("ALI") and the Samuelson Law, Technology, and Public Policy Clinic at the University of Berkeley School of Law ("Berkeley Clinic") – thereby bringing this litigation to an end.

## II.     RELEVANT BACKGROUND

On December 10, 2019, the Court granted final approval of the $17.85 million settlement in this action. (Dkts. 129, 130). The Court also expressly retained jurisdiction, including for the purposes of supervising the continued administration and consummation of the Settlement and the Court's Final Judgment. (Dkt. 129, ¶ 20).

After deducting the approved attorneys' fees, litigation expenses, incentive awards, and administrative costs, approximately $10,835,943.37 remained in the Settlement Fund to distribute to eligible claimants. (Mason Decl., ¶ 3). Thus, following the Court's entry of the Final Judgment, Epiq processed, verified and approved claims from class members and then distributed that balance to eligible claimants. (*Id.*, ¶¶ 4-8). Specifically, after running all mailing addresses through the national change of address registry, Epiq sent payments to 24,603 eligible claimants on May 8, 2020. (*Id.*, ¶¶ 5-7). In accordance with the Settlement, these first-round payments were for $436.40, $663.33 or $872.80, depending on the number of different types of accounts for which a claimant received the calls at issue. (*Id.*, ¶ 6; Agreement, Dkt. 80-1, § V.53(g)). About 10% of the eligible claimants who received a payment

2

did not deposit their settlement payments within the required 180 days. (*Id*., ¶ 9). As a result, $874,440.92 remained in the Settlement Fund. (*Id*.).

Thereafter, pursuant to Section V.53(n) of the Settlement Agreement, Epiq calculated additional *pro rata* payments of $65.96 or $32.98 (depending on the number of different types of accounts for which a claimant received a call at issue) for those class members who had deposited their first round of payment, and on February 1, 2021, Epiq carried out a supplemental distribution and mailing to those 22,615 individuals. (*Id*. ¶¶ 10-11). While class members deposited $670,384.46 in settlement checks from this second distribution, the distributed checks are now stale and $86,605.48 has not been deposited. (*Id*. ¶ 13). When combined with other residual amounts, the Settlement Fund still contains $87,084.77. (*Id*.).

Epiq has determined that any further distributions to the broad group of claimants would be infeasible, as conducting a third distribution would cost upwards of $30,000 in printing, postage and administrative fees to process and distribute $2.85 checks. (*Id*., ¶ 15). Similarly, while some late claims remain, administrative costs to verify and pay these claims would consume most of the remaining funds and further delay closure of this case. (*Id*., ¶ 16).

### III. ARGUMENT

Consistent with the Settlement Agreement and relevant case law, the Parties propose distributing the remaining funds to the two identified charities, ALI and the Berkeley Clinic. The Settlement Agreement provides that settlement funds remaining after a second distribution will be disbursed to charitable recipients selected by the Parties, subject to Court approval. (Agreement, Dkt. 80-1, § 53(n)). Paying the residual amount to the selected charities is reasonable and an appropriate use of the remaining

funds because the purposes of both the ALI and the Berkeley Clinic align with the interests and objectives of the class in this case.[1]

The Court has discretion to "put any unclaimed settlement funds to their next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." *In re Motorola Sec. Litig.*, No. 03 C 287, 2013 WL 12237555, at *1 (N.D. Ill. Mar. 5, 2013) (citation omitted). The goal is to advance the interests of class members when additional direct distribution to them is infeasible. *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 498 (N.D. Ill. 2015). Thus, payment of residual funds to charitable organizations should both further the interests of the class and "be limited to money that can't feasibly be awarded to the intended beneficiaries" in the class. *Pearson v. NTBY, Inc.*, 772 F.3d 722, 784 (7th Cir. 2014). These distributions typically are made after multiple distributions to the class members, as here. *See, e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 568 (N.D. Ill. 2011).

Epiq paid out the Settlement Fund to class members in two distributions and reissued checks that were not cashed in each round. (Mason Decl., ¶¶ 5-12). Any further distributions to the broad group of claimants or to late claimants would be infeasible, as the administrative costs associated with such distributions would result in *de minimis* payments to class members while further delaying the closure of the administrative process. (*Id.*, ¶¶ 15-16).

The goals of both the ALI and the Berkeley Clinic align with the interest of the class.[2] Plaintiffs claimed their privacy was invaded by the phone calls at issue in violation of the Telephone Consumer Protection Act. Accordingly, a nonprofit that advocates for individual privacy rights would be an

---

[1] Several partners of Girard Sharp (including Daniel Girard and Jordan Elias) and of Lieff Cabraser Heimann & Bernstein are members of ALI. None of these attorneys (or their family members) have employment relationships of any kind with ALI.

[2] Information about the ALI can be found at https://www.ali.org/. Information about the Berkely Clinic can be found at https://www.law.berkeley.edu/experiential/clinics/samuelson-law-technology-public-policy-clinic/.

appropriate recipient of residual settlement funds. Similarly, the ALI works to clarify and modernize the law of privacy in the digital era, as well as promoting greater access to justice and advancing the rule of law, a goal of class actions generally. ALI Press Release, *ALI Approves Principles of Law, Data Privacy*, https://www.ali.org/news/articles/ali-approves-principles-law-data-privacy/ (last visited August 1, 2021); *About ALI*, https://www.ali.org/about-ali/ (last visited August 1, 2021). The Berkeley Clinic advocates for privacy rights in a variety of ways. This year, for example, the Clinic published papers analyzing local government surveillance oversight ordinances and recommending means of protecting attorney-client privilege in prisoner emails. *Local Government Oversight Ordinances White Paper*, https://www.law.berkeley.edu/case-project/local-surveillance-oversight-ordinances-white-paper/ (last visited August 1, 2021); *Securing Attorney-Client Privilege in Incarcerated Persons' Emails*, https://www.law.berkeley.edu/case-project/securing-attorney-client-privilege-in-incarcerated-persons-emails/ (last visited August 1, 2021).

### IV. CONCLUSION

For the foregoing reasons, the Parties jointly respectfully request that the Court authorize the Settlement Administrator to distribute the remaining Settlement Fund in equal amounts to the ALI and the Berkeley Clinic.

| | |
|---|---|
| Dated: September 10, 2021 | Respectfully Submitted, |
| JOSEPH DUNN, HELEN IEHL, ALBERT PIETERSON, JOHN HASTINGS, WINDIE BISHOP, LISA BARNES, ANGELA GARR, and MYESHA PRATHER, individually and on behalf of classes of similarly situated individuals | WELLS FARGO BANK, N.A. |
| By: /s/ Evan M. Meyers<br>One of Plaintiffs' Attorneys | By: /s/ Mark D. Lonergan<br>One of Defendant's Attorneys |
| Myles McGuire<br>Evan M. Meyers | Mark D. Lonergan (*pro hac vice*)<br>Rebecca S. Saelao (*pro hac vice*) |

5

<div style="columns:2">

Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

Jonathan D. Selbin
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Fl.
New York, NY 10013
Tel: (212) 355-9000
jselbin@lchb.com

Daniel M. Hutchinson
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Fl.
San Francisco, CA 94111
Tel: (415) 956-1000
dhutchinson@lchb.com

Daniel C. Girard
Jordan Elias
GIRARD SHARP LLP
601 California Street, Ste. 1400
San Francisco, CA 94108
Tel: (415) 981-4800
dgirard@girardgibbs.com
jelias@girardsharp.com

*Counsel for Plaintiffs and Class Counsel*

SEVERSON & WERSON, P.C.
One Embarcadero Center, Ste 2600
San Francisco, CA 94111
Tel: (415) 398-3344
mdl@severson.com
rss@severson.com

Lucia Nale
Michael H. Bornhorst
Michelle V. Dohra
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
Tel: (312) 782-0600
lnale@mayerbronwn.com
mbornhorst@mayerbrown.com
mdohra@mayerbrown.com

*Attorneys for Wells Fargo Bank, N.A.*

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2021, I electronically filed the foregoing *Joint Agreed Motion for Order Authorizing Further and Final Distribution of Class Settlement Fund* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ Evan M. Meyers